| | | |
|---|---|---|
| **AMY HAMM, on behalf of herself and all others similarly situated,** | § § § | |
| *Plaintiff*, | § § | NO. _____ |
| **v.** | § § § | **CLASS AND COLLECTIVE ACTION** |
| | § | **JURY DEMANDED** |
| **ACADIA HEALTHCARE CO., INC., ACADIA JV HOLDINGS, LLC, and RED RIVER HOSPITAL, LLC** | § § § | |
| *Defendants*. | § § § | |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Plaintiff Amy Hamm ("Plaintiff") brings this Class and Collective action on behalf of herself and other similarly situated individuals who have worked for Acadia Healthcare Company, Inc., Acadia JV Holdings, LLC, and Red River Hospital, LLC ("Defendants" or "Acadia Healthcare") as non-exempt employees involved with patient care at any time from August 15, 2016 until resolution of this action. Throughout the relevant time period of this action, Plaintiff and similarly situated Class and Collective members have been denied payment for hours worked, including overtime, and denied bona fide meal periods. This case implicates the longstanding policies and practices of Acadia Healthcare across all of its healthcare facilities around the country, which fails to properly compensate non-exempt employees for hours worked during meal periods.

2.      Employers are not required to pay employees for meal periods if the employer can satisfy its burden of demonstrating the employee received a *bona fide* meal period which primarily benefits the employee. Defendants do not provide bona fide meal periods for its non-exempt

workers who are involved with patient care. Non-exempt employees who work for Defendants are required to remain available for work throughout their shift. Hourly-paid workers involved with patient care who work for Defendants are required to remain responsible for patient care throughout their shift and are expected to perform duties while "off-the-clock." Instead of making sure these hourly-paid patient care workers are fully and completely relieved of their duties during these unpaid 30-minute meal breaks, Defendants assume these healthcare workers are able to find a 30-minute block of time to enjoy a bona fide meal period. In fact, this does not occur. Nonetheless, Defendants expect and require these patient care workers to remain available and to be responsive to patient needs throughout their entire shifts, including during unpaid meal periods, meaning these workers remain on-duty and subject to interruption during that time. While Acadia Healthcare's various locations around the country have used differing mechanisms to enact this cost-shaving scheme, whether by automatically deducting time from the workers' time records to account for an unpaid meal break or by requiring the workers to manually clock out, the overall effect and practice is the same: these workers are required to remain on-duty during their unpaid meal breaks in violation of the FLSA. Defendants instituted policies and practices that result in healthcare workers being responsible for patient care throughout their shift, even when they attempt to have a bite to eat.

3.    Even when employees are not interrupted during meal periods, employees are still subject to interruption and remain on-duty since they remain responsible for their patients and are required to respond to emergency situations at all times while on-premises. Under these policies and practices, non-exempt workers involved in patient care are subject to work throughout their entire shift, including meal periods, and are thus, entitled to compensation for meal periods whether interrupted or not.

4.    Defendants' policies and practices result in non-exempt workers being denied wages due under the Fair Labor Standards Act ("FLSA") and Texas law. Defendants violate the FLSA and Texas law by knowingly and willfully requiring Plaintiff, Class and Collective members to perform work and/or remain on-duty in a standby capacity during their meal periods. Defendants have notice that Plaintiff, Class and Collective members expect to be paid for their work on an hourly basis. Defendants receive the value of Plaintiff, Class and Collective members' work performed during their meal periods and while "off-the-clock" without compensating them for their services. Defendants willfully, deliberately, and voluntarily fail to pay Plaintiff, Class and Collective members for all hours worked.

5.    Defendants, including all of the facilities under Defendant Acadia Healthcare's ownership, management and control nation-wide, violated and continue to violate the FLSA and Texas law due to the mandate that non-exempt employees, such as Plaintiff and the putative Class and Collective members, be paid for all hours worked, and be paid at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek.

6.    In addition, Plaintiff, Class and Collective members are required to work additional time while off-the-clock outside of their scheduled shifts to keep up with the demands of the job. Defendants know and are informed that Plaintiff, Class, and Collective members perform this off-the-clock work, but fail to pay them at the applicable hourly and overtime rates for this work time. This practice likewise violates the FLSA and Texas law.

7.    Therefore, Plaintiff files this action to recover on behalf of herself, Class and Collective members, all unpaid wages, compensation, penalties, and other damages owed to them under the FLSA and Texas law, as a 29 U.S.C. § 216(b) collective action, and as a class action under Federal Rule of Civil Procedure 23, in order to remedy the sweeping policies which

Defendants have implemented and which have deprived Plaintiff, Class and Collective members of their lawfully-earned wages.

## SUBJECT MATTER JURISDICTION AND VENUE

8. This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.*

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are not preempted by the FLSA because Plaintiff seeks to recover wages under Texas state law to the extent those state law claims do not overlap with the FLSA's overtime provisions, including gap time claims for regular, non-overtime wages owed and overtime claims that fall outside of the FLSA's statute of limitations.

10. This court also has subject matter jurisdiction over Plaintiff's state law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendants are citizens of different states. Moreover, the number of proposed class members in the Texas class is believed to exceed 100.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Acadia Healthcare Company, Inc. resides in this district, and all Defendants are believed to have their principal places of business located in Tennessee, and are therefore all residents of Tennessee.

## PARTIES

12.     Plaintiff Amy Hamm is an individual residing in Destrehan, Louisiana and is a citizen of Louisiana. Plaintiff was employed by Defendants as a nurse at Red River Hospital in Wichita Falls, Texas, and was also employed by Defendants Acadia Healthcare Company, Inc. and Acadia JV Holdings, LLC as a nurse at River Place Behavioral Health in LaPlace, Louisiana.[1]

13.     Defendant Acadia Healthcare Company, Inc., is a Tennessee corporation with its principal place of business in Franklin, Tennessee. Defendant may be served with process by serving its registered agent, the C T Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546. Defendant, by and through its vast web of subsidiaries, owns, operates, and/or manages behavioral hospitals and health facilities throughout the United States, including but not limited to Red River Hospital in Texas.

14.     Defendant Acadia JV Holdings, LLC is a Delaware limited liability company. Upon information and belief, Acadia JV Holdings, LLC's principal place of business is located in Franklin, Tennessee. Acadia JV Holdings, LLC may be served with process of service through its registered agent, The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

15.     Defendant Red River Hospital, LLC is a Delaware limited liability company with its principal place of business located in Franklin, Tennessee. The company may be served with process by serving its registered agent The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

---

[1] Plaintiff's individual FLSA claims and her corresponding Louisiana state law claims that arose during her experience working for Defendants at River Place Behavioral in Louisiana are the subject of a separate lawsuit, *Hamm v. Acadia Healthcare Company, Inc.*, No. 20-1515, Section "E", In the United States District Court for the Eastern District of Louisiana. Plaintiff is not seeking double recovery for those individual claims herein, but in this action only seeks recovery for her individual claims that arose during her employment with Defendants in Texas.

16.     Upon information and belief, Acadia JV Holdings, LLC and Red River Hospital, LLC are subsidiaries, partners, and/or agents of Defendant Acadia Healthcare Company, Inc. Acadia Healthcare Company, Inc. created a complex web of shell companies, such as Defendants here and dozens of other corporate entities, to superficially "own" more than 500 healthcare facilities around the country. All the while, Acadia Healthcare Company, Inc. directs and controls those shell companies in a manner that suits Acadia Healthcare Company, Inc.'s interests. Defendant Acadia Healthcare Company, Inc. drafts and implements human resources, payroll, timekeeping, and meal break policies at the healthcare facilities that are facially "owned" by its subsidiary entities, as well as facilities around the country.

17.     The FLSA Collective members are people who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location owned and operated by Defendant Acadia Healthcare Company, Inc., during the time period from August 15, 2017 through resolution of the action.

18.     The Texas Class members are people who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location in the state of Texas during the period from August 15, 2016 through resolution of the action.

19.     At all material times, Defendants have been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d).

20.     At all material times, Defendants have been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

21.     Plaintiff, Class and Collective members were and are employees of Defendants within the meaning of 29 U.S.C. § 203(e).

22.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

23.     Defendants acted as joint employers of Plaintiff, Class, and Collective members because all Defendants jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff, Class, and Collective members.

24.     Here, Defendants have had, and continue to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

25.     In addition to Plaintiff, Defendants have employed numerous other employees, who like Plaintiff, are non-exempt employees engaged in interstate commerce. Further, Defendants are engaged in interstate commerce since they order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

26.     At all material times, Plaintiff, Class and Collective members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## FACTS

27.     Defendant Acadia Healthcare Company, Inc. is a multinational behavioral health care provider—it owns, operates, and/or manages more than 500 behavioral hospitals and healthcare facilities throughout the United States, including facilities in Texas.

28.     Defendants employ thousands of hourly non-exempt workers across a network of healthcare facilities owned, operated, and/or overseen by Defendant Acadia Healthcare Company, Inc. around the country.

29.     Acadia Healthcare employs a payroll policy and practice of not compensating hourly-paid nurses for work performed during their unpaid meal periods, subjecting them to

-7-

interruptions and requiring them to remain on duty during those meal periods. Non-exempt hourly-paid patient care workers are directed and told to clock out for their 30-minute meal periods during their shifts, but are nonetheless required to remain vigilant, responsive, and on-duty for any patient needs that might arise during their breaks due to their inherent ethical obligations to their patients, and in adherence to Defendants' and Acadia Healthcare Company, Inc.'s directives and policies that "patient care comes first no matter what."

30.     While the specific mechanism for recording these unpaid meal breaks may differ from facility to facility, the overall effect and scheme is the same: as Plaintiff experienced working for multiple Acadia Healthcare facilities in different states, Defendants routinely and regularly require non-exempt patient care workers to remain on-duty and subject to interruption during their unpaid meal breaks, improperly shifting the burden from employer to the individual employees to ensure they are properly paid for all hours worked.

31.     For example, at Red River Hospital in Texas, non-exempt healthcare workers are superficially given the option to clock out for lunch if they leave Defendants' premises for their meal break, but in reality this rarely occurs due to the high demands of patient care and the patient care workers' inherent ethical responsibility to remain vigilant and responsive to the needs of their patients throughout their shifts. If a patient care worker does not manually clock out for their meal break, Defendants apply an automatic time deduction policy that removes the equivalent of 30 minutes of time from the workers' timekeeping records. Similarly, at River Place Behavioral in Louisiana, while the facility does not apply an automatic time deduction practice like at Red River Hospital, it nonetheless requires non-exempt patient care workers to manually clock out for their unpaid meal breaks but nevertheless requires those workers, as a measure of the workers' known ethical obligations to their patients, to remain on-duty and subject to interruption throughout their

-8-

unpaid meal breaks.[2] This overall unpaid meal break policy applies to all hourly-paid, non-exempt workers who are responsible for patient care, regardless of the location where those employees work.

32.     Class and Collective members are not effectively permitted to take a 30-minute uninterrupted and bona fide meal period due to the high demands of their jobs during the majority of their shifts. In the rare instances where they attempt a meal break, they remain on-duty in that they are required, by their inherent ethical obligations and Acadia Healthcare's policy that patient care staff must always put patient care first, to respond to calls from their patients, doctors, supervisors, patients' families, other facility staff, attend to the normal demands of the job, and otherwise respond to emergencies that might arise in a healthcare facility environment.

33.     Defendants encourage interruptions to Class and Collective members' unpaid meal periods by requiring Class and Collective members to remain vigilant and responsive to the needs of their patients at all times, to remain ready at all times to respond to calls/codes/emergencies, and by instituting policies and/or practices that require Class and Collective members to make patient care their overall top priority. Defendants permit management or other healthcare workers to interrupt employees' off-the-clock meal periods at any time they deem necessary. In practice, management discourages employees from reporting missed or interrupted meal periods. Employees are rarely paid for such hours, as a result. These policies and practices apply to all hourly-paid, non-exempt staff who are responsible for patient care across all of Defendant Acadia Healthcare's facilities.

---

[2] *See* fn. 1. Plaintiff offers this illustrative example, based on her direct experience working for Defendants in Louisiana, to demonstrate that the violative conduct described herein is consistent across multiple Acadia Healthcare facilities, and is not dependent upon any individualized analysis or a "manager-by-manager" approach.

34.     Plaintiff was employed by Defendants as a nurse and her regular hourly rate of pay was $35.70 per hour. Plaintiff worked for Defendants at the Red River Hospital location in Wichita Falls, Texas from approximately February 2015 to December 2019. Plaintiff then worked for Defendants at the River Place Behavioral Health in LaPlace, Louisiana from approximately December 2019 to September 2020.[3] As Plaintiff learned from her direct experience working at multiple Acadia Healthcare facilities across multiple states, the same overall scheme and practice to require non-exempt, hourly-paid healthcare workers to remain on-duty and subject to interruption throughout their unpaid meal breaks (whether by automatically deducting those 30 minutes or by requiring the worker to manually clock out for meal periods) is common and consistent across these locations and facilities, regardless of the individual managers and supervisors implementing these policies and practices.

35.     Moreover, Plaintiff, Class, and Collective members' off-the-clock work includes monitoring patients, assisting hospital staff, charting, prepping and organizing equipment, and other various tasks performed before clocking in and after clocking out for their shifts. Plaintiff, Class, and Collective members are not compensated for this pre- and post-shift work performed outside of their recorded hours. Defendants know and are aware of the work performed while off-the-clock, because such work occurs due to Defendants' strict overtime policies, and because Class and Collective members have raised the off-the-clock issue with supervisors/managers on multiple occasions.

36.     During the course of her employment, Plaintiff learned that Acadia Healthcare's policies and practices giving rise to the wage-and-hour violations alleged herein are consistent and universal across Acadia Healthcare's facilities, regardless of location. Acadia Healthcare institutes

---

[3] *See* fn. 1.

the same policies and practices across all of their facilities. Defendants institute a common set of payroll, timekeeping, meal break, off-the-clock, and overtime rules across all of Acadia Healthcare's facilities that subjects Class and Collective members to the same uniform course of treatment.

37.    Class and Collective members were and are employed by Defendants and perform work materially similar to Plaintiff.

38.    Plaintiff, Class and Collective members perform their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants.

39.    Defendant Acadia Healthcare implements the common timekeeping, payroll, meal break, off-the-clock, and overtime policies throughout its healthcare facilities nation-wide, which Class and Collective members are subjected to and required to follow.

40.    Plaintiff, Class and Collective members are required to follow and abide by Defendants' common work, time, pay, meal and rest break, and overtime policies and procedures in the performance of their jobs.

41.    At the end of each pay period, Plaintiff, Class and Collective members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

42.    Defendants pay Plaintiff, Class and Collective members on an hourly rate basis.

43.    Plaintiff worked more than forty hours in at least one workweek during the period beginning August 15, 2017 through the filing of this Complaint. On average, Plaintiff worked approximately 52 hours per week each workweek.

44.    Each putative Collective member worked more than forty hours in at least one workweek during the period beginning August 15, 2017 through the filing of this Complaint.

-11-

45. When Plaintiff, Class and Collective members work more than forty hours in a workweek, Defendants do not pay them one and one-half times their regular hourly rate due to Defendants' failure to include time worked during unpaid meal periods into the total hours worked in a given work week, as well as time worked before clocking in and after clocking out for their shifts. This unpaid time is compensable under the FLSA and Texas Common Law because (1) Plaintiff, Class, and Collective members are required to remain on-duty, or otherwise are not completely relieved of their duties, during their unpaid meal breaks, (2) they are interrupted or subject to interruption with work duties during any attempted meal period, and/or (3) they entirely skip the unpaid meal periods due to work demands.

46. Throughout the relevant time period, Defendants expected and required Plaintiff, Class and Collective members to be available to work during their entire shifts, even during any attempted unpaid meal breaks. These 30-minute intervals of time constitute compensable time under the FLSA and Texas Common Law, which require that employers compensate employees for all time worked.

47. Defendants have employed thousands of people similarly situated to Plaintiff during the three-year period preceding Plaintiff's pursuit of her FLSA causes of action.

48. Defendant's method of paying Plaintiff, Class and Collective members was willful, and was not based on a good faith and reasonable belief that its conduct complied with the FLSA or Texas Common Law. Upon information and belief, Defendant Acadia Healthcare has been sued multiple times under the FLSA for similar wage-and-hour violations.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the following class of individuals:

> **All current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other non-exempt employees with similar job duties employed at any facility operated by Defendant Acadia Healthcare Company, Inc. during the time period beginning September 11, 2017 until resolution of this action (the "Collective").**

50.     Defendants have not compensated these employees for the unpaid meal periods as described above.

51.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because her claims are similar to the claims possessed by Collective members.

52.     Plaintiff has actual knowledge that Collective members have been denied compensation for hours worked, including on-duty unpaid meal periods, as well as unpaid meal periods during which Collective members worked or were actually interrupted. In addition, Plaintiff has actual knowledge that Collective members have also been denied overtime pay for this work and would therefore likely join this collective action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

53.     Plaintiff is similarly situated to Collective members. Like Plaintiff, Defendants subjected Collective members to its common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

54.     Other patient care staff similarly situated to Plaintiff work, or have worked, for Defendants but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek for meal periods during which they were not

-13-

completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands.

55.     Although Defendants permitted and/or required Collective members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty for on-duty unpaid meal periods, as well as unpaid meal periods that were in-fact interrupted due to work demands, or subject to interruption.

56.     Collective members perform or have performed the same or similar work as Plaintiff involving patient care.

57.     Collective members regularly work or have worked in excess of forty hours during a workweek.

58.     Collective members are not exempt from receiving overtime compensation under the FLSA.

59.     Defendants' failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices and did not depend on the personal circumstances of Collective members.

60.     Although Plaintiff and Collective members may have different job titles and/or work in different departments or facilities, this action may be properly maintained as a collective action on behalf of the defined class because, throughout the relevant time period:

        a.     Defendants maintain common scheduling systems and policies with respect to Plaintiff and Collective members, control the scheduling systems and policies implemented throughout their facilities and retain authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

b.  Defendants maintain common timekeeping systems and policies with respect to Plaintiff and Collective members;

c.  Defendants maintain common overtime policies and practices with respect to Plaintiff and Collective members;

d.  Defendants maintain common payroll systems and policies with respect to Plaintiff and Collective members, control the payroll systems and policies applied to Plaintiff and Collective members, and set the pay rates assigned to Plaintiff and Collective members; and

e.  Defendants control the meal period work policies and practices at issue in this litigation and have the ability to deprive Plaintiff and Collective members of wages owed for meal period work they performed.

61.  The specific job titles or precise job responsibilities of each Collective member does not prevent collective treatment.

62.  Collective members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek for interrupted, interruptible, or missed meal periods.

63.  Although the exact amount of damages may vary among Collective members, the damages for Collective members can be easily calculated, summed, and allocated based on a simple formula.

64.  Plaintiff and Collective members' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendants to comply with its obligation to legally compensate their employees. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective members. Defendants have a plan, policy or

-15-

practice of not paying Plaintiff and Collective members for interrupted, interruptible, or missed meal periods, and for work that is performed while off-the-clock.

65.     As such, the collective of similarly situated Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 100 people or more. The precise number of Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). The names and addresses of the Collective members are discoverable from Defendants' records. Given the composition and size of the Collective, notice may be provided via First Class Mail, e-mail, text message, and other modes of notice similar to those customarily used in representative actions.

## RULE 23 CLASS ACTION ALLEGATIONS

66.     Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The **Texas Class** that Plaintiff seeks to represent is defined as follows:

> **All current and former hourly, non-exempt employees, providing patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other employees with similar job duties employed by any hospital or healthcare facility owned and operated by Acadia Healthcare Company, Inc. within the state of Texas at any time beginning September 11, 2016 until resolution of this action (the "Texas Class").**

67.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

68.     Numerosity:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Texas Class members exceeds 40 and is believed to exceed 100. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Texas Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Texas Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Texas Class and Defendants.

69.     Commonality:  There are questions of law and fact common to Plaintiff and the Texas Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

    i.  Whether Defendants had a policy and practice of requiring patient care workers to remain on duty during unpaid meal periods;

    ii.  Whether workers' remaining available to tend to patient health and safety issues provides a valuable service to Defendants;

    iii.  Whether Defendants directed, required, requested, expected, and/or permitted Plaintiff and Texas Class members to work during unpaid meal periods;

    iv.  Whether Defendants knew or should have known that Plaintiff and Texas Class members were not compensated for work performed during unpaid meal periods;

-17-

v.   Whether agreements (verbal or written) existed between Plaintiff and Texas Class members concerning payment for work performed during unpaid meal periods, and whether Defendants breached such agreements;

vi.   Whether Defendants directed, required, and/or permitted Plaintiff and Texas Class members to work while off-the-clock;

vii.   Whether Defendants knew or should have known that Plaintiff and Texas Class members were not compensated for work performed while off-the-clock;

viii.   Whether agreements existed between Plaintiff and Texas Class members concerning payment for work performed during unpaid meal breaks and for work performed while off-the-clock, and whether Defendants breached such agreements;

ix.   Whether Defendants derived a benefit from the patient care workers being required to respond to the needs of patients during their unpaid meal periods pursuant to professional codes of conduct and Defendant's policies;

x.   Whether valuable services were rendered to Defendants by the Plaintiff and Texas Class members during unpaid meal period times, and whether Defendants accepted the benefit of Plaintiff's and Texas Class members' unpaid services;

xi.   Whether Defendants are unjustly enriched by Plaintiff's and Texas Class members' unpaid work; and

xii. The proper measure of damages, including whether the reasonable value of such services can be based on the agreed upon hourly rate of pay.

70.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Texas Class because Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the Texas Class members. Like the Texas Class members, Plaintiff worked as a non-exempt employee involved in patient care for Defendants during the relevant time period. Like the Texas Class members, Plaintiff was subject to the identical company-wide policy requiring patient care staff to remain on duty during meal periods and were subject to interruption during such times. Like the Texas Class members, Plaintiff was subject to the same professional code of conduct and company timekeeping and payroll policies requiring patient care staff to tend to the care of their patients even during the unpaid meal periods. The other facts outlined above likewise apply equally to both the Plaintiff and Texas Class members.

71.     <u>Adequacy of Representation</u>:  Plaintiff seeks relief for the past and prospective state law violations that were perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Texas Class members and will prosecute the case vigorously on behalf of the Texas Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Texas Class members.

72.     <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Texas Class members is not practicable, and questions of law and fact common to the Texas Class predominate over any questions affecting only individual members of the Texas Class. Each proposed Texas Class member has been damaged and is entitled to recovery by reason of

Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

73.     In the alternative, the Texas Class may be certified because the prosecution of separate actions by the individual members of the Texas Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Texas Class which would establish incompatible standards of conduct for Defendants.

74.     If each individual Texas Class member was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Texas Class with Defendants' vastly superior financial legal resources.

75.     Requiring each individual Texas Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Texas Class members who would be disinclined to pursue these claims against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

<u>**FIRST CAUSE OF ACTION**</u>
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for On-Duty Unpaid Meal Periods**
**(FLSA Collective Action)**

76.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

77.     Plaintiff and Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

78.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

-20-

79.     Throughout the relevant time period, Defendants exercise a policy permitting and encouraging management to interrupt employees' meal periods at any time it deems it necessary. Defendants also exercise and implement policies that requires patient care workers, as a necessary part of their ethical obligations to their patients, to remain vigilant and responsive to the needs of their patients throughout their entire shift, including during unpaid meal periods. Under this policy, Defendants require Plaintiff and Collective members to be available to work and/or to be on duty during their unpaid meal periods.  As a result, Plaintiff and Collective members perform work during their unpaid meal periods for which they were not compensated.

80.     Plaintiff and Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for hours worked and from which Defendants derive a direct and substantial benefit.

81.     Defendants cannot satisfy their burden of proof to demonstrate Plaintiff and Collective members receive bona fide meal periods.

82.     Defendants violate and continue to violate the FLSA when they it fails to pay Plaintiff and Collective members under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and Collective members have suffered a loss of wages.

83.     Defendants' failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

84.     Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

85.    Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

**SECOND CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for "Off-the-Clock" Work**
**(FLSA Collective Action)**

86.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

87.    Throughout the relevant time period, Defendants suffer and/or permit Plaintiff to work additional time outside of her shift for work-related tasks. These tasks include, but are not limited to, conducting shift change reports, monitoring patients, assisting hospital personnel, reviewing or completing charting, preparing for her shift, and other tasks or services for the benefit of Defendants.

88.    Plaintiff is actively discouraged from logging time outside the parameters set by Defendants. However, due to the demands of the job, Plaintiff routinely performs work-related tasks outside of her scheduled shift, before she clocks in and after she clocks out. Upon information and belief, Defendants treat all putative Collective members similarly with respect to "off-the-clock" work.

89.    Defendants are and have been aware of this off-the-clock work because such work is due to the strict overtime policies set by Defendants, and also because Plaintiff and other putative Collective members have informed their supervisors and other managerial employees of the systematic off-the-clock work problems.

90.    Accordingly, consistent with the policies and procedures set up by Defendants, Plaintiff performs work for which she is not compensated. Defendants' policies and practices favor Defendants at the expense of Plaintiff and putative Collective members.

91.     Defendants violated and continue to violate the FLSA when they fail to pay Plaintiff and putative Collective members for "off-the-clock" work under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and putative Collective members suffer wage losses during weeks where the total time worked (logged and unlogged) exceeds forty hours.

92.     Defendants' failure to pay overtime to Plaintiff and putative Collective members, is willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and putative Collective members' claims.

93.     Because of Defendants' willful violation, Plaintiff and putative Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

94.     Plaintiff and putative FLSA Class members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

### THIRD CAUSE OF ACTION:
**Quantum Meruit**
**(Texas Class Action)**

95.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

96.     Plaintiff and Texas Class members perform valuable services for Defendants during their unpaid meal periods (a common scheme perpetrated by Defendants that is applicable to the entire Class).

97.     These services have a reasonable value of no less than the agreed upon hourly rates of pay.

98.     Defendants accept and retain the benefit of Plaintiff's and Texas Class members' performance of these valuable services.

-23-

99. No written contract exists between Plaintiff and Defendants, and Texas Class members and Defendants, regarding the provision of services during unpaid meal periods.

100. Defendants have reasonable notice and/or knowledge that Plaintiff and Texas Class members expect to be compensated for services rendered for Defendants.

101. Defendants fail to pay Plaintiff and Texas Class members the reasonable value of the services performed during unpaid meal periods.

102. Plaintiff and Texas Class members are entitled to recover damages under this claim for the last four years, to the extent same does not overlap with or duplicate the FLSA damages alleged herein.

103. Plaintiff and Texas Class members are entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 38.001.

**FOURTH CAUSE OF ACTION:**
**Money Had and Received**
**(Texas Class Action)**

104. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

105. Defendants receive money from its patients and their agents for the work performed by Plaintiff and Texas Class members during their unpaid meal periods, while Defendants refuse to pay Plaintiff and Texas Class members for such work.

106. Defendants hold money that in equity and good conscience belongs to Plaintiff and Texas Class members due to Defendants' refusal to pay Plaintiff and Texas Class members for all hours worked.

107. Plaintiff and Texas Class members are entitled to recover damages under this claim to the extent same does not overlap with or duplicate the FLSA damages alleged herein.

-24-

108.   Plaintiff and Texas Class members are entitled to declaratory relief finding Defendants violated Texas law.

109.   Plaintiff and Texas Class members are entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 37.009.

### FIFTH CAUSE OF ACTION:
**Unjust Enrichment**
**(Texas Class Action)**

110.   Plaintiff incorporates all allegations contained in the foregoing paragraphs.

111.   Defendants have been unjustly enriched at the expense of Plaintiff and Texas Class members by refusing to pay for work performed by Plaintiff and Texas Class members during unpaid meal periods.

112.   Defendants knowingly and/or intentionally accept the benefit of the work performed by Plaintiff and Texas Class members during unpaid meal periods, despite Defendants' policy and practice of failing to pay Plaintiff and Texas Class members for such work. In particular, Defendants receive the benefit of the labor and services provided to Defendants' customers (patients) by the Plaintiff and Texas Class members.

113.   Such wrongful conduct demonstrates bad faith and undue advantage on the part of Defendants.

114.   It would be unjust and inequitable for Defendants to retain the benefit of the unpaid work performed by Plaintiff and Texas Class members.

115.   Defendants should be ordered to disgorge those benefits to Plaintiff and the Texas Class.

116.   Plaintiffs are also entitled to declaratory relief finding Defendants violated Texas law.

-25-

117.     Plaintiff and Texas Class members are further entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 37.009.

## **RELIEF SOUGHT**

118.     Plaintiff and Collective members are entitled to recover their unpaid overtime wage compensation pursuant to the FLSA.

119.     Plaintiff and Collective members are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages.

120.     Plaintiff and Collective members are entitled to recover attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b), as well as Texas Civil Practice and Remedies Code § 37.009 and § 38.001.

121.     Plaintiff and Texas Class members are entitled to recover damages flowing from the reasonable value of the services they provided, all monies held by Defendants that rightfully belong to Plaintiff and Texas Class members, the value by which Defendants were unjustly enriched by receiving the unpaid labor, attorney's fees and costs, pre-judgment and post-judgment interest as provided by Texas law, and such other relief the Court deems fair and equitable (to the extent same does not duplicate or overlap with the damages owed pursuant to the FLSA).

122.     Plaintiff and Texas Class members are entitled to declaratory relief stating Defendants' actions as described herein were and are unlawful.

## **JURY DEMAND**

123.     Plaintiff hereby requests a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## **PRAYER**

124.    For these reasons, Plaintiff, Class and Collective members respectfully request that judgment be entered in their favor awarding the following relief:

      i.  An order preventing Defendants from retaliating in any way against Plaintiff and any putative Class or Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

      ii.  An order designating this action as a collective action on behalf of the Collective and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

      iii.  For a declaratory judgment that Defendants violated the Fair Labor Standards Act as alleged herein;

      iv.  An order finding Defendants violated the FLSA willfully;

      v.  An order awarding Plaintiff and the Collective all unpaid overtime wages due under the FLSA with interest thereon;

      vi.  An order awarding Plaintiff and the Collective an equal amount as liquidated damages as allowed under the FLSA;

      vii.  An order awarding Plaintiff and the Collective reasonable attorneys' fees, costs, and expenses of this action as provided by the FLSA;

      viii.  An order certifying this case as a Class Action under Rule 23 of the Federal Rules of Civil Procedure for all state-law causes of action asserted;

      ix.  An order finding that Defendants violated Texas law;

x.  An order awarding Plaintiff and the Texas Class all unpaid regular wages due under Texas law to the extent same does not duplicate regular wages due under the FLSA;

xi.  An order awarding Plaintiff and the Texas Class all unpaid overtime wages due under Texas law to the extent same does not duplicate overtime wages due under the FLSA;

xii.  An order awarding Plaintiff and the Texas Class disgorgement of Defendants' ill-gotten gains as described herein;

xiii.  An order awarding Plaintiff and the Texas Class all attorneys' fees, costs and disbursements as provided by Texas law;

xiv.  An order awarding Plaintiff and the Texas Class pre- and post-judgment interest as provided by Texas law; and

xv.  Such other and further relief to which Plaintiff, Class and Collective members may be entitled at law or in equity.

Dated: July 21, 2021

*/s/ David W. Garrison*
David W. Garrison (Tenn. Bar No. 24968)
Joshua A. Frank (Tenn. Bar No. 33294)
BARRETT JOHNSTON
MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, Tennessee 37219
Tel: (615) 244-2202; Fax: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

Carolyn H. Cottrell (Cal. Bar No. 166977)
To be admitted *pro hac vice*
Ori Edelstein (Cal. Bar No. 268145)

-28-

To be admitted *pro hac vice*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

William M. Hogg (Tex. Bar No. 24087733)
To be admitted *pro hac vice*
Michael K. Burke (Tex. Bar No. 24012359)
To be admitted *pro hac vice*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com
mburke@schneiderwallace.com

*Counsel for Plaintiff, Class, and Collective Members*