## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **AMY HAMM, on behalf of herself and all others similarly situated** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 3:21-cv-00550** |
| **v.** | ) ) ) | |
| **ACADIA HEALTHCARE CO., INC.; ACADIA JV HOLDINGS, LLC; AND RED RIVER HOSPITAL, LLC** | ) ) ) ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

### I.  INTRODUCTION

Although new to this Court, the present lawsuit is only the latest iteration of Plaintiff's misbegotten attempts to turn her unsubstantiated and evolving claims of missed meal breaks and "off-the-clock" work at two different hospitals in Texas and Louisiana into a nationwide collective action against Acadia Healthcare Company, Inc. ("Acadia"). Plaintiff first attempted to assert similar claims to those she now brings here over a year ago in the Eastern District of Louisiana. When Acadia, Acadia JV Holdings, LLC ("JV Holdings"), and Red River Hospital, LLC ("Red River") were each dismissed from that lawsuit for lack of personal jurisdiction and her original theories based on automatic deductions for meal breaks were shown to be fictitious, Plaintiff filed her newly modified claims against those entities in this case. Here too, however, all three entities—and the lawsuit itself—should be dismissed.

First, Plaintiff's claims against Red River must again be dismissed for lack of personal jurisdiction. As Plaintiff well knows from the extensive jurisdictional discovery already conducted in the Eastern District of Louisiana, Red River is a Delaware limited liability company that operates a hospital in Wichita Falls, Texas and is not registered to conduct business in the State of Tennessee. It does not have sufficient minimum contacts with the State of Tennessee or any forum-related contacts giving rise to the present cause of action for which this Court may exercise personal jurisdiction over it.

Second, following the Sixth Circuit's recent decision in *Canaday v. The Anthem Companies, Inc.*, this Court lacks personal jurisdiction over the FLSA claims against Red River brought by any non-Tennessee plaintiff, including Plaintiff herself. In *Canaday*, the Court applied the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of Cal.* to the FLSA context and found that courts do not have jurisdiction over the claims of nonresident plaintiffs against out-of-state defendants arising outside the state where the lawsuit is brought. Plaintiff purports to bring claims on behalf of a collective of individuals employed throughout the country, the vast majority of whom—including Plaintiff herself—are not Tennessee residents and were not employed in Tennessee. Therefore, this Court lacks specific jurisdiction over those claims.

Finally, neither Acadia nor JV Holdings has ever been Plaintiff's employer, even under a joint employer theory of liability. While Plaintiff makes conclusory assertions that Acadia and JV Holdings were her employers, she fails to plead the specific facts necessary to plausibly support such statements and thereby state a claim for which relief can be granted. Plaintiff fails to plead plausible claims because she cannot do so in good faith. Plaintiff is already aware of the specific facts demonstrating that Acadia and JV Holdings were not her employer from the

thorough jurisdictional discovery conducted in Louisiana. Any pleading of the specific facts necessary to plausibly bring a claim against Acadia or JV Holdings would thus be knowingly false and violate her and her counsels' duty of candor with the Court.

Accordingly, Red River should be dismissed for lack of personal jurisdiction and Plaintiff's claims against Acadia and JV Holdings should be dismissed for failure to state a claim upon which relief could be granted.

## II.     BACKGROUND

Plaintiff was employed by Red River as a Nurse Supervisor at Red River Hospital in Wichita Falls, Texas, from February 2018 until February 2020, when she moved and began working as a Nurse Supervisor for non-party Acadia LaPlace Holdings, LLC ("LaPlace") at River Place Behavioral Health in LaPlace, Louisiana. DE 1, Comp. at ¶ 12. Notwithstanding that River Place Behavioral Health never used automatic meal deductions (or that Plaintiff's job responsibilities included ensuring that the nurses she supervised followed the facilities' policies and accurately recorded the time they spent working), Plaintiff filed a lawsuit on May 22, 2020, in the Eastern District of Louisiana against Acadia, Red River, and non-party Ochsner-Acadia, LLC ("Ochsner-Acadia") alleging that these entities violated the FLSA and various state laws through an automatic time deduction for meal periods that failed to properly compensate nurses for hours worked during those meal periods (the "Louisiana Lawsuit"). *See* Louisiana Lawsuit Complaint, E.D. La. Case No. 2:20-cv-1515, Docket No. 69 at ¶¶ 1–7.

On July 9, 2020, Ochsner-Acadia answered and Acadia and Red River moved to dismiss the claims against them in the Louisiana Lawsuit for lack of personal jurisdiction. The court subsequently ordered the parties to conduct jurisdictional discovery and submit supplemental briefing. Acadia and Red River provided extensive discovery showing that Red River had been

Plaintiff's employer in Texas, LaPlace was her employer in Louisiana, and that Acadia did not exercise the kind of control over Plaintiff's employment in either location for the court to have jurisdiction—or relatedly, for it to be Plaintiff's joint employer. This discovery also showed that JV Holdings was a Delaware intermediary holding company between LaPlace and Acadia that likewise lacked the kind of control over Plaintiff's employment for jurisdiction or to be a joint employer.

On March 31, 2021, the court dismissed Acadia and Red River from the Louisiana Lawsuit for lack of jurisdiction, finding that the discovery demonstrated that Acadia did not possess the necessary control over the conditions of Plaintiff's employment in Louisiana for the court to exercise jurisdiction over it. *See generally Hamm v. Acadia Healthcare Co.*, 2021 U.S. Dist. LEXIS 62842 (E.D. La. Mar. 31, 2021). It also showed that JV Holdings was an intermediary holding company between Acadia and LaPlace with no operations at all. When Plaintiff subsequently filed an Amended Complaint that attempted to add JV Holdings as a party despite knowing it had no involvement with Plaintiff's employment in Louisiana, the court directed Plaintiff to file another Amended Complaint removing JV Holdings. *See* Louisiana Lawsuit Orders, E.D. La. Case No. 2:20-cv-1515, Docket Nos. 60, 68.

Plaintiff now has brought a modified version of her wage claims against Acadia, JV Holdings, and Red River in Tennessee, asserting vague theories of off-the-clock work and being required to remain in some sort of quasi-on-call status during her meal breaks in violation of the FLSA and Texas law. DE 1, Comp. at ¶¶ 1–7. However, even accepting Plaintiff's allegations at face value—at least those allegations that are not contradicted by facts of which this Court may take judicial notice—Plaintiff's claims against Red River must be dismissed because this Court

lacks personal jurisdiction over it, and her claims against Acadia and JV Holdings must be dismissed because they were not Plaintiff's employer.

First, Red River is a Delaware limited liability company that operates Red River Hospital—its principal place of business—in Wichita Falls, Texas. *See* Powell Decl. at ¶¶ 2–3. It is a distinct and independent entity that is authorized to do business solely in Texas. *See id.* at ¶¶ 4–9, 11–12; Honeybone Decl. at ¶ 2. It is neither authorized to do business in Tennessee nor does it have an office or place of business in the state. *See* Powell Decl. at ¶¶ 5–9. Further, while Red River employed Plaintiff in Texas, it never directed Plaintiff to perform any work in Tennessee. *See id.* at ¶ 10.

JV Holdings is a Delaware limited liability company that has no operations or employees at all. *See* Howard Decl. at ¶¶ 4–5. It is a distinct and independent entity that is authorized to do business solely in Delaware. *See id.* at ¶¶ 4–5, 7, 14–16; Honeybone Decl. at ¶ 11. It is neither authorized to do business in Tennessee nor does it have an office or place of business in the state. *See* Howard Decl. at ¶¶ 4–5, 7–12. JV Holdings has never employed Plaintiff, and does not own, operate, or manage Red River Hospital or any other facility where Plaintiff and her putative collective and class members worked. *See id.* at ¶¶ 13, 17; Honeybone Decl. at ¶¶ 3–9.

Finally, Acadia does not own, operate, or manage Red River Hospital, nor has it ever employed Plaintiff in any state. *See* Honeybone Decl. at ¶¶ 3–9. Acadia is a Delaware corporation[1] with its principal place of business in Franklin, Tennessee and is merely the ultimate parent company of the subsidiaries that once employed Plaintiff: Red River and LaPlace. *See* Howard Decl. at ¶¶ 2–3, 14. It was those subsidiaries that operated the facilities at which Plaintiff worked and controlled the terms of Plaintiff's employment, not Acadia. *See* Honeybone Decl. at ¶¶ 3–9; *See* Howard Decl. at ¶ 13.

---

[1] Plaintiff incorrectly identifies Acadia as a Tennessee corporation in the Complaint.

4827-8984-0887.2

5

### III. LEGAL ANALYSIS

**A.     Red River should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2).**

A court deciding a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has three options.  "It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." *Longway v. Sanborn Map Co.*, 2011 U.S. Dist. LEXIS 9943, *5–6 (M.D. Tenn. Jan. 31, 2011) (citing *Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998)).  "It is in the court's discretion, based upon the circumstances of the case, which path to choose." *Id.* at 6.  "In any proceeding, however, the party asserting jurisdiction has the burden of proof."  *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  "Additionally, and particularly pertinent here, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, such as Red River, that defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417–18 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Two types of [such contacts for] personal jurisdiction exist for corporations." *Canaday v. Anthem Cos.*, 2021 U.S. App. LEXIS 24523, *7 (6th Cir. Aug. 17, 2021).  "A court may assert 'general,' or 'all-purpose,' jurisdiction over a defendant in its home State, where the defendant is incorporated or headquartered."  *Id.* (quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).  "Or a court may exercise

'specific,' or case-based, jurisdiction over a defendant if the plaintiff's claims 'arise[] out of or relate[] to' the defendant's forum State activities." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  Neither specific nor general jurisdiction exists for Red River in Tennessee, and thus, this Court lacks personal jurisdiction over it.

       1.     *No General Jurisdiction over Red River.*

"For the Court to have general jurisdiction over a corporation, there must be continuous and systematic contacts such that a corporation is 'essentially at home' in the forum state." *Alford v. CNG Rests., LLC*, 2020 U.S. Dist. LEXIS 107413, *7–8 (M.D. Tenn. Apr. 21, 2020) (quoting *Daimler AG*, 571 U.S. at 138–39).  Being "at home" in a forum state means "that the defendant is incorporated or has its principal place of business there." *Canaday*, 2021 U.S. App. LEXIS 24523 at *35.

This Court lacks general personal jurisdiction over Red River because it does not have the "continuous and systematic" contacts with the State of Tennessee required for it to be "at home" there.  As previously explained, Red River is a Delaware limited liability company with its principal place of business in Wichita Falls, Texas.  *See* Powell Decl. at ¶¶ 2–3; *see also* Texas Comptroller - Taxable Entity Search, https://mycpa.cpa.state.tx.us/coa/, accessed August 25, 2021; Delaware Department of State: Division of Corporations - General Information Name Search, https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx, accessed August 25, 2021.[2]  Although Plaintiff alleges that Red River has a principal place of business in Tennessee, that allegation is false and Plaintiff knew it was false when she filed her Complaint.  *Compare* Compl. at ¶ 15 *with* Powell Decl. at ¶ 3; *see also Hamm*, 2021 U.S. Dist. LEXIS 62842 at *4

---

[2] This Court may take judicial notice of the contents of a government website.  *See CHS/Community Health Sys. v. Med. Univ. Hosp. Auth.*, 2021 U.S. Dist. LEXIS 47999, *27 (M.D. Tenn. Mar. 15, 2021); *see also Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of contents of the Bureau of Prisons' website).

4827-8984-0887.2

("Red River is a Delaware limited liability company with its principal place of business in Texas."). Red River thus cannot be considered "at home" in Tennessee.

Indeed, Red River has never had an office or place of business in Tennessee, owned real property in Tennessee, maintained bank accounts in Tennessee, or ever been appointed an agent for service of process or sued anyone in Tennessee. *See* Powell Decl. at ¶¶ 2–3, 5–10. It is not even registered in the State of Tennessee or authorized to conduct any business at all in Tennessee, much less engage in the "continuous and systematic" business necessary for general jurisdiction. *See id.* at ¶¶ 2–3; *see also* Tennessee Secretary of State - Business Information Search, https://tnbear.tn.gov/Ecommerce/ FilingSearch.aspx, accessed August 25, 2021.

Accordingly, Plaintiff fails to satisfy her burden of establishing that this Court can exercise general jurisdiction over Red River. *See Glob. Force Entm't, Inc. v. Anthem Sports & Entm't Corp.*, 385 F. Supp. 3d 576, 582 (M.D. Tenn. 2019) (no general jurisdiction in Tennessee over parent holding company that "(1) is incorporated under the laws of the Province of Ontario, Canada, with its primary place of business there; (2) has no business operations of its own, but instead is the parent holding company for various operating companies and brands; and (3) has not appointed an agent for service of process in Tennessee, has no employees in this state, does not own or lease property in Tennessee, and has not conducted business or marketed goods or services to resident of Tennessee"); *Taylor v. Harlan*, 2015 U.S. Dist. LEXIS 111725, *37–38 (M.D. Tenn. Aug. 24, 2015) (no general jurisdiction where defendants have no physical presence in Tennessee and do not solicit business in, hold themselves out as doing business in, and do not conduct in volume of business in Tennessee); *Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 923–24 (E.D. Tenn. 2012) (no general jurisdiction where

defendant "does not maintain an office in Tennessee, is not registered to do business in Tennessee, has no employees in Tennessee, and owns no property in Tennessee").

Plaintiff also cannot rely on the allegation that Red River is one of Acadia's "subsidiaries, partners, and/or agents" to establish jurisdiction because "corporate ownership alone is insufficient for the exercise of personal jurisdiction," a principal that "appl[ies] even more forcefully in the present case where the non-resident company in question is not the owner but is *owned* by a corporation subject to jurisdiction in the forum." *Am. Copper & Brass, Inc. v. Mueller Eur., Ltd.*, 452 F. Supp. 2d 821, 829 (W.D. Tenn. 2006). Courts in the Sixth Circuit employ what is known as the alter-ego theory test whereby jurisdiction over a subsidiary can only be based on the parent's contacts with the forum state "if the plaintiff proves that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent" and can "demonstrate 'unity of interest and ownership' that goes beyond mere ownership' and shared management personnel." *Wang v. GM, LLC*, 2020 U.S. Dist. LEXIS 138323, *17–18 (E.D. Mich. Aug. 4, 2020) (quoting *Anwar v. Dow Chemical Company*, 876 F.3d 841, 849 (6th Cir. 2017); *see Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361–62 (6th Cir. 2008) (finding under the alter-ego theory that no jurisdiction exists over non-resident subsidiary based on parent's contacts); *Baughman v. KTH Parts Indus.*, 2020 U.S. Dist. LEXIS 63771, *16 (S.D. Ohio Apr. 10, 2020) (same). Jurisdiction over a subsidiary is only found under this test, "if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Glob. Force Entm't, Inc.*, 385 F. Supp. 3d at 583–84 (quoting Es*tate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008); *see also Am. Copper & Brass, Inc.*, 452 F. Supp. 2d at 829 ("Only if a foreign

subsidiary has acted through its [forum based] parent, or was utilized by the parent in such a way as to establish "sufficient minimum contacts" is the parent-subsidiary relationship of any relevance in evaluating jurisdiction over the subsidiary.").  Plaintiff cannot meet this high bar; she does not even try.

Plaintiff has not alleged that Red River is not separate and distinct corporate entities from Acadia or that Acadia controls its day-to-day operations such that it is a mere department of Acadia, and she truthfully cannot.  Red River is a distinct corporate entity with its own books and corporate form.  *See* Powell Decl. at ¶¶ 4, 11–12; Honeybone Decl. at ¶¶ 2; Howard Decl. at ¶ 14. Acadia does not control its operations, but merely provides occasional assistance and support, which does not as a matter of law convert Red River into Acadia's alter ego.  *See* Honeybone Decl. at ¶¶ 4–9; *see also H&H Wholesale Servs. v. Kamstra Int'l*, 2020 U.S. Dist. LEXIS 233855, *20–21 (E.D. Mich. Dec. 14, 2020) (using parent company templates and needing its legal department to approve new contracts did not make the subsidiary an alter ego); *Dochnal v. Thomson Reuters Corp.*, 2018 U.S. Dist. LEXIS 178458, *10 (E.D. Tenn. Oct. 17, 2018) ("Total ownership and shared management personnel" as well as "shared branding materials [are] not sufficient to create alter-egos.") (citing *Anwar*, 876 F.3d at 849).

Plaintiff knows these facts, having taken extensive discovery over Acadia's lack of involvement with the operations of LaPlace and Ochsner-Acadia in Louisiana.  She also knows that they preclude this Court from exercising jurisdiction over Red River because the Eastern District of Louisiana has already relatedly found they prevented it from exercising jurisdiction over Acadia in that state.  *See Hamm*, 2021 U.S. Dist. LEXIS 62842 at *19–34 ("Plaintiff has not provided evidence to show that Acadia has asserted sufficient control to make Ochsner-Acadia or

Acadia LaPlace Holdings, LLC its agent or alter ego and personal jurisdiction over Acadia is not justified on this ground.").

Plaintiff has not and cannot offer any specific factual allegation to suggest that Red River is a sham corporation serving merely as a conduit for Acadia. Instead, she merely makes conclusory allegations that Acadia "created a complex web of shell companies, such as Defendants here and dozens of other corporate entities, to superficially "own" more than 500 healthcare facilities around the country [while it] directs and controls those shell companies in a manner that suits Acadia[]'s interests." Compl. at ¶ 16. This Court, however, has already recognized that such vague and inflammatory rhetoric about misusing the corporate form to avoid liability does not support exercising jurisdiction over a subsidiary based on the parent's contacts. *See Glob. Force Entm't, Inc.*, 385 F. Supp. 3d at 584–85 (finding that while "Plaintiffs argue that Defendants are alter egos because Anthem Sports formed Anthem Wrestling to acquire the assets of TNA Entertainment, LLC, and that 'Anthem Sports has attempted to shield itself from personal jurisdiction by forming layers of entities to do its bidding and conducting no business in its own right while claiming it does no business whatsoever in Tennessee,' . . . Plaintiffs have offered nothing to suggest that Anthem Wrestling is a sham or dummy corporation, that it and Anthem Sports are identical, or that Anthem Wrestling is merely a conduit for Anthem Sports"); *see also Dochnal*, 2018 U.S. Dist. LEXIS 178458 at *10 (asking "the court to 'look through this disguised corporate web and see that [the parent] is the nerve center . . . .'" does not support the exercise of personal jurisdiction). The Court should do so again here and find that it does not have general jurisdiction over Red River, regardless of Acadia's connections to Tennessee.

"The assertion of specific jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Red Strokes Entm't, Inc. v. Sanderson*, 2012 U.S. Dist. LEXIS 63956, *15 (M.D. Tenn. May 1, 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Sixth Circuit employs a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process. Under this test, the exercise of such jurisdiction is proper if the court finds: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1969)). None of these elements are present with respect to Red River.

Plaintiff does not allege anywhere in her Complaint that Red River engaged in purposeful conduct in Tennessee or that any of its actions resulted in any consequence in Tennessee. None of Plaintiff's claims are a cause of action "arising out of [Red River's] activities" in Tennessee. Plaintiff's allegations in the Complaint are instead for unpaid wages based solely on her employment with Red River <u>in Texas</u>. *See* DE 1, Comp. at ¶ 12 n.1 ("Plaintiff . . . in this action only seeks recovery for her individual claims that arose during her employment with Defendants in Texas."). Indeed, Plaintiff makes no allegations at all that her claims have anything to do with the State of Tennessee rather than being based solely on conduct occurring in Texas. *See id.* ¶¶ 12 n.1, 31, 34. Further, Red River does not conduct any operations in Tennessee (nor is it even

authorized to conduct operations in Tennessee), let alone engage in conduct in Tennessee that has any relation at all with Plaintiff's claims. Powell Decl. at ¶¶ 2–3, 5–10.

Accordingly, Plaintiff has failed to satisfy her burden of establishing that this Court can exercise specific jurisdiction over Red River because she has not alleged and cannot show it engaged in any purposeful contact in Tennessee relating to her claims. *See Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) ("Without exception, all of Harris's claims in this case are based on its processing of Harris's incoming wire transfer in September 1999 in the United Kingdom. As such, the claims do not "arise from" any actions by Lloyds within Tennessee."); *Servpro Intellectual Prop. v. Zerorez Franchising Sys.*, 2018 U.S. Dist. LEXIS 114504, *15 (M.D. Tenn. July 9, 2018) ("The Court lacks specific jurisdiction over Zerorez because the cause of action does not arise from Zerorez's actions in Tennessee."); *see also Halper v. Sony/ATV Music Publ'g, LLC*, 2017 U.S. Dist. LEXIS 174253, *7–8 (M.D. Tenn. Oct. 19, 2017) ("[B]ecause the instant Defendants do not have 'contacts with the forum,' this lawsuit cannot 'aris[e] out of' or be 'related to' to any such Defendant 'contacts with the forum.'").

### 3. *Bristol-Meyers Further Demonstrates the Lack of Specific Jurisdiction.*

The lack of specific jurisdiction for Plaintiff's claims against Red River is further demonstrated through the application of the Supreme Court's seminal decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773 (2017). In that opinion, the Supreme Court held that:

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Id.* at 1781 (internal quotation marks and citations omitted).  The Court then went on to find that a California state court did not have specific personal jurisdiction over the mass tort claims brought by plaintiffs who did not reside in the state or suffer harm in the state because those claims did not have a sufficient connection to California.  *Id.* at 1782.

In *Canaday v. Anthem Cos.*, 2021 U.S. App. LEXIS 24523 (6th Cir. Aug. 17, 2021), the Sixth Circuit found that the principles in *Bristol-Myers* "appl[ied] with equal force to FLSA collective actions under federal law" and held that a federal District Court in Tennessee did not have specific jurisdiction over the FLSA claims of individuals employed outside of Tennessee because the defendant did not employ them in Tennessee and thus did not shortchange them overtime compensation in Tennessee.  *Id.* at *9–11.  The same is true here, and this Court lacks specific jurisdiction over the FLSA claims brought by Plaintiff (or any members of her purported collective or class outside Tennessee), which are based solely on her employment in Texas.

## B.  Acadia and JV Holdings should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "In determining whether a complaint is sufficient under the standards of *Iqbal* . . . , it may be appropriate to 'begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.'"  *Alford v. CNG Rests., LLC*, 2020 U.S. Dist. LEXIS 107413, *21 (M.D. Tenn. Apr. 21, 2020) (quoting *Iqbal*, 556 U.S. at 680).  "This can be crucial, as no such allegations [which include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations] count toward the plaintiff's goal of reaching plausibility of relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 681).  "The question is whether the remaining allegations — factual allegations, *i.e.*, allegations of factual

4827-8984-0887.2

14

matter — plausibly suggest an entitlement to relief. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6)." *Id.* at *21–22 (internal quotations omitted).

"Under the FLSA, only *employees* are entitled to overtime and minimum-wage compensation." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (emphasis added). The same is true for claims of unpaid wages brought under Texas common law theories. *See Rodriguez-Meza v. Venegas*, 2018 U.S. Dist. LEXIS 226744, *35–39, 45–46 (W.D. Tex. Sep. 27, 2018) (dismissing claims for unpaid work under Texas common law theories where the defendants were not the plaintiffs' employer and had given no notice of an expectation of being paid by the defendants for the alleged work). Thus, to prevent the dismissal of Acadia and JV Holdings on a 12(b)(6) motion, Plaintiff must plausibly allege in her Complaint that they were her employer or joint employer. She has failed to do so.

Under the FLSA, whether an entity is an employer (joint or otherwise) depends largely on whether it exercised control over the terms and conditions of the plaintiff's employment. *See Alford*, 2020 U.S. Dist. LEXIS 107413 at *24 ("Under the FLSA, the issue of joint employment is largely an issue of control."); *Davis v. Omnicare, Inc.*, 2018 U.S. Dist. LEXIS 218862, *12 (E.D. Ky. Dec. 12, 2018) ("The basis of the joint employer finding is simply that one employer . . . has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.") (quoting *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996, n.4 (6th Cir. 1997)). The relevant factors for assessing whether sufficient control exists for an entity to be a joint employer include: (1) the ability to hire, fire, and discipline employees; (2) the ability to affect compensation and benefits; and (3) the ability to direct and supervise performance of employees. *Alford v*, 2020 U.S. Dist. LEXIS

4827-8984-0887.2

15

107413 at *21 (citing *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 492 (6th Cir. 2011) and *Rhea v. West Tenn. Violent Crime & Drug Task Force*, 2018 U.S. Dist. LEXIS 222233, *8–9 (W.D. Tenn. Dec. 12, 2018)); *see also Berry v. Univ. Sch. of Nashville*, 2020 U.S. Dist. LEXIS 105906, *11 (M.D. Tenn. June 17, 2020) (applying these factors when analyzing joint employment status under ADA and FMLA). Therefore, although whether an entity is an employer or joint employer is ultimately a question of fact, Plaintiff must nevertheless plead sufficient facts to plausibly suggest that these factors will favor a finding that Acadia and JV Holdings were her employers in order to survive dismissal. Plaintiff has failed to plead such facts.

Plaintiff has not pled in even a conclusory fashion that Acadia or JV Holdings had the ability to (1) hire, fire, or discipline her, (2) affect her compensation and benefits, or (3) direct and supervise her performance during her employment with Red River. *See generally* Compl. She does not plead these necessary facts to establish that Acadia or JV Holdings was her joint employer because she cannot; Plaintiff is already well-aware that neither entity exercised the requisite control over her employment. *See Hamm*, 2021 U.S. Dist. LEXIS 62842 at *19–21 (discussing in the context of Acadia's lack of contacts with Louisiana, the unrebutted evidence that "Acadia has never employed Plaintiff; that Plaintiff's employer [in Louisiana] is Acadia LaPlace Holdings, LLC; that Acadia does not control the operations of River Place Behavioral Health; that Acadia does not possess the power to hire or fire hourly employees at River Place Behavioral Health; that Acadia does not supervise or control the work schedules or conditions of employment for hourly employees at River Place Behavioral Health; and that Acadia does not maintain employment records for hourly employees at River Place Behavioral Health").

Plaintiff does make vague allegations about "Defendants" collective actions as well as conclusory statements that she was "employed by Defendants Acadia Healthcare Company, Inc. and Acadia JV Holdings, LLC" and that Defendants were her "employers" or "joint employers," but these conclusory and undifferentiated allegations are insufficient for her to plausibly plead a claim against Acadia or JV Holdings.  *See* Compl. at ¶ 12; *see also id.* at ¶¶ 19, 23, 25, 28, 41, 60; *see also Boyce v. SSP Am. MDW, LLC*, 2019 U.S. Dist. LEXIS 127959, *9 (N.D. Ill. July 31, 2019) ("Most of Boyce's allegations refer generally to 'Defendants,' which he defines to include both MDW and SSP, but such vague and undifferentiated allegations are not sufficient to establish a joint-employer relationship."); *Sutton v. Cmty. Health Sys.*, 2017 U.S. Dist. LEXIS 133712, *16–17 (W.D. Tenn. Aug. 22, 2017) (dismissing a defendant because "the complaint contains zero specific allegations regarding Defendant CHSI" and plaintiff's "[a]ttempt[s] to establish joint employment based solely on the general allegations, without more, . . . does not allege enough specific facts to support the contention that CHSI is a joint employer in this case"); *Ballas v. Chickasaw Nation Indus., Inc.*, 2014 U.S. Dist. LEXIS 140214, *6 (W.D. Okla. Oct. 2, 2014) ("Plaintiffs' allegation that the DOT is a joint employer is a bare legal conclusion and is not sufficient under *Iqbal* and *Twombly*[.]"); *Boateng v. Ret. Corp. of Am. Partners, L.P.*, 2013 U.S. Dist. LEXIS 197898, *17–18 (N.D. Ga. Mar. 5, 2013) ("Plaintiff's description of HR One Services as a "joint employer" [in her complaint] is a legal conclusion[.]").  Also insufficient are her vague allegations of "Defendants" concerted efforts to deny her and her putative collective members meal breaks or to compel them to work off-the-clock.  *See Berry*, 2020 U.S. Dist. LEXIS 105906 at *22 ("[T]he Court disagrees with Plaintiff that his allegation that Defendants 'jointly decided to discriminate against [him] by determining that he was scaring the children in the dining hall,' is sufficient to allege a joint-employer relationship.").

Further, even if Plaintiff's general allegations of Acadia implementing policies and practices that "are consistent and universal across Acadia Healthcare facilities" could support an inference that Acadia (let alone JV Holdings) exercised sufficient control over her employment to be a joint employer, they cannot do so here because such allegations are directly contradicted by the few specific factual allegations that are contained in her Complaint. Those allegations show that the practices and policies at the two facilities where Plaintiff worked were in fact different and not dictated by Acadia. *Compare* Compl. at ¶ 16 ("Acadia Healthcare Company, Inc. directs and controls those shell companies in a manner that suits Acadia Healthcare Company, Inc.'s interests. Defendant Acadia Healthcare Company, Inc. drafts and implements human resources, payroll, timekeeping, and meal break policies at the healthcare facilities that are facially 'owned' by its subsidiary entities, as well as facilities around the country.") and ¶ 36 ("Acadia Healthcare's policies and practices giving rise to the wage-and-hour violations alleged herein are consistent and universal across Acadia Healthcare's facilities, regardless of location. Acadia Healthcare institutes the same policies and practices across all of their facilities.") *with* ¶ 2 ("Acadia Healthcare's various locations around the country have used differing mechanisms to enact this cost-shaving scheme, whether by automatically deducting time from the workers' time records to account for an unpaid meal break or by requiring the workers to manually clock out . . . .") and ¶ 30 ("While the specific mechanism for recording these unpaid meal breaks may differ from facility to facility . . .") and ¶ 31 ("[A]t Red River Hospital in Texas, non-exempt healthcare workers are superficially given the option to clock out for lunch if they leave Defendants' premises for their meal break . . . . If a patient care worker does not manually clock out for their meal break, Defendants apply an automatic time deduction policy that removes the equivalent of 30 minutes of time from the workers' timekeeping records." "[A]t River Place

Behavioral in Louisiana, while the facility does not apply an automatic time deduction practice like at Red River Hospital, it nonetheless requires non-exempt patient care workers to manually clock out for their unpaid meal breaks . . . .").

Accordingly, because Plaintiff has not alleged any facts in her Complaint that would plausibly show Acadia or JV Holdings was her employer, such as the ability to hire, fire, or discipline her or supervise her work performance, her claims against them should be dismissed. *See Alford v*, 2020 U.S. Dist. LEXIS 107413 at 25–29 (dismissing FLSA claims against alleged joint employer despite allegations that it "maintained 'strict controls'" and "has strict requirements for how [employees] are trained, their duties, their appearance, and their uniforms" because they were missing "*more* relevant" factual allegations like whether the entity "maintained any such 'strict controls' over . . . hiring, firing or disciplining of [employees] or over the compensation and benefits"); *Berry*, 2020 U.S. Dist. LEXIS 105906 at *21 ("As noted above, to demonstrate that USN was his employer, Plaintiff must allege facts showing that USN specifically exercised control over his working conditions—for example, that USN had the power to hire and fire him, that USN supervised and controlled his work schedule and conditions of employment, or that USN determined how he was paid.  Plaintiff alleges none of these things.") (internal citation omitted).

## IV.    CONCLUSION

For these reasons, the Court should grant the Motion to Dismiss and dismiss Plaintiff's Complaint.

Respectfully submitted:

/s/ *Andrew S. Naylor*
Andrew S. Naylor (Tenn. Bar No. 017128)
Frederick L. Conrad III (Tenn. Bar No. 32043)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
Phone: 615-244-6380
andy.naylor@wallerlaw.com
trip.conrad@wallerlaw.com

*Counsel for Defendants Acadia Healthcare Co., Inc.,
Acadia JV Holdings, LLC; and Red River Hospital,
LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Memorandum in Support of Motion to Dismiss has been served via CM/ECF to:

David W. Garrison (Tenn. Bar No. 24968)
Joshua A. Frank (Tenn. Bar No. 33294)
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, Tennessee 37219
Tel: 615-244-2202; Fax: 615-252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

Carolyn H. Cottrell (CA Bar No. 166977)
Ori Edelsteain (CA Bar No. 268145)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

William M. Hogg (TX Bar No. 24087733)
Michael K. Burke (TX Bar No. 24012359)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com
mburke@schneiderwallace.com

*Counsel for Plaintiff*

on this the 15th day of September, 2021.

/s/ *Frederick L. Conrad III*