IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY HAMM, on behalf of herself and all others similarly situated ) ) ) Plaintiff, ) ) ) v. ) ) ACADIA HEALTHCARE CO., INC.; ) ACADIA JV HOLDINGS, LLC; AND ) RED RIVER HOSPITAL, LLC ) ) Defendants. ) | Case No. 3:21-cv-00550 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**

Plaintiff's counsel filed this lawsuit because they seek to launch a nationwide FLSA collective action against Acadia regardless of whether they have any legitimate basis for doing so. In fact, their conduct in both this case and the related Louisiana Lawsuit has revealed that they are willing to invent false allegations and induce their client to commit perjury to fulfill this desire. *See* E.D. La., Doc. Nos. 98, 109.

Because they cannot deny that they filed knowingly false pleadings and discovery responses to perpetuate frivolous claims, Plaintiff's counsel do not even try to do so. Instead, the Opposition to Defendants' Rule 11 Motion is replete with unsubstantiated personal attacks, misdirections, and outright falsehoods, none of which refute Defendants' showings that Plaintiff's counsel should be sanctioned for their Rule 11, Rule 26, and § 1927 violations or that this case should be dismissed. Looking past the vitriolic language and red herrings, however, it is apparent that Plaintiff's counsel have no tenable defense for their sanctionable conduct. Accordingly, the Court should impose sanctions.

**1. Plaintiff's Complaint and filings contain numerous false allegations and statements that Plaintiff's counsel knew were false when filed, and the pleadings have not been amended or withdrawn now that their falsity is undeniable.**

Plaintiff's counsels' first misdirection is their argument that the only issue with their pleadings was some confusion in the Louisiana Complaint over the time deduction practice between Red River and River Place and that these facilities only have "slightly different meal period issues" but are otherwise the same. Doc. No. 37 at 2–4, 9–10. They further pretend that any other issues with the pleadings were the typical "narrowing" of the claims through discovery. *Id.* at 4, 23. This framing of the allegations and undisputed facts is false.

As detailed in Defendants' motion, Plaintiff's Complaint, Doc. No. 1, and her Opposition to Defendants' Motion to Dismiss, Doc. No. 27, (and now her Opposition to Rule 11 Sanctions) contain numerous allegations and statements about Acadia, JV Holdings, and the allegedly "universal" practices at Acadia-related facilities that Plaintiff's counsel knew were false at the time they signed and filed the documents.[1] For example, the Complaint alleges that "[d]uring the course of her employment, Plaintiff learned that Acadia[]'s policies and practices giving rise to the wage-and-hour violations alleged herein are consistent and universal across Acadia[]'s facilities, regardless of location" and that these common policies and practices "subject[] Class and Collective members to the same uniform course of treatment." Doc. No. 1 at ¶ 36. It further claims that requiring "hourly-paid healthcare workers to remain on-duty and subject to interruption throughout their unpaid meal breaks . . . is common and consistent across these locations and facilities, regardless of the individual managers and supervisors implementing these policies and practices." *Id.* at ¶ 34. Plaintiff's counsels' filings repeat these same false claims that *Acadia* imposes these "universal policies" to "remain on-duty during meal breaks,"

---

[1] Although the Complaint was signed and filed by Plaintiff's local counsel, the history of the litigation makes it reasonable to assume that local counsel relied on lead counsel Schneider Wallace in filing the pleading and had no reason to suspect that lead counsel knew the allegations were false until they received Defendants' Rule 11 letter.

4883-9119-9766.1

2

"discourage[] reporting those meal breaks," and encourages employees to work off-the-clock at all of the associated facilities. *See, e.g.*, Doc. No. 27 at 3–4.

Plaintiff, however, has testified that the only two Acadia-related facilities she has any knowledge of—whether from working there or otherwise—are Red River and River Place, Exhibit A, Pl. Dep. Tr. at 154:7–20, 171:12–172:20, and that these two facilities had completely different timekeeping and meal break practices. *Id.* at 145:11–16, 152:16–153:15, 158:13–17, 169:21–170:7. At River Place, there was no issue with employees working off-the-clock, *id.* at 36:8–19, 93:19–95:5, 104:6–10, 128:23–129:10, 146:24–147:9, 159:15–161:14, 169:21–170:20, being discouraged from reporting work time, *id.* at 95:3–14, 132:3–19, 145:17–146:22, 171:3–11, or being required to remain "on-duty" during meal breaks.[2] *Id.* at 33:13–34:25, 93:19–94:17, 116:1–6, 127:17–128:11, 146:24–147:9, 158:4–12, 163:21–164:8, 167:8–169:20; *see also* E.D. La., Doc. Nos. 109 at 2–4. Moreover, while she did testify to some (but not all) of the pled issues at Red River, she repeatedly explained that they were caused by a specific managerial employee at Red River violating the lawful policies and telling others to do the same rather than the policies themselves, an explanation that Plaintiff's counsel even repeat in their brief. *Id.* at 53:14–55:12, 62:17–70:15; Doc. No. 37 at 5–6. Thus, Plaintiff's counsel could not have had a reasonable basis to believe the allegations of universal practices at Acadia-related facilities giving rise to their

---

[2] Contrary to Plaintiff's counsels' repeated false representations to the Court that there was only a "slightly different" meal break issue at River Place and that employees at both facilities had to remain "on-duty" during these breaks, Doc. No. 37 at 2, 4–5, 8, 12–13, Plaintiff expressly denied such a practice ever occurred at River Place. Ex. A at 163:21–164:8 ("**Q. . . . 'Even though we're clocked out for those 30 minutes, we have to remain on-duty, engaged, and can be interrupted during our break.'** A. No. **Q. That is not true?** A. No. And that was just at Red River."); *see also id.* at 127:17–128:11. Indeed, Plaintiff counsel knows that she expressly and repeatedly denied these claims during her deposition, which is why ***they rewrote Plaintiff's testimony in the errata sheet*** to falsely state the exact opposite of her live testimony. *See* Doc. No. 38-1 (literally turning answers of "no" to "yes" without substantive explanation). Such altering of Plaintiff's testimony after the fact and inducing her to commit perjury by signing the errata sheet is improper and sanctionable in its own right. *See Southall v. USF Holland, Inc.*, 2017 U.S. Dist. LEXIS 236515, *6 (M.D. Tenn. Nov. 8, 2017) ("Rule 30(e) does not allow one to alter what was said under oath.") (quoting *Trout v. FirstEnergy Corp.*, 339 Fed. Appx. 560, 565 (6th Cir. 2009)); *see also* E.D. La. Doc. No. 103.

4883-9119-9766.1

claims were true when they filed the Complaint because Plaintiff possessed—and presumably told her counsel[3]—facts demonstrating such allegations were untrue.

In addition, thanks to discovery conducted in Louisiana, Plaintiff's counsel had already received substantial undisputed evidence showing that Acadia did not in fact exert the level of control over the practices at its subsidiaries' facilities to support these allegations and that JV Holdings was a mere holding company with no employees that should never have been a party to any case. *See* E.D. La., Doc. Nos. 22-2, 22-3, 22-4, 29-3, 38, 41, 43-2, 46. They also had previously acknowledged that the very practices now complained of were not in fact consistent and universal. *See* E.D. La., Doc. No. 61-3 at 5 (admitting the "auto deduct practices largely [did not] happen[] . . . at the Louisiana/River Place location" but claiming they did at Red River).

These false pleadings and statements are not minor allegations that Plaintiff initially believed to be true but were narrowed by later discovery. They are the entire basis for her asserting any claims against Acadia or JV Holdings on behalf of a nationwide collective rather than merely asserting claims against Red River on behalf of Red River's current and former hourly employees. They were also known to be false at the time of filing based on the undisputed evidence presented by Defendants in Louisiana and Plaintiff's own knowledge of the disparate practices at Red River and River Place. Moreover, not only was there never a basis to make these false allegations in the first place, these indisputably false allegations have still not

---

[3] Defendants' statements in their Motion that they believed Plaintiff's counsel had not communicated with their client prior to the filing the Complaint were reasonable in light of (1) Plaintiff's testimony that she had never met any of her counsel until the week before her deposition and did not know any of their names, Ex. A at 10:16–11:25, (2) the innumerable false allegations and false sworn statements filed and served on her behalf in both cases that she freely admitted were untrue, *Id.* at 143:14–173:9, and (3) Plaintiff's counsels' refusal to provide any accounting of their communications with Plaintiff in response to Defendants' Rule 11 Letter and draft motion. *See* Doc. No. 33-2. Moreover, such assumptions gave Plaintiff's counsel the benefit of the doubt that their pleadings had not been knowingly false. If Plaintiff's counsels' representations in their brief about communications with their client—which are premised solely on billing records as it appears that all the attorneys who purportedly spoke to Plaintiff did not provide affidavits and are no longer associated with the firm—are in fact true, then Plaintiff's counsel were not just reckless, they deliberately filed and perpetuated two frivolous lawsuits with knowingly false allegations.

4883-9119-9766.1

been removed from the operable pleadings despite Plaintiff's counsel now having had seven weeks to do so. Such conduct violates Rule 11. *See* Fed. R. Civ. P. 11(b)(1), (3).

2. **Plaintiff's Discovery Responses contain false sworn statements that Plaintiff's counsel knew were false and thus induced their client to commit perjury, and they have refused to amend or withdraw them now that their falsity is undeniable.**

Plaintiff's counsel's misdirection that there was nothing inappropriate with their discovery conduct simply because Plaintiff was unable to remember "finaliz[ing]" certain discovery documents or declarations is false. *See* Doc. No. 37 at 3. Plaintiff did not just testify that she could not remember finalizing her discovery, she testified that while she remembered being asked questions about the topics covered, she never saw the responses at all, and those responses—which are materially identical to the ones served here and—were full of patently false statements. *See* Ex. A at 154:21–165:9. She also testified that she did not sign the responses and had no idea how her signature got on them. *See id.* Plaintiff's testimony shows that Plaintiff's counsel signed their names to false discovery responses that *at best* they already had discovery indicating were false, in fact believed them to be false, and possessed no facts indicating they might be true. *See infra*. At worst, they intentionally drafted false discovery responses and either induced their client to commit perjury or signed her name to them without authorization.[4] This conduct too is sanctionable. *See* Fed. R. Civ. P. 26(g).[5]

---

[4] Plaintiff's counsel take great umbrage at Defendants' belief that Plaintiff's verification signature might have been forged, but such a conclusion is more than reasonable in light of Plaintiff's testimony that she never saw the discovery responses, that those responses were full of false statements, and that she did not in fact ever sign them. *See* Ex. A at 154:21–165:9. Such a conclusion was made all the more reasonable when Plaintiff's counsel did not even deny that the verification signature was a forgery in their response to Defendants' letter specifically asking them to explain Plaintiff's testimony on that exact issue. *See* Doc. No. 33-2. Moreover, even now Plaintiff's counsel merely state that they provided all of the perjured declarations and discovery responses to an email address and that someone with access to that email address signed the documents. *See* Doc. No. 37 at 10–12. They do not provide an affidavit from Plaintiff saying that she did so, nor did the errata sheet attempt to change the portion of her testimony stating that she did not review or sign the discovery responses. *See* Doc. No. 38-1.

[5] To the extent Plaintiff argues sanctions should not be imposed for their discovery related conduct because Rule 11 only applies to filings with the Court, that argument is meritless. As Defendants stated in their Motion, Rule 26(g) imposes similar obligations on counsel and parties for discovery filings and provides for similar sanctions in the event of violations. *See HLFIP Holdings, Inc. v. Rutherford Cty.*, 2020 U.S. Dist. LEXIS 213091, *20 (M.D. Tenn.

4883-9119-9766.1

### 3. Without any basis to assert a claim against Acadia or JV Holdings, this Tennessee lawsuit is patently frivolous.

While Plaintiff's testimony has indicated she may have some basis to bring a lawsuit against Red River in Texas,[6] it has also affirmatively refuted any basis for bringing claims against Acadia or JV Holdings. Without Acadia or JV Holdings as defendants, however, there is absolutely no basis for this Court to have jurisdiction to adjudicate the claims of a Louisiana plaintiff against a Texas and Delaware defendant over conduct that occurred exclusively in Texas. Therefore, this case is frivolous and must be dismissed. *See* Doc. Nos. 22–23, 29.

Respectfully submitted:

/s/ *Frederick L. Conrad III*
Andrew S. Naylor (Tenn. Bar No. 017128)
Frederick L. Conrad III (Tenn. Bar No. 32043)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
Phone: 615-244-6380
andy.naylor@wallerlaw.com
trip.conrad@wallerlaw.com

*Counsel for Defendants Acadia Healthcare Co., Inc., Acadia JV Holdings, LLC; and Red River Hospital, LLC*

---

May 27, 2020) ("The standard for determining whether to impose sanctions under Rule 26(g)(3) is the same objective standard that applies to determination under Rule 11.") (internal quotations omitted).
[6] Albeit one purely on her own behalf given the substantial differences between her experience and those of the putative class. *See* E.D. La. Doc. Opposition to Conditional Cert. to be filed on March 21, 2022.
4883-9119-9766.1

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Reply in Support of Motion for Rule 11 Sanctions has been served via CM/ECF to:

    David W. Garrison (Tenn. Bar No. 24968)
    Joshua A. Frank (Tenn. Bar No. 33294)
    BARRETT JOHNSTON MARTIN & GARRISON, LLC
    Philips Plaza
    414 Union Street, Suite 900
    Nashville, Tennessee 37219
    Tel: 615-244-2202; Fax: 615-252-3798
    dgarrison@barrettjohnston.com
    jfrank@barrettjohnston.com

    Carolyn H. Cottrell (admitted *pro hac vice*)
    Ori Edelsteain (admitted *pro hac vice*)
    SCHNEIDER WALLACE COTTRELL KONECKY LLP
    2000 Powell Street, Suite 1400
    Emeryville, California 94608
    Tel: (415) 421-7100; Fax: (415) 421-7105
    ccottrell@schneiderwallace.com
    oedelstein@schneiderwallace.com

    Michael K. Burke (admitted *pro hac vice*)
    Jordyn D. Emmert (admitted *pro hac vice*)
    SCHNEIDER WALLACE COTTRELL KONECKY LLP
    3700 Buffalo Speedway, Suite 960
    Houston, Texas 77098
    Tel: (713) 338-2560; Fax: (415) 421-7105
    mburke@schneiderwallace.com
    jemmert@schneiderwallace.com

    *Counsel for Plaintiff*

on this the 18th day of March, 2022.

                                  /s/ *Frederick L. Conrad III*