IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY HAMM, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) NO. 3:21-cv-00550 ) ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY ) |
| ACADIA HEALTHCARE CO., INC., ACADIA JV HOLDINGS, LLC, and RED RIVER HOSPITAL, LLC | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Pending before the Court are Defendants' Motion to Dismiss (Doc. No. 22) and Motion for Rule 11 Sanctions (Doc. No. 33). Both motions have been fully briefed and are ripe for review. For the reasons stated below, Defendants' Motion to Dismiss will be GRANTED in part, and DENIED in part; and the Motion for Sanctions will be DENIED.

### I. BACKGROUND

Plaintiff Amy Hamm is a nurse who currently resides in Destrehan, Louisiana. (Doc. No. 1, ¶ 12). Hamm worked as a nurse at Red River Hospital ("Red River") in Wichita Falls, Texas, and at River Place Behavioral Health ("River Place") in LaPlace, Louisiana. (*Id*.). She asserts that while employed at these facilities, she was not paid for all hours worked and was not paid time and a half for hours worked in excess of forty hours per week. (*Id*. ¶¶ 4-5).

In this case, Plaintiff brings claims against Red River Hospital, LLC ("Red River"), Acadia Healthcare Company, Inc. ("Acadia Healthcare"), and Acadia JV Holdings ("JV Holdings")

alleging violations of the Fair Labor Standards Act ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and a putative nationwide class of similarly situated employees. She also brings claims under Texas state law on behalf of herself and a putative "Texas Class" pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

Plaintiff's claims arising out of her work at River Place in Louisiana are the subject of a separate lawsuit in the United States District Court for the Eastern District of Louisiana. *Hamm v. Acadia Healthcare Company, Inc.*, No. 20-1515 (E.D. La. May 22, 2020) (the "*Louisiana Action*"). The *Louisiana Action* also named Acadia Healthcare and Red River as defendants. After allowing jurisdictional discovery, the Louisiana court dismissed both of these Defendants for lack of personal jurisdiction. *Louisiana Action*, Doc. No. 50 (March 31, 2021).

Now before the Court is Defendants' Motion to Dismiss Red River for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and Motion to Dismiss Acadia Healthcare and JV Holdings for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely 'upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The party asserting jurisdiction has the burden of proof. *Ingram Barge Co. v. Louis Dreyfus Co.*, 455 F. Supp. 3d 548, 554 (M.D. Tenn. 2020)

(citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). "Although plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, that burden is 'relatively slight' where, as here, the district court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d at 899 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "To defeat dismissal in this context, plaintiffs need make only a prima facie showing that personal jurisdiction exists." *Id*. To do so, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing the court has jurisdiction." *Ingram Barge Co.*, 455 F. Supp. 3d at 554 (citing *Theunissen*, 935 F.2d at 1458). When determining whether the party asserting jurisdiction has made a prima facie showing, the court construes the facts in the light most favorable to that party. *Id*.

B.  **Personal Jurisdiction Over Red River**

The Court may only exercise "personal jurisdiction over a nonresident defendant" if jurisdiction "meets the [forum] state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Tennessee's long-arm statute authorizes Tennessee courts to exercise jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States," in other words, to the limits of due process. *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000) (citing Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2)); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 454 (6th Cir. 1993) ("[T]he Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause.").

3

"The bedrock principle of personal jurisdiction due process is that when a Defendant is not physically present in the forum, [he or she] must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court distinguishes between two types of personal jurisdiction – general and specific. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contact in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678-79 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). General jurisdiction, on the other hand, allows the court to "exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Id*.

Plaintiff does not contend that the court has specific jurisdiction over Red River. Accordingly, only general jurisdiction is at issue here. "A court may assert general jurisdiction over foreign [] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF*, 137 S.Ct. at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "The 'paradigm' forums in which a corporate defendant is 'at home' … are the corporation's place of incorporation and its principal place of business." *Id*. "Those affiliations have the virtue of being unique – that is each ordinarily indicates only one place – as well as easily ascertainable." *Daimler*, 571 U.S. at 137. "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id*. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's

4

operations in another forum 'may be so substantial and of such a nature to render the corporation at home in that State.'" *BNSF*, 137 S.Ct. at 1558.

Plaintiff does not contend this is an "exceptional case" such that Red River is subject to personal jurisdiction due to the nature of its operations in Tennessee. With regard to the paradigm forums – place of incorporation and principal place of business – there is no dispute that Red River is incorporated in Delaware and is, therefore, not subject to general personal jurisdiction in Tennessee based on its place of incorporation. Although determination of a corporation's principal place of business is intended to be "easily ascertainable," *Daimler*, 571 U.S. at 760, the parties disagree on the location of Red River's principal place of business and whether the court may exercise general jurisdiction over Red River on that basis. Plaintiff argues Red River's principal place of business is in Franklin, Tennessee. Defendants claim the principal place of business is in Wichita Falls, Texas.

A corporation's principal place of business is "the place where officers direct, control, and coordinate a corporation's activities," often referred to as the corporation's "nerve center."[1] *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under *Hertz*, the principal place of business, usually a corporation's main headquarters, must be a single place. *Id*. at 93.

---

[1] Notwithstanding that *Hertz* defined principal place of business in the context of the diversity jurisdiction statute, the lower federal courts have regularly applied the *Hertz* definition in other contexts, including in personal jurisdiction analysis. *See e.g.*, *Radair, LLC v. Alaska Airlines, Inc*., 2022 U.S. Dist. LEXIS 10510 (W.D. Tenn. Jan. 20, 2022) (choice of law analysis considering principal place of business); *Wright v. Stryker Corp*., 2020 WL 1290245 (S.D. Ohio Mar. 18, 2020) (personal jurisdiction); *Rafferty v. Denny's, Inc.*, 2019 WL 2924998 at n.3, 4 (N.D. Ohio Jul. 8, 2019) (personal jurisdiction); *Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*., 2016 WL 7209553 (E.D. Tenn. Dec. 12, 2016) (personal jurisdiction); *Allstate Ins. Co. v. Electrolux Home Prods*., 2014 WL 3615382, at *11, n.3 (N.D. Ohio, Jul. 19, 2014) (personal jurisdiction); *see also*, 16 Moore's Federal Practice – Civil § 108.41 (2022) ("Although the [*Hertz*] Court provided the nerve center test while resolving conflicting interpretations of the diversity jurisdiction statute, the same approach should apply to general jurisdiction analysis.").

Defendants' contention that the Sixth Circuit applies the "total activity test" to determine a corporation's principal place of business is mistaken. In support of this assertion, Defendants rely upon *Waste Mgmt. v. Mock*, No. 3:09-00409, 2009 WL 2038144 (M.D. Tenn. Jul. 9, 2009), which in turn cites *Gafford v. General Electric Co.*, 997 F.2d 150, 163 (6th Cir. 1993), which was was abrogated by *Hertz*. *See Hertz*, 559 U.S. at 91-93. (rejecting *Gafford*'s "center of gravity" test for principal place of business in favor of a "nerve center" test).

Defendants assert Red River's principal place of business is Wichita Falls, Texas. (*Id.*). In support of this contention, Defendants submitted the Declaration of Michelle Powell, Chief Executive Officer for Red River. (Powell Decl., Doc. No. 22-2). Powell states that "Red River's principal place of business is in Wichita Falls, Texas, where it receives correspondence and its managers principally conduct its affairs in operating Red River Hospital." (*Id.*, ¶ 3). In addition, Red River is registered to do business in Texas, not in Tennessee, and Red River does not have any offices in Tennessee. (*Id.*, ¶¶ 2-3). Defendants also submitted the Declaration of Andrew Honeybone, Senior Vice President of Human Resources for Acadia Healthcare. (Doc. No. 22-3). Honeybone states that Red River is a related, but legally distinct corporate entity from Acadia Healthcare and JV Holdings. (*Id.*, ¶ 2). He adds that Acadia Healthcare provides some minimum standard policies with which Red River must comply in the operation of Red River Hospital as well as model policies that may be used, but that the daily operations of Red River Hospital are completely controlled by Red River. (*Id.*, ¶¶ 8, 9).

Plaintiff argues that Red River's principal place of business is Franklin, Tennessee, based on corporate filings indicating that Red River's "highest officers" are located there. Plaintiff submitted corporate filings obtained from the Texas Secretary of State website which list corporate

6

officers for Red River and state that these corporate officers have mailing addresses in Franklin, Tennessee. (Doc. Nos. 27-3 – 27-6). The same filings state that Red River's principal place of business is Wichita Falls, Texas. (*Id*.).

Even viewed in the light most favorable to the Plaintiff, these corporate filings do not show that Franklin, Tennessee, is the "nerve center" of Red River or functions as Red River's headquarters. At most, the corporate filings establish that certain Red River officers receive mail there. However, they are, standing alone, insufficient to show that Red River's activities are directed, controlled, and coordinated by officers in Franklin, Tennessee. Moreover, the evidence submitted by Defendants indicates that Red River's principal place of business is in Wichita Falls, Texas, where it operates Red River Hospital. Based on the evidence submitted by the parties, the Court finds Red River's principal place of business is Wichita Falls, Texas.

Because is not incorporated in Tennessee and does not have a principal place of business in Tennessee, Red River is not "essentially at home" in Tennessee such that it is subject to the general jurisdiction of this Court. Accordingly, Court finds Plaintiff has not met her burden to show that Red River is subject to personal jurisdiction in this Court.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**A. Standard of Review**

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). Accordingly, although the declarations and other evidence submitted by the parties were considered by the Court to determining the personal jurisdiction question, they are not appropriate for consideration on the motion to dismiss under Rule 12(b)(6) and will not be considered.

### B. Claims Against Acadia Healthcare and JV Holdings

Defendants argue Acadia Healthcare and JV Holdings should be dismissed because Plaintiff fails to allege Acadia Healthcare or JV Holdings was her employer or joint employer. Defendants argue this insufficiency dooms her FLSA claims, along with her claims brought under Texas common law for quantum meruit, money had and received, and unjust enrichment. (Doc. No. 23 at 15).

An employer who violates the overtime wage provisions of the FLSA is liable to the affected employee for unpaid overtime compensation. 29 U.S.C. §§ 207 and 216(b). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" *Rhea v. West Tenn. Violent Crime & Drug Task Force*, 825 F. App'x 272, 275 (6th Cir. 2020) (citing 29 U.S.C. § 203(d)). The FLSA contemplates that an employee may have "several simultaneous employers who may be responsible for compliance with the

8

FLSA." *Martin v. Lincor Eatery, Inc.*, 423 F. Supp. 3d 432, 437 (E.D. Mich. 2019) (quoting *Dole v. Elliott Travel & Tours*, 942 F.2d 962, 965 (6th Cir. 1991)); *Rhea v. West Tenn. Violent Crime & Drug Task Force*, No. 2:17-cv-02267, 2018 WL 7272062, at *3 (W.D. Tenn. Dec. 12, 2018), *aff'd*, 875 F. App'x 272 (6th Cir. 2020) (same).

The determination of whether an entity is an employer focuses on the "'economic reality' rather than 'technical concepts' of the employment." *Rhea*, 825 F. App'x at 275 (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 31 (1961)). The Sixth Circuit has identified the following non-exhaustive factors courts should consider as relevant to the "economic reality" of the relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 276 (citing *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) and *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014)).

Against this legal backdrop, the Court considers Defendants' argument that Plaintiff has not plausibly alleged that Acadia Healthcare or JV Holdings were joint employers. Plaintiff argues she has pleaded facts which raise a reasonable inference that Acadia Healthcare and JV Holdings maintained a level of control over her employment at Red River to plausibly infer they are joint employers for purpose of the FLSA. The Complaint broadly alleges that Acadia Healthcare, JV Holdings, and Red River "jointly, directly, or indirectly, controlled [her] employment terms, pay practices, timekeeping practices, and daily work." (Doc. No. 1, ¶ 23). More specifically, she alleges that Acadia Healthcare owns, operates, and manages Red River, and imposes common payroll, timekeeping, meal break, off-the-clock, and overtime rules across all of its healthcare

9

facilities that these facilities are required to follow. (*Id.*, ¶ 16, 36, 39, 40). The foremost example of these policies are Plaintiff's allegations that there were common payroll and timekeeping policies requiring employees to take 30-minute unpaid meal breaks while remaining "on duty" and to clock in and out for specified shift times even when performing work outside these hours. (*Id.*, ¶¶ 2-4, 29-34, 35). Plaintiff also alleges that she is supervised and paid by "Defendants," and that "Defendants" set her rate of pay. (*Id.*, ¶¶ 41-42, 60(d)).

These allegations do not address each of the factors to be considered. For example, Plaintiff does not allege that Acadia Healthcare and JV Holdings have the ability to hire or fire or that they maintain employment records. She has, however, alleged that they set rates of pay, payroll and hours policies, and supervise her work. At this stage, these allegations are sufficient to plausibly allege that Acadia Healthcare is a joint employer. Upon further factual development, these facts may or may not establish that Acadia Healthcare and/or JV holdings had the requisite control over Plaintiff's employment to qualify them as joint employers.

Defendants urge the Court to consider that Plaintiff had the opportunity to develop facts during jurisdictional discovery in the *Louisiana Action* and that the facts developed in that case show that "neither entity exercised the requisite control over her employment." (Doc. No. 23 at 16 (citing *Louisiana Action*)). Defendants note that in the *Louisiana Action*, the court, considering whether it could exercise personal jurisdiction over Acadia Healthcare or JV Holdings, found "unrebutted evidence that 'Acadia [Healthcare] has never employed Plaintiff, that Plaintiff's employer [in Louisiana] is Acadia LaPlace Holdings, LLC; that Acadia [Healthcare] does not control the operations of River Place Behavioral Health; that Acadia [Healthcare] does not possess the power to hire or fire hourly employees at River Place Behavioral Health; that Acadia does not

10

supervise or control the work schedules or conditions of employment for hourly employees at River Place Behavioral Health; and that Acadia [Healthcare] does not maintain employment records for hourly employees at River Place Behavioral Health.'" (Doc. No. 23 at 16 (citing *Louisiana Action*, 2021 WL 1212539, at *7 (E.D. La. Mar. 31, 2021))).

This argument is misplaced for at least three reasons. First, on a motion to dismiss, with limited exceptions, the Court does consider matters outside the Complaint. Second, in the *Louisiana Action*, the court merely noted that in support of a motion to dismiss for lack of personal jurisdiction Acadia Healthcare submitted a declaration stated that it had never employed Plaintiff and other statements specific to Acadia Healthcare's control (or lack thereof) over Red River Behavior Health in Louisiana. *Louisiana Action*, Doc. No. 50 (March 31, 2021). Although the Louisiana court noted that Plaintiff did not produce evidence to refute these sworn declarations, it specifically declined to consider whether Acadia Healthcare was Plaintiff's joint employer with regard to her employment at the Louisiana facility, finding the question irrelevant to personal jurisdiction. *Id*. Third, the cited facts are specific to Plaintiff's employment *in Louisiana*. Defendants would have the Court not only consider facts outside the Complaint, but also infer that the facts about her Louisiana employment apply to Plaintiff's employment in Texas. There is a certain logic in that inference, particularly given Plaintiff's contention that Acadia Healthcare exerts the same level of control over employees working at all of its healthcare facilities. Nevertheless, such an inference is possible only if the Court construes the allegations and outside facts in favor of the Defendants, which is not the standard on a motion to dismiss.

Defendants also take issue with Plaintiff's allegations against "Defendants" collectively, arguing that such "undifferentiated" pleadings are insufficient to plausibly allege a claim against

Acadia Healthcare or JV Holdings. (Doc. No. 23 at 17). Plaintiff argues that she need not expressly attribute the economic reality factors to each individual defendant. (Doc. No. 27 at 16 (citing *Smith v. Guidant Global*, No. 19-cv-12318, 2019 WL 6728359, at *4 (E.D. Mich. Dec. 11, 2019))).

The plausibility of a claim based on collective allegations depends on the nature of the allegations and the claim. Some courts have permitted claims to proceed on collectively pleaded allegations. *See Smith*, 2019 WL 6728359, at *4-5. Others, however, have required at least some allegations of individualized conduct to permit claims against a defendant to proceed. *See e.g.*, *Sutton v. Cmty Health Sys.*, No. 1:16-cv-01318, 2017 WL 3611757, at *6 (E.D. Tenn., Aug. 22, 2017) (dismissing claims against a defendant on a joint employer theory of liability when the complaint did not contain any specific facts regarding the defendant).

Here, collective pleading weighs differently as to Acadia Healthcare and JV Holdings. The allegations against Acadia Healthcare include not only the collective allegations, but also several specific ones. For example, Plaintiff alleges that Acadia Healthcare owns and manages more than 500 behavioral hospitals, including Red River Hospital where Plaintiff worked in Texas, and implements policies related to human resources, payroll, time keeping, and meal breaks at these facilities. (Doc. No. 1, ¶¶ 13, 16, 27, 29). Together with the collective allegations that Defendants set the rate of pay and supervise her work, these allegations support an inference that Acadia Healthcare exercises some level of control over Plaintiff's employment. By contrast, the Complaint contains no specific allegations connecting JV Holdings to Plaintiff's employment at Red River Hospital except to allege that it is a "subsidiary[y], partner[], and/or agent[]" of Acadia Healthcare. (*Id.*, ¶ 16). The Complaint does not allege enough specific facts to support the allegation that JV Holdings is a joint employer.

12

Defendants argue that even if Plaintiffs allegations of Acadia Healthcare's policies and practices could support an inference that Acadia exercised sufficient control over her employment to be a joint employer, they cannot do so here because the allegations are directly contradicted by specific allegations in the Complaint. (Doc. No. 23 at 18). Here, Defendants refer to Plaintiff's concession that Acadia's various locations have different mechanisms for enforcing their mandatory unpaid meal break policy – some facilities require workers to clock out and other facilities automatically deduct time. (*Id*. (citing Comp., Doc. No. 1, ¶¶ 2, 30, 31)). Construing the allegations in the Complaint in the light most favorable to the Plaintiff, these slight differences in the manner of implementing the alleged meal break policy do not negate the inference that Acadia Healthcare had some control over the employees at Red River.

C. **Leave to Amend**

At the conclusion of her response to Defendants' motion to dismiss, Plaintiff requests the Court allow her the opportunity to amend the complaint. This request is denied without prejudice to filing a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a) and Local Rule 15.01(a)(1) (requiring motions for leave to amend to describe the substance of the amendments and attach as an exhibit the signed proposed amended pleading).

## IV. MOTION FOR SANCTIONS

Defendants move the Court to award sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure on grounds that the Complaint in this case (Doc. No. 1) alleges claims against Acadia Healthcare and JV Holdings that Plaintiff has "unequivocally testified under oath are untrue." (Doc. No. 33 at 1). Defendants contend that Plaintiff's counsel[2] filed these pleadings

---

[2] Defendants clarify that their allegations of misconduct are directed at Plaintiff's lead counsel, not

13

"without ever speaking to their client to determine if there was a factual basis for the allegations contained within them and after receiving substantial evidence from Defendants [in the *Louisiana Action*] demonstrating that the allegations were in fact false." (*Id*.). They complain that the apparent purpose of initiating and continuing this case is to "harass Defendants and increase the cost of litigation in violation of their ethical obligations under Rule 11(b)(1)." (*Id*. at 2). They seek dismissal of this lawsuit, a monetary penalty against Plaintiff's counsel, and attorneys' fees.

Defendants filed a substantially similar motion for Rule 11 sanctions in the *Louisiana Action*. *See Louisiana Action*, Doc. No. 98 (Feb. 25, 2022). The primary basis for the motions for sanctions in both cases was Plaintiff's January 24, 2022 deposition testimony, which the Louisiana court described as "at the very least, problematic." *Id.*, Doc. No. 128 at 2 (Jun. 28, 2022) (filed on the docket in this case at Doc. No. 42-1). After Defendants filed the motions for sanctions, Plaintiff submitted a signed errata sheet pursuant to Fed. R. Civ. P. 30(e), making a number of corrections. *Id*. "Nearly all of these corrections were substantive such as changing 'no' to 'yes,' and the reasons given were generally just 'Clarification' or 'Correction.'" *Id*. at 2-3. The Louisiana court allowed Defendants to reopen the deposition at Plaintiff's cost, and allowed the parties to provide supplemental briefing on the motion for sanctions. *See id*. at 3. On this record, the Louisiana court thoroughly considered Defendants' motion for sanctions and determined that although the motion was not wholly without merit, ultimately, the conduct was not sanctionable. *Id*.

The Court does not find cause to reach a different conclusion particularly when the Louisiana court benefitted from a more developed factual record. Accordingly, the motion for sanctions will be denied.

---

local counsel.

14

## V. CONCLUSION

For the reasons stated, Defendants' motion to dismiss (Doc. No. 22) is **GRANTED** in part as follows: Red River Hospital, LLC is **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; Defendant Acadia JV Holdings, LLC, is **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(6). The motion to dismiss Defendant Acadia Healthcare Company, Inc., is **DENIED**.

Defendants' Motion for Sanctions (Doc. No. 33) is **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE