**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **AMY HAMM, on behalf of herself and all others similarly situated** ) <br> ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **ACADIA HEALTHCARE CO., INC., and** ) <br> **ACADIA MANAGEMENT COMPANY, LLC,** ) <br> ) <br> **Defendants.** ) | **Case No. 3:21-cv-00550** |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
DISTRIBUTION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

---

To be granted the ability to distribute notice pursuant to 29 U.S.C. § 216(b) in the Sixth Circuit, Plaintiff must submit evidence establishing a "strong likelihood" that she personally is similarly situated to each of the tens of thousands of current and former "patient care" employees at the over 250 various medical facilities across the country operated by different entities affiliated with Defendants Acadia Healthcare Company Inc. and Acadia Management Company, LLC ("Defendants") with respect to the timekeeping and meal break practices and policies on which she basis her claims. Plaintiff, however, not only fails to present any evidence that she herself suffered any FLSA violation at all or any evidence about the timekeeping and meal break experiences for 98% of the individuals she seeks to join together, but she also has testified under oath that she is not and cannot be similarly situated to the putative collective. Thus, Plaintiff has not just failed to establish a "strong likelihood" of success on her claims, the record evidence— including Plaintiff's own testimony—shows a strong likelihood that her claims will fail.

1

During her deposition in *Hamm v. Acadia Healthcare Co. et al.*, E.D. La. Case No. 2:20-cv-1515 (the "Louisiana Lawsuit"), Plaintiff expressly testified that she has no basis for believing that the timekeeping and meal break practices on which her claims are based applied universally across facilities operated by entities affiliated with Defendants. She further testified that those practices and policies were in fact dramatically different between the only two facilities about which she had any knowledge: Red River Hospital in Wichita Falls, Texas and River Place Behavioral Health Hospital in LaPlace, Louisiana.[1] Plaintiff further testified that as the Nurse Supervisor at Red River Hospital, she was the very individual responsible for implementing and enforcing the facility's timekeeping and meal break policies to the other individuals in her putative collective and that, to the extent those lawful policies were not followed in practice, it was because of her own misconduct in willfully violating them. In short, Plaintiff unequivocally testified that she cannot be similarly situated with the collective to which she now requests the Court distribute notice and that her own experience working at two different facilities demonstrates that the patient care employees at facilities operated by the various entities affiliated with Defendants are not similarly situated to each other.

Plaintiff's motion does not point to any factual evidence to support her collective claims, let alone overcome her prior testimony precluding her representation of the putative collective. Instead, Plaintiff offers nothing more than misrepresentations of Defendants' corporate witnesses' testimony, out of context and generalized statements from lawful model policy documents, generic job descriptions, a declaration from another dissimilar Nurse Supervisor at Red River Hospital, and one boilerplate and self-serving declaration from a mere four other individuals at other facilities. This paltry showing is insufficient to establish that Plaintiff is

---

[1] Plaintiff's claims from her time at River Place Behavioral Health are at issue in the Louisiana Lawsuit and are specifically excluded from this lawsuit. *See* ECF No. 94 ("Am. Compl."), ¶ 11, n.1.

similarly situated to other patient care employees at Red River Hospital, let alone the tens of thousands of individuals employed at hundreds of different facilities across the country—each with its own structure, policies, practices, and management teams implementing those policies.

Indeed, Plaintiff provides no evidence whatsoever beyond her attorneys' speculation—contradicted by the sworn testimony of both Plaintiff and Defendants' corporate witnesses—to assert a common, unlawful policy or practice for more than 98% of the collective. Except for the five facilities at which Plaintiff and the boilerplate declarants worked, Plaintiff asks the Court to simply accept her unsubstantiated allegations about unlawful practices at other facilities based on nothing more than the fact that Defendants provide lawful, model policies that explicitly provide they are to be modified to fit the needs of each specific facility. Moreover, the five declarations Plaintiff provided are contradicted by Plaintiff's own testimony, a fair interpretation of the policy documents and the testimony of Defendants' corporate witnesses, and the declarations of 14 individuals from those same facilities provided by Defendants. Plaintiff's speculation and her paltry, refuted "evidence" would have been deficient for sending notice under the old, lenient standard for FLSA conditional certification, and it is patently insufficient to meet the rigorous "strong likelihood" standard required by the Sixth Circuit in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). Accordingly, Plaintiff's Motion should be denied.

## I.  FACTUAL BACKGROUND

### 1.  Plaintiff's Employment with Red River.

Red River Hospital LLC ("Red River") employed Plaintiff as a Nurse Supervisor at Red River Hospital in Wichita Falls, Texas from February 2018 until early February 2020. Ex. A, Plaintiff's Louisiana Lawsuit Dep. Tr., at 21:14–22.[2] Plaintiff then worked as a Nurse Supervisor

---

[2] Pursuant to Federal Rule of Civil Procedure 32(a)(8): "A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same

for Acadia LaPlace Holdings, LLC ("LaPlace") at River Place Behavioral Health in LaPlace, Louisiana for eight months until she quit in September 2020. *Id.* at 19:25–20:2, 21:14–22. At both facilities, Plaintiff worked as the night shift Nurse Supervisor. *Id.* at 21:23–22:8, 25:16–25.

At all relevant times, Red River's policies have required that patient care staff be clocked in and compensated for all time they spend working, and those same policies expressly prohibit working off-the-clock. Ex. B, Recording Work Time Policy ("Working "off-the-clock", *i.e.* time that is not recorded is strictly prohibited. Non-exempt employees must record and be paid for all time worked."). They likewise require patient care staff to be provided bona fide meal breaks where they are to be relieved of all duties and away from their workstation (including leaving the facility). Ex. C, Rest and Meal Breaks Policy. Nothing contained in these policies require or encourage employees to remain "on-duty" during their meal breaks or arrive early or leave late for their shifts. *See generally* Ex. B–C. Patient care staff at Red River Hospital follow these policies and thus receive bona fide meal breaks during their shifts and are fully compensated for all time they spent working. *See* Ex. J, Morris Decl. ¶¶ 10–13; Ex. K, Ayers Decl. ¶¶ 10–13; Ex. L, Nelson Decl. ¶¶ 8–10; Ex. M, Menasco Decl. ¶¶ 9–12; Ex. N, Koonce Decl. ¶¶ 9–13.

As the Nurse Supervisor at Red River Hospital, Plaintiff was responsible for ensuring that the patient care staff followed the facility's wage and hour policies and accurately recorded the time they spent working. Ex. A at 21:19–24:10, 25:16–22, 47:10–52:6, 62:17–63:5, 70:16–74:12, 79:13–15. Plaintiff's job duties included making sure the patient care staff took meal breaks away from their workstation every day, were fully relieved of their duties during these meal breaks, and never worked off-the-clock without compensation. *Id.* at 23:13–24:10; *see also* Ex.

<hr>

parties, or their representatives or successors in interest, to the same extent as if taken in the later action." Plaintiff's prior deposition was taken in the Louisiana Lawsuit, a federal court action in which Plaintiff, while represented by the same counsel, alleged against Acadia and other related entities the same wage claims based on the same underlying conduct as those alleged here. Accordingly, Plaintiff's testimony during that deposition may properly be utilized in this case and such testimony is binding on Plaintiff.

4

D, Nurse Supervisor Job Description. In sum, she was responsible for ensuring compliance with the hospital's wage and hour policies for those patient care staff she supervised.

Plaintiff concedes, however, that she failed to follow these policies herself and failed to consistently enforce them for the employees that she supervised at Red River Hospital. Ex. A, at 63:17–69:6, 72:2–74:6. Plaintiff testified that she would sometimes see Red River employees working off-the-clock but would not discipline them or report the issue to management. *Id.* at 72:2–74:6. She further testified that during at least one pay period, she intentionally violated Red River's policies by altering employee time records to lengthen short meal breaks to 30 minutes or to remove 30 minutes of work time when employees failed to clock out for a meal break without verifying whether such changes were appropriate. *Id.* at 63:17–69:6. Plaintiff explained that she failed to properly apply and enforce Red River's policies, not because there was any common policy or practice to do so but because she personally did not want to discipline the employees she supervised and because she was told by her supervisor, the Director of Nursing at that time, that 30-minute meal breaks were always required. *Id.* at 63:13–64:23, 72:2–74:6.

Plaintiff also testified that the alleged timekeeping and meal break issues at Red River Hospital, which she herself created and on which she bases her claims, did not apply similarly between Plaintiff and other patient care employees at Red River Hospital. Specifically, Plaintiff testified that timekeeping issues varied between different departments at Red River Hospital, with employees in the military unit clocking out but continuing to work while the employees in the old building would instead often fail to clock out for their meal breaks. *Id.* at 70:16–71:15. Similarly, patient care staff in different departments and in different positions had substantially different amounts of paperwork—one of the main causes Plaintiff alleges for off-the-clock work—and different timing requirements for completing that paperwork that may or may not

cause them to work off-the-clock. *Id.* at 55:20–59:7; *see also* Hamm Decl., ECF No. 58-3, ¶¶ 20–21. She further testified that Red River Hospital affirmatively corrected all of these alleged timekeeping issues around June 2019, meaning that anyone employed after that time necessarily experienced a different (and legal) practice altogether from the one alleged by Plaintiff here even though Plaintiff now seeks to send notice to those employed after that time. Ex. A at 65:15–69:6.

Additionally, Plaintiff admitted she personally failed to follow the timekeeping and meal break policies for herself because of the additional demands and job duties that were specific to her Nurse Supervisor role and were not applicable to other patient care staff. *Id.* at 23:21-24:20; 47:13-49:15; 109:16–111:25. She further testified—in direct contradiction of her pleadings and the statements made in the present motion—that almost no pre-shift off-the-clock work occurred at Red River Hospital at all, *compare id.* at 72:2–4 *with* ECF No. 94 ("Am. Compl.") ¶¶ 2, 4, 6, 83–91; ECF No. 118 at 17–18, and that any issues about being pressured to work off-the-clock because of unauthorized overtime did not apply to her because she was a supervisor who could authorize such overtime. *Compare* Ex. A at 45:11–22 *with* ECF No. 120 at 1, 3.

## 2. The Putative Collective.

Plaintiff seeks to represent a collective of "all current and former hourly, non-exempt employees involved with patient care at any facility owned/operated by [Acadia] from July 21, 2018 to the present." (ECF No. 118 at 1–2; *see also* Proposed Notice, ECF No. 58-9 at 2). Such an ill-defined and overly broad collective would, by Plaintiff's own assertions, encompass tens (if not hundreds) of thousands of individuals who over a 6-year period worked at more than 250 various types of mental health facilities throughout the United States, some of which are acute care facilities, others are specialty facilities, while still others are solely opioid addiction clinics. *See* Ex. E, Williams Dep. Tr. at 233:1–234:14.

6

These tens of thousands of putative collective members are or were employed by their respective facilities, which are all operated by separate and distinct legal entities.[3] Ex. E, at 20:11–20, 30:9–12, 36:3–11, 44:9–14; ECF No. 22-3, ¶ 2. None of these individuals are or have ever been employed by either Defendant. Ex. E at 20:11–20, 25:3–8; *see also* Honeybone Decl., ECF No. 22-3, ¶ 3. Acadia is merely the ultimate parent company of the various respective employers. Ex. E at 20:11–20, 22:21–23:17. Acadia Management Company is a separate subsidiary that employs "corporate" employees and has no ownership interest in any of the operating entities. *Id.* at 25:3–26:18. While Defendants do share branding with and provide a certain level of support and guidance to Red River and other subsidiaries throughout the country, Defendants do not operate or manage Red River Hospital or any other facility, nor have Defendants ever employed Plaintiff or any of the operating entities' patient care staff. Ex. E at 20:11–20, 29:10–14, 37:8–41:8, 52:10–25; Honeybone Decl., ECF No. 22-3, ¶¶ 3–9.

### 3. No Common Meal Break or Timekeeping Policies or Practices.

One of the ways Defendants provide support to Red River and other operating entities is with model human resource policies that each subsidiaries' management teams can—and do—modify to fit their particular needs and local laws. Ex. E at 46:7–21, 102:6–105:5, 110:10–115:11, 142:11–143:13, 152:6–154:20; Ex. O, Holdstock Dep. Tr. at 26:10–24; *see also* Honeybone Decl., ECF No. 22-3, ¶ 8. For example, Red River utilizes its own Attendance Policy that is unique to Red River Hospital and provides additional timekeeping practices and instructions not found in the model Recording Work Time Policy shared by Acadia with its subsidiaries. *Compare* Ex. F, Red River Attendance Policy (Clocking In and Out Section) *with* Ex. B; *see also* Ex. F ("Each employee is expected to arrive to work on time, work his/her full shift unless previously approved off, and clock in/out as required by their position and …

---

[3] Defendants' joint employer arguments will be a separate issue for a forthcoming summary judgment motion.

facility-specific guidelines below."). Further, the model policies consist largely of generalized guidance to follow the law rather than specific step by step instructions about how they are to be applied in practice, so the way such general policies are implemented will, by necessity, vary depending on the specific facility's needs, the law in the state or locality where the facility is located, and the supervisors (like Plaintiff herself) implementing them. Ex. E at 102:6–105:5, 110:10–115:11, 125:3–126:22, 137:10–139:24, 152:6–154:20; *see also* Ex. B ("In order to ensure accuracy, employees are required to record their time appropriately by punching into time clocks, web punching, telephonic punching or paper timesheet *according to facility requirements*.") (emphasis added); Ex. C ("In the event a specific state law prohibits or requires other considerations that differ from our standard payroll processes, we will comply with state law…."). As a result, there is no and cannot be any common meal break or timekeeping practice or policy among the various facilities Plaintiff seeks to include in her class. Ex. E at 102:6– 105:5, 110:10–115:11, 125:3–126:22, 137:10–139:24, 152:6–154:20.

Plaintiff has no knowledge about the work circumstances or timekeeping and meal break policies and practices applicable to almost the entirety of her proposed collective. Ex. A at 152:16–154:20, 158:15–17, 169:21–172:20; *compare* Hamm Decl., ECF No. 58-3, ¶ 22 (stating that the only reason she believes the practices at Red River Hospital are similar to "other facilities in Texas" is based on one vague and out of context hearsay statement allegedly made by another employee that Red River Hospital was "using and following Acadia's policies/practices") *with* Ex. A at 165:13–173:9 (admitting that sworn statements in her August 19, 2021 Declaration, including that "pre-shift and post-shift off-the-clock work was a common problem across multiple Acadia facilities where I worked" and that her statements of unlawful practices "apply equally to other patient care workers according to my observations and

interactions at multiple Acadia locations" are false and that she never reviewed these statements before signing her declaration). The only two Acadia-related facilities of which Plaintiff has any knowledge are River Place Behavioral Health and Red River Hospital, and she has neither visited nor spoken to any current or former employee of any other facility. Ex. A at 145:11–16, 152:16–153:15, 154:7–20, 158:13–17, 169:21–170:7, 171:12–172:20. Moreover, Plaintiff herself has testified extensively to the numerous differences in the meal break and timekeeping policies and practices between Red River Hospital and River Place Behavioral Health, affirmatively demonstrating that there is not even a common policy or practice that applies between those two facilities, let alone among all of the hundreds of facilities across the country that she now seeks to encompass in her collective and for which she provides no evidence whatsoever in her motion. *Id.* at 145:11–16, 152:16–153:15, 158:13–17, 169:21–170:7; *see also* Complaint ("Compl."), ECF No. 1 ¶¶ 30–31 (alleging in the initial pleading of this case that the meal break policies and practices are different between Red River Hospital and River Place Behavioral Health).

In contrast, the only thing that the record evidence shows is consistent with respect to the various timekeeping and meal break policies and practices at the more than 250 facilities Plaintiff is seeking to join together is that the model policies provided by Defendants and the actual practices experienced are lawful and do not support Plaintiff's claims. *See* Exs. B–C; *see also* Exs. J–N; Ex. P, Veron Decl.; Ex. Q, Marshall Decl.; Ex. R, Anderson Decl.; Ex. S, Goldstein Decl.; Ex. T, Carter Decl.; Ex. U, Williams Decl.; Ex. V, Cadge Decl.; Ex. W, Robin Decl.; Ex. X, Feliciano Decl. While Plaintiff's motion includes a single boilerplate declaration from one employee at five of the 250+ facilities (less than 2% of the facilities she seeks to include in her collective), multiple individuals from each of those same five facilities have sworn that Plaintiff's claims are false as they have never worked off-the-clock, (Ex. W ¶ 12; Ex. S ¶ 8;

9

Ex. J ¶ 12; Ex. K ¶ 12; Ex. L ¶ 9; Ex. M ¶ 11; Ex. N ¶ 12; Ex. T ¶ 7; Ex. U ¶ 8; Ex. V ¶ 11; Ex. X ¶ 10), do not have to remain "on-call" for meal breaks, (Ex. W ¶ 9; Ex. S ¶ 7; Ex. J ¶ 9; Ex. K ¶ 9; Ex. L ¶ 7; Ex. N ¶ 9; Ex. T ¶ 7; Ex. U ¶ 8; Ex. V ¶ 8; Ex. X ¶ 8), and have no knowledge of any patient care employees having any issue being fully compensated for all time they spend working. (Ex. W ¶¶ 11, 14; Ex. S ¶ 7; Ex. X ¶ 10; Ex. V ¶ 11; Ex. U ¶ 10; Ex. T ¶ 9; Ex. N ¶ 12; Ex. M ¶ 11; Ex. L ¶ 9; Ex. K ¶ 12; Ex. J ¶ 12). And again, *Plaintiff herself* has sworn that many of the claims asserted on her behalf in the present motion are untrue. *See, e.g.*, Ex. A at 168:21–173:6 (testifying that the allegations that putative class members worked pre-shift and post-shift off the clock work was not a common problem across the facilities at which she worked).

## II. LAW AND ARGUMENT

### A. *Clark* Requires a "Strong Likelihood" that Plaintiff and the Collective are Similarly Situated and will Prevail on Plaintiff's Asserted Claims.

The Sixth Circuit has eliminated the former lenient standard for certifying FLSA collective actions, and instructed the district courts to take a rigorous approach to scrutinizing a plaintiff's proof in determining whether to facilitate notice. Under the previous framework, a district court "conditionally certified" an FLSA collective action to facilitate notice based on a "modest factual showing" of similarly situated status, before later addressing whether employees were in fact similarly situated at "final" certification. *Clark*, 68 F.4th at 1008 (discussing prior standard). Now, however, before any notice is distributed, the plaintiff must show that there is a "strong likelihood of success that she is similarly situated" to the members of the proposed collective in the first instance. *Id.* at 1010–11; *Jones v. Ferro Corp.*, 2023 U.S. Dist. LEXIS 118415, *17 (N.D. Ohio July 11, 2023) (noting the "heightened standard that the Sixth Circuit has now imposed on FLSA plaintiffs"). This strong likelihood of success standard requires Plaintiff to present evidence that raises questions "so serious, substantial, difficult, and doubtful

10

as to make them a fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023). Such a showing is "greater than the one necessary to create a genuine issue of fact" and akin to the showing required for a preliminary injunction. *Id.*; *McCall v. Soft-Lite L.L.C.*, 2023 U.S. Dist. LEXIS 133548, *8 (N.D. Ohio Aug. 1, 2023) (plaintiff must "demonstrate to a certain degree of probability" that she will be able to show that the employees she seeks to notify are 'similarly situated' before the Court issues its final decision"); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (holding that the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

To be "similarly situated," Plaintiff must show a strong likelihood that she and the collective all "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all Plaintiffs." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 583 (6th Cir. 2009); *see also Gaffers v. Sitel Worldwide Corp.*, 2016 U.S. Dist. LEXIS 74321, *6, 9 (M.D. Tenn. June 6, 2016) (denying conditional certification because the plaintiff has failed to "show a common, single, illegal policy to violate Defendants' written timekeeping policies and training, a policy which affects all the HBCCAs he purports to join in this action"). Indeed, where a plaintiff fails to show such a common and unlawful policy, courts in the Sixth Circuit have denied certification even under the prior, more lenient standard. *See Marlow v. Mid-South Maint. of Tenn., LLC*, 2021 U.S. Dist. LEXIS 48614, *6 (M.D. Tenn. Mar. 16, 2021) ("The named plaintiff must present some factual support for the existence of a class-wide policy or practice that violates the FLSA.").

Further, in order for an unpaid meal break to violate the FLSA as Plaintiff alleges here, such unpaid breaks must be predominantly for the benefit of the employer (and thus should

compensable) rather than predominantly for the benefit of the employee (and thus a bona fide break that may be unpaid). *See Ruffin v. MotorCity Casino*, 775 F.3d 807, 811–15 (6th Cir. 2015). Several factors are considered in deciding whether a meal break constitutes such a predominant benefit, including: (1) "whether the employees is engaged in the performance of any substantial duties during the mealtime"; (2) "whether the employer's business regularly interrupts the employee's meal period"; and (3) "the employee's inability to leave the employer's property during meal breaks." *Id.*; *see also Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984) ("As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensated under the FLSA."); *Walsh v. Timberline South, LLC*, ,658 F. Supp. 484, 492 (E.D. Mich. 2023) (applying these factors to a meal break claim post-*Clark*).

Accordingly, before notice can be sent, Plaintiff must show a "strong likelihood of success" on her claims that Defendants' affiliates utilize a meal break or other timekeeping policy or practice that violates the FLSA ***and*** that this violative practice or policy is common to everyone in the putative collective. *See Clark*, 68 F.4th at 1011 (6th Cir. 2023) ("plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves" and "a [preliminary-injunction level] degree of probability that she will prevail on the underlying issue when the court renders its final decision"). Plaintiff, however, has not done so. The "evidence" included with her motion does not even meet the prior lenient standard for establishing she is similarly situated, much less the current "much more stringent" standard.

### B. Plaintiff's Own Testimony Shows the Collective Members are not Similarly Situated with Each Other and that She is not Similarly Situated to Them Either.

Plaintiff's motion conspicuously omits any testimony from Plaintiff except for what is

12

contained in her August 19, 2021 Declaration (Doc. No. 58-3). The Court, however, should not credit Plaintiff's prior declaration as supporting her present motion because Plaintiff has affirmatively disavowed under oath the "testimony" contained within it during her deposition in the Louisiana Lawsuit. *See* Ex. A at 165:13–173:9[4]; Ex. G; *see also* Doc. No. 34 at 2, 14–15.[5] Of course, the likely reason that Plaintiff's counsel did not include any testimony from Plaintiff's deposition in the motion is precisely because during that deposition Plaintiff disavowed her prior declaration and testified to further facts showing that she cannot be similarly situated with the collective to which she now seeks to distribute notice.

During her deposition in the Louisiana Lawsuit, Plaintiff testified that she has no basis for believing that the timekeeping and meal break practices on which her claims are based applied universally across facilities operated by Acadia-related entities and that those practices and policies were in fact different between the only two facilities about which she has any knowledge. Ex. A at 145:11–16, 152:16–153:15, 158:13–17, 169:21–170:7.[6] That Plaintiff affirmatively refutes that different facilities affiliated with Defendants had similar timekeeping and meal break practices and policies is sufficient basis on its own for the Court to deny Plaintiff's motion even under the old lenient standard. *See Goeble v. Burntwood Tavern Holdings, LLC*, 2023 U.S. Dist. LEXIS 73055, *17 (N.D. Ohio Apr. 26, 2023) (denying certification and distribution of notice where named plaintiff "does no refute Defendants'

---

[4] "**Q. Did you specifically review those sections of your declaration before you signed it?** A. No. **Q. So you don't recall that?** A. I mean, I just reviewed the first few. **Q. Just reviewed the first couple of pages and signed it?** A. Yeah. **Q. So you did not read the rest of the declaration?** A. No. That is my fault. **Q. So there are things in this declaration that are untrue?** A. Yes."

[5] Plaintiff's counsel's citations to this knowingly false declaration in the motion renew the Rule 11 violation concerns that were previously raised in this case. *See generally* Doc. No. 34.

[6] "**Q. But as you've testified to multiple times in this deposition, the practices at River Place were different than those at Red River. Correct?** A. Yes sir." "A. . . . Like I said, I've been very consistent [that the] practices at River Place were not the same [as Red River]."

13

assertions that each restaurant is separately managed and sets its own side-work policies and does not give evidence showing a company-wide policy"); *see also Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (denying certification where plaintiffs made no showing that the job responsibilities of the named plaintiffs were the same or similar to those of the remaining members of the proposed class).

Plaintiff further testified that as the Nurse Supervisor at Red River Hospital, she was the one responsible for implementing and enforcing the very policies she contends bind the collective and that her own complaints about meal break and timekeeping practices were unique to her in her supervisory role. *See id.* at 21:19–24:10, 25:16–22, 47:10–52:6, 62:17–63:5, 70:16–74:12, 79:13–15, 89:15–90:18. The inherent conflict of interest created in having a collective represented by the very individual whose misconduct allegedly caused the claims, likewise precludes Plaintiff from being similarly situated. *See* Ex. A at 21:19–24:10, 25:16–22, 47:10–52:6, 62:17–63:5, 70:16–74:12, 79:13–15, 89:15–90:18; *see also Perrmann v. CF Indus.*, 2006 U.S. Dist. LEXIS 92525, *20 (S.D. Ohio Dec. 21, 2006) ("[A]s a matter of law . . . a warehouse supervisor who was responsible for enforcing [the] policies and procedures [on which the claims are based] was not similarly situated to the non-managerial warehouse operators to whom he seeks to compare himself.") (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Erman v. Wethington*, 2006 U.S. Dist. LEXIS 106214 (M.D. Tenn. Mar. 21, 2006), *report and recommendation adopted*, 2006 U.S. Dist. LEXIS 106193 (M.D. Tenn. Mar. 31, 2006) (finding a conflict of interest between managerial lead plaintiffs and non-managerial class members precluded conditional certification); *cf. Morrison v. Veale*, 2017 U.S. Dist. LEXIS 42099, *26 (M.D. Ala. Mar. 23, 2017) (granting summary judgment on failure to

pay overtime claim in part because "Plaintiff was the very person responsible for administering the Veale Practice's timekeeping and reporting system").

### C. What Little Evidence Plaintiff Relies Upon Also Does Not Establish a Strong Likelihood that she is Similarly Situated to Members of the Collective.

Even if the Court were to ignore Plaintiff's sworn testimony refuting her own arguments, the scant "evidence" Plaintiff does submit in support of her motion fails to show that members of the collective are similarly situated to each other, let alone similarly situated to Plaintiff. That evidence is limited to model policies that do not apply across the collective, general job descriptions, misrepresentations of Defendants' corporate witnesses' testimony,[7] and nearly identical, attorney-drafted declarations from a mere five individuals out of the tens of thousands of employees across 250+ facilities that Plaintiff seeks to join together.[8] Contrary to Plaintiff's claims, this evidence does not, and axiomatically cannot, establish a strong likelihood that Plaintiff and the putative collective were subjected to a single common unlawful policy or practice that can support a finding that Plaintiff and her putative collective are similarly situated.

---

[7] By way of example, Plaintiff cites to Rule 30(b)(6) witness Gareth Holdstock's deposition testimony for the proposition that "BHAs serve a complimentary role to the nurses," to argue that their job duties are substantially similar. (Doc. No. 118 at 10). However, Mr. Holdstock repeatedly testified—including in the very portion of the transcript cited by Plaintiff—that the roles of BHAs "could vary based on the facility," *see* Holdstock Dep. Tr. at 90:16–19, and that they differ in material fashion from other positions, such as RNs. *See id.* at 107:7–23.

[8] It is worth noting that the very nature of Plaintiff's five submitted declarations is suspect. Plaintiff collected these attorney-drafted declarations and included them with her motion, but did not produce them in discovery despite a specific discovery request for such declarations from Defendants all the way back on October 22, 2021 and that the fact that they were signed as many as three weeks before Plaintiff's motion was filed while discovery was still open. In the case of Rance Clark's declaration, the failure to produce the declaration is even more egregious as she apparently signed it eighteen months ago. *See* ECF No. 118-4, 118-5, 118-6, 118-7. Accordingly, Defendants were denied the opportunity to cross-examine the declarants to address the inherent conflict with between their declarations and Plaintiff's own testimony. Further, these declarations are contradicted by the more numerous declarations submitted by Defendants from patient care employees at these same facilities. Exs. J–N, P–X. And again, when Plaintiff herself was deposed after a similar boilerplate declaration was submitted on her behalf, she admitted she did not read it before signing and that it contained false statements. *See* Ex. A at 172:18–173:9; Ex. G.

15

i. *There is no common illegal meal break or timekeeping policy or practice on which Plaintiff can premise her nationwide collective.*

Plaintiff can only meet her burden to show a strong likelihood that she is similarly situated if she shows that she and the collective all "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all Plaintiffs." *O'Brien*, 575 F.3d at 583. Put another way, Plaintiff must present sufficient evidence to establish a strong likelihood that all members of the purported class were subjected to a common unlawful policy or practice. *See Lockhart v. D&S Residential Servs., L.P.*, 2020 U.S. Dist. LEXIS 145321, *36 (W.D. Tenn. Aug. 13, 2020) (finding that the opt-ins are not similarly situated because they do not show a "common unlawful policy or practice, or a common theory of FLSA violations"). Not only has Plaintiff failed to present such evidence, but again, Plaintiff has affirmatively refuted that such a common unlawful policy or practice exists.

Plaintiff seeks to distribute court-authorized notice to tens of thousands of non-exempt "patient care" employees at hundreds of facilities operated by different entities. (*See* ECF No. 118 at 1–2). Plaintiff attempts to tie this sweeping collective together through references to the model policies Defendants provide to its subsidiaries, policies that Plaintiff baldly and falsely asserts apply at all of the different facilities. (ECF No. 118 at 12–13). The record evidence, however, makes clear that Plaintiff's assertions are not just unsupported but untrue.

First, the model policy documents do not support the claims at issue, as nothing about the policies themselves are unlawful. They provide for employees to be relieved of all work duties, to take meal breaks outside the facility, and merely provide general guidance to follow the law. *See* Ex. B–C; *see also* Ex. A, at 167:8–169:20 (acknowledging nothing in the model Patient Neglect Policy actually requires interrupting breaks to take care of patients). Such common, lawful policies cannot support distributing notices unless Plaintiff shows that, in practice, those

16

lawful policies are uniformly not followed in the same way across the entire class. *See White v. Baptist Mem. Health Care Corp.*, 2011 U.S. Dist. LEXIS 52928, *25 (W.D. Tenn. May 17, 2011) ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy.") (internal quotations omitted); *Saleen v. Waste Mgmt., Inc.*, 2009 U.S. Dist. LEXIS 49891, *4 (D. Minn. June 15, 2009) (conditional certification requires a showing that "enforcement of the automatic deduction policy created a policy-to-violate-the-policy"). Thus, even if these policies did universally apply to the entire collective, the policies themselves still do not support a finding that Plaintiff is similarly situated.

Second, as Defendants' corporate witnesses repeatedly testified, and as is conclusively demonstrated by Red River's own unique attendance policy, the model policies did not universally apply and instead are only guidance templates that the various subsidiary operators modify to suit their own specific needs and local laws. Ex. E at 46:7–21, 102:6–105:5, 110:10–115:11, 142:11–143:13, 152:6–154:20; Ex. O at 26:10–24; ECF No. 22-3, ¶ 8. There is thus no common class-wide policy at all, and Plaintiff's assertions to the contrary in her motion are false and refuted not just by the very transcript portions from Defendants' corporate witness that she cites,[9] but by her own personal testimony. *See* Ex. E at 46:7–21, 102:6–105:5, 110:10–115:11, 125:3-19, 126:13-19, 142:11–143:13, 152:6–154:20; *see also* Ex. A at 145:11–16, 152:16–153:15, 158:13–17, 165:13–173:9. Therefore, because these policies are not commonly applied or implemented across the hundreds of facilities included in Plaintiff's collective, they cannot be a basis for that collective or support Plaintiff's claims. *See Miller v. CareSouth HHA Holdings,*

---

[9] For example, Plaintiff cites to Mr. Holdstock's deposition for the proposition that Plaintiff and the putative collective members are subject to the same policies and procedures; however, Holdstock testified repeatedly that the policies referenced are only model policies and not indicative of the numerous individual policies maintained across each of the facilities. *Compare* ECF No. 118 at 10 *with* Ex. O at 26:10–24.

17

*LLC*, 2016 U.S. Dist. LEXIS 78610, *13–14 (M.D. Tenn. June 16, 2016) (rejecting request to send court authorized notice under the old lenient standard where "plaintiffs have presented no evidence beyond this general language demonstrating that the job description actually applied to RNs in other CareSouth locations"); *Tyler v. Taco Bell Corp.*, 2016 U.S. Dist. LEXIS 58549, *12–13 (W.D. Tenn. May 3, 2016) (collecting cases under the lenient standard and finding that "[s]imilar job descriptions are insufficient to support allegations of a defendant employer's unwritten national policy regarding overtime timekeeping practices").

Third, not only has Plaintiff failed to make a showing that the model policies support her claims, all of the evidence she submits further shows there is no common practice to violate the lawful policies either. Plaintiff's own claims of interrupted or missed meal breaks and off-the-clock work are based on the misconduct of specific managerial employees at Red River Hospital (including Plaintiff herself) in violating Red River's lawful policies, not a common practice that would applicable to all patient care employees across the country or even across just Red River Hospital. *See* Ex. A at 63:17–69:6, 72:2–74:6 (stating the misconduct of the Director of Nursing at Red River Hospital was the cause for the alleged violations); Clark Decl., ECF No. 63-1, ¶¶ 11–12 (same). Her claims are thus explicitly premised on the theory that specific managers at Red River Hospital violated its lawful timekeeping and meal break policies for a limited period of time (until June 2019). *See* Ex. A at 65:15–69:6. Misconduct by specific supervisors at one facility for limited time cannot support any collective including employees outside of Red River Hospital or beyond the date when these issues were fixed. *See White*, 2011 U.S. Dist. LEXIS 52928 at *18–33 (finding employees were not similarly situated because they worked in different departments at a hospital, their job duties varied significantly, and there was no evidence that defendant had a de facto policy of failing to compensate employees for time worked during meal

breaks); *see also Gaffers*, 2016 U.S. Dist. LEXIS 74321 at *6–8 (denying conditional certification where "Defendants have identified specific policies which require HBCCAs to clock in before they start and log into their computers and which require HBCCAs to stop working before clocking out" while "Plaintiff has not identified any policy to the contrary, any directive from Defendants to violate the existing policy, or any practice of Defendants' changing Plaintiff's time worked to deduct such activities"); *cf.* Exs. J at ¶ 12; K at ¶ 12; L at ¶ 9; M at ¶ 11; N at ¶ 12 (five current Red River employees all testifying that their supervisors do not violate Red River's policies in the way Plaintiff alleges). Further, the majority of the evidence concerning the timekeeping and meal break practices at the only five facilities for which Plaintiff has provided any evidence show that they are compliant with the requirements of the FLSA and pay employees for all time spent working. *Compare* Ex. J ¶¶ 10–13; Ex. K ¶¶ 10–13; Ex. L ¶¶ 8–10; Ex. M ¶¶ 9–12; Ex. N ¶¶ 9–13 *with* Plaintiff's Declarations, Doc. No. 118-4 ¶ 9; 118-6 ¶ 6.

Fourth, Plaintiff has no knowledge of and presents no evidence for the actual timekeeping and meal break practices at any of the hundreds of facilities she seeks to include other than the one where she worked, Red River Hospital, and the four for which she submitted the boilerplate declarations. *See* Ex. A, 145:11–16, 152:16–153:15, 154:7–20, 158:13–17, 169:21–170:7, 171:12–172:20. Indeed, even in her own declaration and in the only other declaration from a putative class member from Red River Hospital, Plaintiff and declarant Rance Clark do not claim to have any knowledge concerning the practices at other facilities. *See* Hamm Decl., ECF No. 58-3, ¶ 22 (asserting only "good reason" to believe the practices at Red River Hospital are similar to "other facilities in Texas" based on a vague and out of context hearsay statement that Red River Hospital was "using and following Acadia's policies/practices); Clark Decl., ECF No. 118-8, ¶¶ 2, 16 (stating she only worked at Red River Hospital and asserting her testimony is

"[b]ased on my time working" at Red River). Five declarations from employees at five facilities without any knowledge of practices at any other facilities—except of course Plaintiff's knowledge that River Place Behavioral Health had different practices—cannot support a nationwide FLSA class covering more than 250 facilities under the old lenient standard. *See Conklin v. 1-800 Flowers.com, Inc.,* 2017 U.S. Dist. LEXIS 126733, *4 (S.D. Ohio Aug. 17, 2017) (denying nationwide conditional certification where the three declarations supplied information about employees at only one call center and not the other employees); *Miller*, 2016 U.S. Dist. LEXIS 78610 at *12 ("The plaintiffs have not worked at any other CareSouth location outside of Tennessee and have not presented a declaration from any current or former employee who worked at such a facility. This lack of testimony regarding employment classification and overtime policies at other locations is generally fatal to a plaintiff's request for conditional certification of a companywide class."); *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying conditional certification of nationwide class where declarations were limited to employees at two call centers); *see also Clark. Rutledge v. Claypool Elec., Inc.*, 2012 U.S. Dist. LEXIS 178647, *41 (S.D. Ohio Dec. 17, 2012) (finding that testimony from the two plaintiffs plus four or five other employees (at most 5% of the putative collective) is not sufficient to establish even a "moderate showing of a common policy").

Moreover, Defendants have been unable to find a single instance since *Clark* where a court in this circuit approved sending notice to a nationwide collective based on generic lawful policy documents and a small number of boilerplate declarations. *Dove v. Corewell Health*, 2023 U.S. Dist. LEXIS 182434, *11 (W.D. Mich. Oct. 6, 2023) (denying motion to send notice to plaintiffs' "large, broad, and unwieldly group of potential opt-ins" based upon only six "substantially identical declarations from [named plaintiff] and five opt-ins"); *Rashad v. Mason's*

20

*Prof'l Cleaning Serv., LLC*, 2023 U.S. Dist. LEXIS 139807, *1 (W.D. Tenn. Aug. 10, 2023) (denying motion to facilitate notice where plaintiff relied upon two identical, boilerplate unsupported declarations); *Hutt v. Greenix Pest Control, LLC*, 2023 U.S. Dist. LEXIS 120290, *8–9 (S.D. Ohio July 12, 2023) (denying motion to facilitate notice where plaintiff only submitted a policy handbook and Plaintiff's own declaration). Courts have also regularly denied notice distribution when a defendant submits more detailed and unique declarations refuting the plaintiff's evidence—as Defendants have done here. *See Woods v. First Transit, Inc.*, 2023 U.S. Dist. LEXIS 172284, *12–13 (S.D. Ohio Sept. 27, 2023) (defendant provided significant evidence of differences among employees); *see also Anderson v. P.F. Chang's China Bistro*, 2017 U.S. Dist. LEXIS 134523, *34–35 (E.D. Mich. Aug. 23, 2017) (denying distribution of notice under old standard where defendant's declarations "significantly outnumber [Plaintiff's] declarations and contain more detail regarding the declarants' duties" and where plaintiff admitted that he had "no personal knowledge" of others' responsibilities).

Finally, even within Red River Hospital, numerous differences in meal break practices—and the compliance of all such practices with applicable law—preclude the certification of a collective even for just that one facility. Specifically, Plaintiff has testified that issues with the meal break and timeclock practices varied between different departments at Red River Hospital, Ex. A at 70:16–71:15, between different job positions, *id.* at 55:20–59:7, and between employees who worked at Red River before and after June of 2019. *Id.* at 65:15–69:6. The declarations collected by Defendants likewise show variations in terms of timekeeping and meal break practices at five facilities for which Plaintiff has presented any evidence depending on the patient population at the unit worked, *compare* Ex. L ¶ 2 (patients in her unit "often require more intense and frequent care, and there are more likely to be patient codes in this unit than in other units")

21

*with* Ex. N ¶ 2 (in her unit, patients "are not in psychosis and are generally less serious in nature"), the time of the shift, *see* Ex. K ¶ 7 ("night shift has fewer demands than the day shift" because the patients "tend to sleep more throughout the night"), the gender or age of the employee, *see* Ex. W ¶ 10 (male colleagues are "better equipped to respond to codes that require physically restraining patients in psychosis"); *id.* ¶ 5 (she "do[es] not respond to patient codes at other units" because she is 60 years old), and even the different practices over where and when employees take their breaks. *Compare* Ex. M ¶ 9 (she can take her meal break whenever she likes) *with* Ex. R ¶ 9 (she has to be relieved by manager in order to take lunch break); Ex. K ¶ 9 (RNs must coordinate meal breaks with House Supervisor); Ex. W ¶ 9 (Covington staffs a "floater" MHT who moves between unis to relieve MHTs for meal breaks). These differences fundamentally alter the likelihood and frequency of being interrupted during a meal break to respond to a patient code—the primary basis Plaintiff asserts for why meal breaks should be compensable. *See* ECF No. 94 ¶ 2–3, 26–27, 29–30, 49–52; ECF No. 118 at 14–16). Accordingly, such variations across units, job positions, shift times, genders, and specific supervisors prevent even a limited class composed of current and former employees of the five facilities for which Plaintiff has submitted declarations or just Red River from being similarly situated to Plaintiff. *See White*, 2011 U.S. Dist. LEXIS 52928 at *18–33.

> ii. *Plaintiff's different job duties preclude a similarly situated finding.*

In addition to the lack of a common unlawful policy, the putative collective is not similarly situated to Plaintiff because it consists of a diverse collection of different positions that are dissimilar to Plaintiff's own position in material respects. Although Plaintiff seeks to join together all jobs involved in providing "patient care," that general aspect of their jobs does not show that she is similarly situated with the collective, even under the previous lenient conditional

certification standard. *See McElroy v. Tucker Energy Servs.*, 2018 U.S. Dist. LEXIS 183072, *8–9 (W.D. Tex. Oct. 25, 2018) (vague description of job duties such as "manual labor" and "maintain[ing] and operat[ing] the equipment, including pumps, used at the oilfield well sites" "fail to satisfy even the modest factual showing required of Plaintiffs" to conditionally certify a class of oilfield workers); *see also McGill v. Nashville Tenn. Ventures, Inc.*, 2020 U.S. Dist. LEXIS 187064, *9 (M.D. Tenn. Oct. 8, 2020) (Campbell, J.) ("[T]he proposed class definition of 'all hourly employees' is potentially too broad. While Plaintiffs appear to assume that all hourly employees perform case management duties, . . . Plaintiffs did not provide any information regarding employees other than those who perform case management duties."). It certainly does not rise to the much higher strong likelihood standard now required.

Rather, there are material differences between Plaintiff's role as a Nurse Supervisor and, for example, a Behavioral Health Associate. *Compare* Ex. D *with* Ex. H, Behavioral Health Associate Job Description. Most notably, a Nurse Supervisor has substantial managerial duties in assigning other patient care staff to various shifts, overseeing their performance, and coordinating patient care as well as medical treatment duties as a result of her higher education and training that a Behavioral Health Associate does not. *Id.* By Plaintiff's own admission, these increased responsibilities and duties caused her to have a completely different experience in relation to the timekeeping and meal break practices at Red River Hospital than other "patient care" employees. *See* Ex. A at 45:11–22 (stating that any issues about being pressured to work off-the-clock because of unauthorized overtime did not apply to her because she was a supervisor), 55:20–59:7 (discussing the different levels of paperwork and timing for that paperwork required for nurses versus techs), 109:16–111:25 (stating her issues with taking meal break policies involved not getting them because of the additional demands and job duties that

23

were placed on her in her role as Nurse Supervisor rather than having those breaks interrupted like the other nursing staff); s*ee also* Clark Decl., ECF No. 63-1, ¶¶ 10, 15 (explaining differences in off-the-clock work depending on position). These important distinctions alone prevent Plaintiff from being similarly situated with the putative class. *See Mathews v. ALC Partner, Inc.*, 2009 U.S. Dist. LEXIS 75097, *5 (E.D. Mich. Aug. 24, 2009) ("[D]ue to the varying job duties of Managers and Assistant Managers, both of which will be relevant to the propriety of their managerial classifications, the Court concludes that even these two groups of employees cannot be included in a single class."). Therefore, Plaintiff is not similarly situated to the putative collective, even if it were limited to Red River Hospital, never mind the unwieldy collective of tens of thousands of employees across more than 250 facilities currently sought.

### D. The Court Should Not Equitably Toll the Putative Collective Members' Claims.

For the reasons stated above, the Court should deny Plaintiff's Motion, mooting her request to tolling the statute of limitations for the collective. Even distribution of notices, however, the Court should nevertheless decline to toll the limitations period for hypothetical future members of the class because such tolling would run counter to Congressional intent and constitute an advisory opinion on the rights of individuals currently not before the Court. "The FLSA allows 'some time [to] lapse between the commencement of collective actions and the date that each opt-in plaintiffs files his or her consent form.'" *McGill*, 2020 U.S. Dist. LEXIS 187064 at *13 (Campbell, J.) (quoting *Brittmon v. Upreach,* LLC, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio 2018)). "Congress chose not to automatically toll the statute of limitations from the date the collective action was filed," demonstrating that it did not intend for an opt-in's limitations period to be linked to the date of the named plaintiff's filing. *Atkinson v. TeleTech Holdings, Inc.,* 2015 U.S. Dist. LEXIS 23630, *17–18 (S.D. Ohio Feb. 26, 2015). Therefore, the

mere loss of time between the commencement of collective actions and the date that each opt-in plaintiff files his or her consent form is not an appropriate ground for equitable tolling.

It is true that in certain instances, the doctrine of equitable tolling may apply to FLSA claims. *See, e.g., Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187–88 (6th Cir. 2008). To determine the appropriateness of equitable tolling, including in the context of an FLSA collective action, the Court considers the following factors: (1) whether plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs remaining ignorant of their rights. *Id.* However, "[e]quitable tolling should be granted 'sparingly' and the decision to do so is within the discretion of the trial court." *McGill*, 2020 U.S. Dist. LEXIS 187064 at *13 (citing *Amini v. Oberlin College*, 259 F.3d 493, 498–500 (6th Cir. 2001)). Moreover, "[i]n contrast to a class action lawsuit brought under Federal Rule of Civil Procedure 23, the named plaintiffs in an FLSA collective action do not represent anyone other than themselves" and therefore, cannot seek equitable tolling on behalf of hypothetical future opt-ins. *Atkinson*, 2015 U.S. Dist. LEXIS 23630 at *20–21; *see Foster*, 2020 U.S. Dist. LEXIS 113397 at *10–11 ("The Court agrees with the reasoning of *Atkinson*, and many other courts, that it simply cannot grant relief to a party not yet before the Court. To do so would constitute an impermissible advisory opinion.").

At the end of her motion, Plaintiff asks the Court to toll the statute of limitations for potential opt-ins "from the date of the filing of the original Complaint (or the filing of Plaintiff's first motion for notice) until the close of any notice period." (Doc. No. 118 at 24). Plaintiff's meager argument, however, fails to address any of the relevant factors or the numerous decisions by courts in the Sixth Circuit that have rejected such tolling requests. Indeed, the majority of

decisions within this district and within the Sixth Circuit have found that tolling is inappropriate at the time of sending notice. *See McGill*, 2020 U.S. Dist. LEXIS 187064 at \*13–14 ("Most district courts within the Sixth Circuit have concluded that it is 'improper to equitably toll the claims of potential opt-in plaintiffs who are not yet before the court.'") (quoting *Brittmon*, 285 F. Supp. 3d at 1046 (collecting cases)); *see also Foster*, 2020 U.S. Dist. LEXIS 113397 at \*10–14 (denying motion to equitably toll claims of potential opt-in plaintiffs); *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1081 (M.D. Tenn. 2015) (declining to consider "undeveloped statute of limitations issues" before permitting notice). Accordingly, Defendants respectfully request that the Court follow the majority of district courts in this circuit—including its own rulings—and deny Plaintiff's request to equitably toll the statute of limitation.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to for Distribution of Notice Pursuant to 29 U.S.C. § 216(b).

Respectfully submitted,

*/s/ Matthew A. Caplan*
Frederick L. Conrad III (Tenn. Bar No. 32043)
Flynne M. Dowdy (TN Bar No. 035926)
Matthew A. Caplan (Tenn. Bar No. 040873)
HOLLAND & KNIGHT LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
Phone: 615-244-6380
trip.conrad@hklaw.com
flynne.dowdy@hklaw.com
matthew.caplan@hklaw.com

*Counsel for Defendants*

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Response in Opposition to Plaintiff's Motion for Distribution of Notice Pursuant to 29 U.S.C. § 216(b) has been served via CM/ECF to:

> David W. Garrison (Tenn. Bar No. 24968)
> Joshua A. Frank (Tenn. Bar No. 33294)
> BARRETT JOHNSTON MARTIN & GARRISON, LLC
> Philips Plaza
> 414 Union Street, Suite 900
> Nashville, Tennessee 37219
> Tel: 615-244-2202; Fax: 615-252-3798
> dgarrison@barrettjohnston.com
> jfrank@barrettjohnston.com
>
> Carolyn H. Cottrell (admitted *pro hac vice*)
> Ori Edelstein (admitted *pro hac vice*)
> Robert E. Morelli (Tenn. Bar No. 037004)
> SCHNEIDER WALLACE COTTRELL KONECKY LLP
> 2000 Powell Street, Suite 1400
> Emeryville, California 94608
> Tel: (415) 421-7100; Fax: (415) 421-7105
> ccottrell@schneiderwallace.com
> oedelstein@schneiderwallace.com
> rmorelli@ schneiderwallace.com
>
> *Counsel for Plaintiff*

on this the 5th day of December, 2024.

/s/ *Matthew A. Caplan*