IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY HAMM, on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | NO. 3:21-cv-00550 |
| v. ) ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE FRENSLEY |
| ACADIA HEALTHCARE CO., INC., ET AL., ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Amy Hamm's ("Plaintiff") Motion for Distribution of Notice Pursuant to 29 U.S.C. § 216(b). (Doc. No. 117). Defendants Acadia Healthcare Company, Inc. and Acadia Management Company ("Defendants") filed a response in opposition (Doc. No. 126), and Plaintiff filed a reply (Doc. No. 129). For the reasons discussed below, Plaintiff's motion (Doc. No. 117) is **DENIED**.

### I. FACTUAL BACKGROUND

Defendant Acadia Healthcare Company, Inc. ("Acadia") is a "holding company of a variety of different subsidiary companies" and the parent company of "organizations that are wholly owned subsidiaries and then…others who are joint ventures…[with] a joint venture contractual relationship." (Doc. No. 126-5 at PageID # 2785, 2787). Defendant Acadia Management Company is a subsidiary of Acadia and includes corporate employees. (*Id.* at PageID # 2788).

Plaintiff worked as a nurse supervisor at Red River Hospital, one of Acadia's subsidiaries, in Wichita Falls, Texas ("Red River") from February 2017 until January 2020. (Doc. No. 126-1 at PageID # 2728; Doc. No. 58-3 ¶ 2). Plaintiff subsequently transferred to River Place Behavioral Health facility in LaPlace, Louisiana ("River Place") and worked as a nurse supervisor until

September 2020. (*Id.* at PageID # 2732; Doc. No. 58-3 ¶ 2). Plaintiff brings this action for alleged violation of the Fair Labor Standard Act ("FLSA") on behalf of herself and other current and former hourly employees involved with patient care who have worked at facilities operated by Acadia since July 27, 2018. The First Amended Complaint defines the putative collective as "[a]ll current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, or other non-exempt employees with similar job duties employed at any facility operated by Defendant Acadia Healthcare Company, Inc. during the time period beginning July 27, 2018 until resolution of this action (the 'Collective')." (Doc. No. 94 ¶ 46).

Plaintiff alleges that Defendants violated the FLSA by exercising "a policy permitting and encouraging management, other employees, physicians, patients, and patients' family members [to] interrupt Patient Care Workers' meal periods at any time" and that "Defendants also exercised and implemented policies that required Patient Care Workers, as a necessary part of their ethical obligations to their patients, to remain vigilant and responsive to the needs of their patients throughout their entire shift, including during unpaid meal periods." (Doc. No. 94 ¶ 76). Plaintiff alleges that "[u]nder this policy, Defendants required Plaintiff and Collective members to be available to work and/or to be on duty during their unpaid meal periods" and that "[a]s a result, Plaintiff and Collective members performed work during their unpaid meal periods for which they were not compensated." (*Id.*).

Plaintiff also alleges that Defendants violated the FLSA because "Defendants suffered and/or permitted Plaintiff to work additional time outside of her shift for work-related tasks" which "included, but are not limited to, conducting shift change reports, monitoring patients, assisting hospital personnel, reviewing or completing charting, preparing for her shift, and other tasks or

2

services for Defendants' benefit" and that "Plaintiff and Collective members were actively discouraged from logging time outside the parameters set by Defendants" but "due to the demands of the job, Plaintiff and Collective members routinely performed work-related tasks outside of their scheduled shift, before and/or after clocking-in and/or after clocking-out." (*Id.* ¶¶84-85).

In support of her motion, Plaintiff filed deposition transcripts of Acadia's corporate representative, Gareth Holdstock, and Acadia Management Company's Vice President of Human Resources, Todd Williams (Doc. Nos. 118-1, 118-2), the Compliance and Code of Conduct for Acadia's Little Creek Behavioral Health facility (Doc. No. 118-3), declarations of proposed collective members Clarisse Casalino, Kamara Holmes, Thomas Proctor, Claudia Ramirez, and Rance Clark (Doc. Nos. 118-4 – 118-8), job descriptions for the positions of Registered Nurse, LPN-LVN, and Behavioral Health Associate (Doc. Nos. 118-9 – 118-11), a "Recording Working Time" policy (Doc. No. 118-12), and a report regarding nursing standards of care by Hilary Flanders (Doc. No. 118-13). Plaintiff also filed a declaration in support of her earlier-filed motion for conditional certification and notice (Doc. No. 58-3) and relies on the declaration in her pending motion.

Plaintiff argues that she and the putative collective members (1) perform similar duties; (2) are compensated in the same fashion and work overtime, (3) are subject to the same employment policies and procedures, (4) share a common duty of care and are required to prioritize patient safety to avoid patient abuse or neglect, and (5) were cheated out of overtime wages in the same ways and for the same reasons. (Doc. No. 118 at PageID # 2527 – 2534). Plaintiff also contends that Acadia systemically understaffs its facilities which leads to common wage and hour violations and that patient care workers performed uncompensated pre- and post-shift work. (*Id.* at PageID # 2534 – 2535).

3

Plaintiff seeks an Order authorizing notice to the Collective, tolling the statute of limitations for putative collective members' claims, and requiring Defendants to provide the names and last known contact information for each of the potential opt-in plaintiffs.

Defendants filed a response in opposition and contend that Plaintiff failed to demonstrate that she is similarly situated to the putative collective members, that Defendants do not have common meal break or timekeeping policies, that there are no unlawful meal break or timekeeping policies upon which Plaintiff can establish her claims, and that Plaintiff has no knowledge of and presents no evidence for the actual timekeeping and meal break practices at any of Defendants' facilities other than the facilities at which Plaintiff worked and the facilities referenced in the declarations attached to Plaintiff's motion.

## II. STANDARD OF REVIEW

"The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (citing 29 U.S.C. §§ 206(a), 207(a)). The FLSA permits employees alleging a violation of the minimum wage provision to bring suit on their own behalf and that of "other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* In other words, this provision establishes two requirements for a collective action under the FLSA: (1) the additional plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The statute does not define "similarly situated" or prescribe the process for adding other plaintiffs to a collective action.

The Sixth Circuit has prescribed a two-stage process for identifying potentially similarly situated plaintiffs and determining whether the notified employees who have given notice of their desire to opt in as plaintiffs are, in fact, similarly situated to the named plaintiff and each other. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010-11 (6th Cir. 2023). Only those employees who are determined to actually be similarly situated will then become plaintiffs in the case. *Id.*

At the first stage of the process, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. This level of proof "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* To determine whether members of the collective action are similarly situated courts in the Sixth Circuit consider the "factual and employment settings of the individual[ ] plaintiffs" as well as "the different defenses to which the plaintiffs may be subject on an individual basis."[1] *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)). "Showing a 'unified policy' of violations is not required." *Id.* (internal citation omitted). Employees may be found to be similarly situated if they "suffer from a single, FLSA-violating policy" or if their "claims [are] unified by common theories of defendants' statutory violation, even if the proofs of these theories are inevitably individualized and distinct." *Id.* (citing *O'Brien*, 575 F.3d at 584-85).

---

[1] Prior to its decision in *Clark*, 68 F.4th 1003 (2023), the Sixth Circuit also recognized the relevance of "the degree of fairness and procedural impact of certifying the action as a collective action." *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (citing *O'Brien*, 575 F.3d at 584). *Clark*, however, made clear that there is no "certification" – conditional or otherwise. 68 F.4th at 1009.

### III.   ANALYSIS

**A. Similarly Situated**

Plaintiff points to the declarations filed in support of her motion and her earlier-filed declaration as evidence that she and the putative collective members are similarly situated. (Doc. No. 58-3; Doc. No. 118-4 ¶¶ 8, 9, 16; Doc. No. 118-5 ¶¶ 7, 13; Doc. No. 118-6 ¶¶ 6, 10, 12, 15, 18; Doc. No. 118-7 ¶¶ 5, 6, 7, 9, 11, 14; Doc. No. 118-8 ¶¶ 5, 11, 13, 16). Plaintiff states in her declaration that during her time working at Red River, "Acadia would either mandate that the employees clock out for a meal 'break' or deduct/edit 30 minutes from employees' total hours worked that shift" and that "[i]n addition to being subject to interruption, many of the 30-minute 'breaks' I tried to take were actually interrupted…[t]his was a common problem at Acadia…[o]ther hourly-paid patient care employees, including Rance Clark, Tammy Goodwin, Lisa Witherspoon and Michelle Santolucito were similarly subject to interruption and actually interrupted while on their 30-minute 'breaks.'" (Doc. No. 58-3 ¶¶ 8, 13). Plaintiff argues that she and the putative collective members are similarly situated because they are "subject to the same important ethical responsibilities and obligations for their assigned patients" and have the same "core duties" because "all patient care employees are expected to act urgently (and remain available to act) when it comes to patient safety." (Doc. No. 118 at PageID # 2524, 2529).

Plaintiff also states that "Acadia subjected not just myself, but all hourly patient care workers at Red River to these same or substantially similar meal period policies and procedures" and that she spoke with other individuals including Rance Clark, Tammy Goodwin, Lisa Witherspoon, and Michelle Santolucito who "confirmed that they were subject to similar meal break practices and procedures." (*Id.* ¶ 15). Plaintiff also stated that she was "allowed, encouraged, and/or permitted to work 'off the clock' both *before* the start of my scheduled shift time and *after*

6

the end of my scheduled shift time." (*Id.* ¶ 16). Plaintiff stated that her "employment at Red River gave me good reason to believe that the practices I experienced at Red River are the same or similar to their other facilities in Texas" and that the Director of Nursing "mentioned that she was using and following Acadia's policies/practices." (*Id.* ¶ 22).

However, Defendants point to Plaintiff's deposition testimony from a separate lawsuit brought by Plaintiff against Acadia regarding the same policies and practices at issue in this case.[2] In *Hamm v. Acadia Healthcare Co. et al.*, E.D. La. Case No. 2:20-cv-1515, Plaintiff testified that when she worked at Red River, she was instructed to alter employees' time so that if employees did not take a break or took less than a 30 minute break, 30 minutes was still deducted from their time. (Doc. No. 126-1 at PageID # 2745). Plaintiff testified that altering time "wasn't done everyplace" and that she complained about this practice to HR and that "a month or two after that [sic] they changed the practice" and stopped altering employees' time. (Doc. No. 126-1 at PageID # 2749-2751). Plaintiff also testified that her "inability to take a meal break" while working at Red River "was because [she] [was] in the supervisor situation" and that it "wasn't something that really affected the other nursing staff." (*Id.* at PageID # 2763). Plaintiff also testified that "I've been pretty consistent…the problems that I was having at Red River did not happen - - at River Place." (*Id.* at PageID# 2764). Plaintiff further testified that "the practices at River Place were different than those at Red River" and that after she complained to HR at Red River "they changed their policy or practices on that." (*Id.* at PageID # 2766). When asked why Plaintiff alleged that the wage and hour practices were consistent across all of Acadia's facilities, Plaintiff testified that

---

[2] The Court may consider Plaintiff's prior deposition testimony pursuant to Fed. R. Civ. P. 32(a)(8) which provides that "[a] deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."

the Director of Nursing at Red River "told [Plaintiff] it was the way they did things at Acadia" and was not based on Plaintiff's experience at Red River and River Place. (Doc. No. 126-1 at PageID # 2767). Plaintiff also testified that she "had no other experience anyplace at that time" other than at Red River, she had not been to any other Acadia facilities other than River Place or Red River, she had not spoken to anyone employed at any Acadia facility other than River Place and Red River, and she had "no personal knowledge about the timekeeping and payroll practices at any facility other than Red River or River Place." (*Id.* at PageID # 2766 – 2767).

Defendants also point to evidence that Plaintiff and the putative collective members are not similarly situated because they have different job duties and at least one facility, Red River, implemented a different timekeeping and attendance policy. Specifically, Defendants point to evidence that Red River's attendance policy provides that employees are expected to adhere to Acadia's attendance policy "and the additional facility-specific guidelines below" including procedures for no-call, no-shows, clocking in and out, and discipline. (Doc Nos. 126-6, 126-2). The job descriptions submitted by Plaintiff also demonstrate that different patient care employee positions have distinct and separate job duties and responsibilities, including the positions of registered nurses, LPN-LVNs, and behavioral health associates. (Doc. Nos. 118-9, 118-10, 118-11).

Moreover, the declarations submitted by Plaintiff fail to demonstrate that the putative collective members are similarly situated to each other. Plaintiff submits the declaration of Clarisse Casalino (Doc. No. 118-4). Casalino states that she worked as a registered nurse for Acadia at Montrose Behavioral Health in Chicago, Illinois from October 2022 to May 2023. (*Id.* ¶¶ 1-3). Casalino states that she "(and others) often couldn't step away to take an uninterrupted break because [she] was too occupied with getting necessary patient paperwork done" and that she and

8

"other nurses [she] worked with at Acadia" did not get "a real break and then [] time records [were] altered to show that [she] clocked out for a break that [she] did not get." (*Id.* ¶¶ 7-8). Casalino also states that "[i]t was not just nurses that had their breaks missed or interrupted without pay. The Mental Health Techs/Behavioral Health Techs also had missed their breaks or had them interrupted" and that "[b]ased [sic] my time working for Acadia as an hourly-paid patient care employee, I can state that other nurses, techs, and other hourly patient care workers had the similar job duties as myself, and also had to work 'off the clock' in the same ways I described herein." (*Id.* ¶¶ 13, 18). Casalino's declaration sets forth conclusory, general, and unspecific references to "other nurses" and "other hourly patient care workers" without identifying specific factual allegations demonstrating her actual knowledge. For example, Casalino fails to identify specific instances when she observed other employees working overtime hours without compensation, the locations that she allegedly witnessed these occurrences, details regarding the operation of Defendant's timekeeping system, or the basis for Casalino's knowledge that other employees were not being fully compensated. The other declarations submitted by Plaintiff fare no better. (Doc. Nos. 118-5, 118-6, 118-7, 118-8) (referencing "other nurses" and "other hourly-paid patient care workers" and stating that "other nurses, techs, and other hourly patient care workers had the similar job duties" but failing to identify specific factual allegations demonstrating actual knowledge).

Additionally, the job duties in the declarations submitted by Plaintiff are distinct and appear to involve separate responsibilities. (Doc. No. 118-4 ¶ 4) (stating that job duties as a registered nurse at Acadia's Montrose Behavioral Health location in Chicago, Illinois included "assisting with medication, patient assessments, responding to patient codes, charting and paperwork (such as incident reports) answering questions from doctors and patient's family members, and other similar job duties."); (Doc. No. 118-6 ¶ 3) (stating that job duties as mental health tech/behavioral

9

health tech at Acadia's Desert Parkway and Seven Hills locations in Las Vegas Nevada and Henderson, Nevada included "responding to codes, searching new patients, overseeing the patient-intake process, taking patient vitals, overseeing the patients' day-to-day activities, assisting the patients in traveling around the facilities, and other patient care tasks."); (Doc. No. 118-7 ¶ 3) (stating that job duties of clinical therapist at Acadia's San Jose Behavioral Health Hospital in San Jose, California included "determining how many intakes were assigned to each unit, filling out patient forms, filing paperwork, conducting psychiatric intakes, running patient groups and group activities, witnessing patient codes, and providing care to patients who became upset after witnessing other patients coding.")

The Court finds that the evidence provided by Plaintiff is insufficient to demonstrate that Plaintiff and the putative collective members are similarly situated.[3] *Rashad v. Mason's Professional Cleaning Service, LLC*, 2023 WL5154534 (W.D. Tenn. Aug. 10, 2023) (denying plaintiffs' motion for court-supervised notice where plaintiffs' evidence failed to "'support an inference that she has *actual knowledge*' about other employees' job duties, hours worked, and whether they were paid for overtime hours" and "relay[ed] only their own experience with general, unspecific references to 'other employees' supplied at the end of every paragraph."); *see also*

---

[3] In support of her argument, Plaintiff cites to *Beth Mcgill v. Nashville Tennessee Ventures, Inc*, No. 3:19-CV-00922, 2020 WL 5983113 (M.D. Tenn. Oct. 8, 2020), *McKee v. Cable Tech. Commc'ns, LLC*, No. 221CV02385JPMATC, 2022 WL 2392572 (W.D. Tenn. July 1, 2022), and *Archer v. Nabors Truck Serv., Inc.*, No. 16-CV-02610-JTF-TMP, 2018 WL 6574796 (W.D. Tenn. Oct. 12, 2018), *report and recommendation adopted*, No. 2:16-CV-2610-MSN-TMP, 2019 WL 2070424 (W.D. Tenn. Mar. 15, 2019). However, none of these cases were decided post-*Clark* and accordingly, the standard set forth in those cases is inapplicable to the present case. Plaintiff also argues that courts routinely authorize notice in cases involving similar meal break and rounding policies and cites to a number of cases both in and outside of the Sixth Circuit. *Gray v. Delta Cnty. Mem'l Hosp. Dist.*, No. 19-CV-02938-RBJ, 2021 WL 1329263 (D. Colo. Mar. 1, 2021); *Thompson v. Menorah Park Ctr. for Senior Living Bet Moshav Zekenim Hadati*, No. 1:17CV2580, 2021 WL 388771 (N.D. Ohio Feb. 4, 2021); *Hunter v. Legacy Health*, No. 3:18-CV-02219-AC, 2021 WL 24553 (D. Or. Jan. 4, 2021); *Miller v. Jackson*, No. 3:10-1078, 2011 WL 2197694 (M.D. Tenn. June 6, 2011); *Fritz v. Corizon Health, Inc.*, No. 19-CV-03365-SRB, 2020 WL 6877737 (W.D. Mo. Nov. 23, 2020); *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659 (N.D. Ill. Feb. 28, 2019); *Straka v. Methodist Dallas Med. Ctr. Auxiliary*, No. 3:16-CV-2192-B, 2018 WL 1611865 (N.D. Tex. Apr. 3, 2018). However, each of the cases relied on by Plaintiff were decided pre-*Clark* and are distinguishable from the present case.

10

*Woods v. First Transit, Inc.*, No. 1:21-CV-739, 2023 WL 6290781, at *2 (N.D. Ohio Sept. 27, 2023) (denying plaintiffs' motion for court-supervised notice where "Plaintiffs failed to present evidence to contest the veracity of the evidence submitted by Defendant, nor did they address the discrepancies between Defendant's evidence and their proffered declarations. Plaintiffs did not introduce any evidence of a company-wide policy that is binding on all First Transit fixed-route drivers that potentially violates the FLSA.").

Moreover, Plaintiff testified that she only has experience at two Acadia facilities – Red River and River Place. However, Plaintiff seeks to send notice to "[a]ll current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, or other non-exempt employees with similar job duties employed at any facility operated by Defendant Acadia Healthcare Company, Inc. during the time period beginning July 27, 2018 until resolution of this action." (Doc. No. 94 ¶ 46). Plaintiff also testified that Red River corrected the alleged timekeeping issues around June 2019 after Plaintiff complained, yet Plaintiff seeks to send notice to individuals employed after that time. (Doc. No. 126-1 at PageID # 2748 – 2752).

This case is similar to *Dove v. Corewell Health*, No. 1:23-CV-182, 2023 WL 6548556 (W.D. Mich. Oct. 6, 2023). In *Dove*, the Court considered whether the plaintiffs met the "similarly situated" standard set forth in *Clark*. The Court held that "Court-authorized notice is especially inappropriate here because Plaintiffs propose a large, broad, and unwieldly group of potential opt-ins" and that "[r]ather than limit the proposed notice to other Medical Assistants (like [plaintiffs]) and other classes of employees performing similar functions, Plaintiffs propose to cover *all* classifications of hourly employees—a group of likely thousands" which the Court held "would send the same notice to custodial staff and ICU nurses, even though the likelihood of

emergency work intruding on an unpaid meal break is obviously very different" and that "rather than limit the proposed notice to particular facilities, Plaintiffs propose to cover employees working at *all* Corewell facilities, regardless of whether they focus on emergency care or routine pre-scheduled patient screenings and blood tests, and regardless of how the particular facility tracks time." *Id.* The Court recognized that "[o]n this record, the Court anticipates very *few* 'common issues of law and fact arising from the same alleged discriminatory activity,' so court-authorized notice would do little to further judicial economy—the 'very point of the 'similarly situated' inquiry.'" *Id.* (internal citation omitted) (emphasis in original). The Court denied plaintiffs' motion for court-authorized notice.

Here, Plaintiff has not tailored the proposed collective to a limited number of facilities nor specific types of patient care workers, but instead includes "many types of workers [and] healthcare facilities…making it highly *unlikely* that court-authorized notice will provide a group of similarly situated Plaintiffs whose claims could be resolved efficiently through collective litigation." *Id.* at *4. Moreover, Plaintiff testified that she did not have knowledge as to the timekeeping practices at other Acadia facilities and that even the employment practices at the two Acadia facilities that she worked at, Red River and River Place, were different. (Doc. No. 126-1 at PageID # 2764) ("I've been pretty consistent…the problems that I was having at Red River did not happen…at River Place."); (Doc. No. 126-1 at PageID # 2765, 2766) (Doc. No. 126-1 at PageID # 2767) ("Q. So you have no personal knowledge about the timekeeping and payroll practices at any facility other than Red River or River Place? A. No.").

**B. Uniform Policies**

Plaintiff also alleges that she and the putative collective members are subject to Defendant's common patient care, timekeeping, meal break, and overtime policies and that all

12

patient care workers use the same timekeeping system. (*Id.* at PageID # 2530-2531). Plaintiff contends that she and the putative collective members' "unpaid meal breaks were interrupted, missed, or subject to interpretation due to the same reasons: a common duty of care to patients" and that "Acadia encourages its non-exempt patient care workers to arrive early to prepare for their day, but not clock in until within a short window of time before their assigned start time" and "Acadia encourages these workers to clock out by or shortly after their scheduled end-of-day time but encourages them to stay longer and complete various duties while off-the-clock" which "places putative collective members in the same position they are in with their unpaid meal periods: help patients off the clock or be fired for neglect, or request compensation for working overtime that was not preapproved and face termination." (*Id.* at PageID # 2535).

In response, Defendants contend that there are no uniform timekeeping and meal break policies across Acadia's locations. Acadia Management Company's Vice President of Human Resources, Todd Williams, testified that "[a]t Acadia, the local facility administers all these policies, so they are the ones, the local management team, from the CEO on down to the front -- to the employees' leader themselves are the ones that administer…," that "what a facility decides to do is in the facility" and Acadia's policies "are the general guidelines," that Acadia facilities have the ability to "enhance or modify the patient abuse section as it relates to the individual employees at the facility," and that the policy encouraging "employees at the facilities to remain at the facility during their meal breaks" was "general guidance" and "the facility has discretion on how they apply [the policies]…this may be the overarching general guidance, but the facility had their own guidance/direction potentially here." (Doc. No. 118-2 at PageID# 2592, 2593-2594, 2596-2597). Williams also testified that "discretion at the facility level means - - and I don't mean discretion like we want them to just run out and do whatever, but we need to make sure people are

13

paid accurately, and that's at the facility level, to ensure that's the day-to-day manger's responsibility." (*Id.* at 2601). With regard to Acadia's code of conduct, Williams testified that "[i]t's a very general competency-based code of conduct plan." (*Id.* at 2603).

Plaintiff testified that she had no personal knowledge about the timekeeping and payroll practices at Defendants' facilities other than Red River or River Place. (Doc. No. 126-1 at PageID # 2767). Plaintiff also testified that she "had no other experience anyplace at that time" other than at Red River, she has not been to any other Acadia facilities other than River Place or Red River, and that she had not spoken to anyone employed at any Acadia facility other than River Place and Red River. (Doc. No. 126-1 at PageID # 2766 – 2767). Moreover, Plaintiff stated that she believed that the practices she experienced at Red River were commonly applied amongst Acadia facilities because her "employment at Red River gave [her] good reason" to believe it. (Doc. No. 58-3 ¶ 22).

Accordingly, the Court finds that Plaintiff has failed to demonstrate knowledge as to whether the timekeeping and meal break policies and practices on which her claims are based applied universally across Acadia's facilities.

## C. Limited Notice

Moreover, Plaintiff proposes approving notice as to only the Acadia facilities in Texas, Louisiana, Illinois, Florida, and California, which includes the states identified in the declarations supporting Plaintiff's motion. However, Plaintiff testified regarding the different policies and practices between Acadia facilities and her lack of knowledge as to timekeeping practices at Acadia facilities other than at Red River and River Place. (Doc. No. 126-1 at PageID # 2767). Plaintiff also testified that timekeeping issues varied between different departments at Red River, with employees in the military unit clocking out but continuing to work while the employees in the old building would instead fail to clock out. (Doc. No. 126-1 at PageID # 2753-2754). Plaintiff

14

also testified that patient care staff in different departments and in different positions at Red River had different amounts of paperwork and different timing requirements for completing that paperwork. (Doc. No. 126-1 at PageID # 2742 – 2744). Accordingly, the Court finds that authorizing the limited notice requested by Plaintiff is inappropriate.

Put simply, the Court is unable to evaluate the "factual and employment settings of the individual[ ] plaintiffs" or "the different defenses to which the plaintiffs may be subject on an individual basis." *Monroe*, 860 F.3d at 397. Accordingly, Plaintiff has failed to meet *Clark's* "similarly situated" standard, and her motion for court-authorized notice must be denied. Because the Court finds that the Plaintiff is not entitled to court-authorized notice, it need not consider the parties' remaining arguments regarding equitable tolling, personal information of the putative class members, Plaintiff's proposed notice, or methods of notice.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion (Doc. No. 117) is **DENIED**.

The parties are **ORDERED** to engage in mediation, which must be conducted by no later than June 23, 2025. The parties shall file a joint status report within five business days of the conclusion of mediation.

Upon selection of a mediator and scheduling of mediation, and by no later than May 12, 2025, the parties shall file a joint notice of mediation details, which confirms their selection and identity of the selected mediator and the date on which mediation is scheduled. Pending the filing of the foregoing notice, the Clerk is directed to administratively close the file.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE