**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AMY HAMM, on behalf of herself and all others similarly situated,** | § § | **Case No. 3:21-cv-00550** |
| ***Plaintiff,*** | § § | |
| **v.** | § § | **District Judge William L. Campbell, Jr.** |
| | § | **Magistrate Judge Jeffrey S. Frensley** |
| **ACADIA HEALTHCARE CO., INC., and ACADIA MANAGEMENT COMPANY, LLC,** | § § § § | |
| ***Defendants.*** | § § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR DISTRIBUTION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

Plaintiff Amy Hamm, individually and on behalf of all others similarly situated, hereby moves this Court to reconsider its Order on Plaintiff's Motion for Distribution of Notice Pursuant to 29 U.S.C. § 216(b) ("Plaintiff's Motion"). Ms. Hamm respectfully submits that reconsideration is warranted because (1) the Court erred in ruling on Plaintiff's Motion before the Parties' discovery and scheduling disputes were resolved, which was a clear error of law and resulted in a manifest injustice; (2) the Court overlooked material evidence that warrants granting plaintiffs' motion; and (3) the Court applied the wrong evidentiary standard to Plaintiff's declaration and also relied on irrelevant evidence.

Ms. Hamm thus asks the Court to reconsider its Order and Grant Plaintiff's Motion. Alternatively, the Court should set aside its Order on Plaintiff's Motion ("the Order"), order

Magistrate Judge Jeffrey S. Frensley to set a Discovery Dispute Conference within thirty (30) days that the briefing on this Motion closes, and reserve reconsideration on Plaintiff's Motion until after the Discovery Dispute Conference or any after any additional briefing that is allowed related to Plaintiff's Motion after the Discovery Dispute Conference, whichever is later.

## I.BACKGROUND

This is a putative Fair Labor Standards Act ("FLSA") collective action and Fed. R. Civ. P. 23 class action. Plaintiff and putative class/collective members allege that they worked for Defendants as hourly-paid patient care employees during the relevant statutory period.[1] Plaintiff claims that she and the putative class/collective members were required and/or allowed to work during their unpaid meal periods due to Defendant's patient care, neglect, overtime, and meal break policies.[2] Plaintiff also claims they were required to work either before and/or after their shift while off-the-clock.[3] The core of Plaintiff's claims center around the fact that, due to the nature of their positions and the facilities where they work, she and others are required to be functionally on-call at all times and ready to work in order to respond to emergency situations.[4] That is, patient care workers cannot refuse to assist patients even if clocked out for a break.

Plaintiff originally moved for distribution of Section 216(b) notice on March 17, 2023.[5] At the time, this was known as "conditional certification." The Court issued an Order denying without

---

[1] *See generally* First Am. Compl. (ECF No. 202).

[2] *See id.*

[3] *Id.*

[4] *See, e.g.*, Mem. in Support of Plaintiff's Motion (ECF No. 118) at 13-15.

[5] (ECF No. 57).

prejudice Plaintiff's Motion for Conditional Certification and Notice on May 22, 2203. The Court explained that since the filing of Plaintiff's Motion, the Sixth Circuit Court of Appeals issued *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), a "decision addressing the standard to be applied by the district court when deciding whether to facilitate notice to potential plaintiffs in a collective action" and which "expressly rejected the 'characterization of the notice determination as a 'certification,' conditional or otherwise.'"[6] The Court also ordered the Parties to request a case management conference with the Magistrate Judge to discuss a deadline for filing a new Motion for FLSA Notice.

After that Case Management Order was issued, Plaintiff promptly served discovery.[7] Defendants then refused to produce relevant and discoverable information, and Plaintiff promptly brought this dispute to the Court. The Parties' Discovery Dispute Statement was filed on July 29, 2024, eight (8) months before the Court entered the Order.[8] A supplemental Status Report was also submitted detailing additional meet and confer efforts on September 6, 2024,[9] and Plaintiff moved to modify the Case Management Order on September 9, 2024. Ms. Hamm asked the Court to extend the discovery deadline and the FLSA notice motion deadline until three (3) and four (4) months, respectively, after Magistrate Judge Frensley concludes the anticipated Discovery Dispute

---

[6] (ECF No. 76).

[7] Mem. in Support of Motion Support of to Modify Case Management Order (ECF No. 110) at 5-6.

[8] (ECF No. 103).

[9] (ECF No. 108).

Conference.[10] Plaintiff's counsel likewise repeatedly tried to schedule a Discovery Dispute Conference, to no avail.[11] Ms. Hamm even filed a Motion to Ascertain Status of the Discovery Dispute Statement and requested an expedited Discovery Dispute Conference on October 7, 2024.[12] None of these Motions were ever substantively ruled on, and Plaintiff's counsel was never able to schedule a Discovery Dispute Conference.[13] Plaintiff was thus forced to file her Motion on October 21, 2024.[14]

## II.STANDARD OF REVIEW

The Court has the inherent authority to reconsider, rescind, or modify an interlocutory order before final judgment is entered. *Lindsey v. Shelby Cty. Bd. of Educ.*, No. 15-cv-2587-JTF-dkv, 2019 U.S. Dist. LEXIS 106396, at *4 (W.D. Tenn. Feb. 22, 2019) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945-46 (6th Cir. 2004)) (granting motion for reconsideration). The standard applied to motions for reconsideration is borrowed from the standard courts apply to Fed. R. Civ. P. 59(e) motions to alter or amend a judgment. *See Kabba v. Metro. Nashville Hosp. Auth.*, No. 3:20-cv-00738, 2023 U.S. Dist. LEXIS 51460, at *4 (M.D. Tenn. Mar. 24, 2023) (citing *Jackson v. Novastar Mortgage, Inc.*, 645 F. Supp. 2d 636, 642 (W.D. Tenn. 2007)) (Campbell, J.). The relevant factors to grant reconsideration are thus "(1) to correct

---

[10] (ECF No. 110) at 1. Ms. Hamm initially raised extending the discovery period in the Parties' Dispute Statement, (ECF No. 103) at 13, but Plaintiff was forced to file this motion after months passed and Magistrate Judge Frensley did not hold a Conference or respond to Plaintiff's inquiries about setting one.

[11] Declaration of Robert E. Morelli, III, ("Morelli Decl.") attached hereto as **Exhibit A**, at ¶¶ 3-8.

[12] (ECF No. 114).

[13] Morelli Decl. at ¶¶ 3-8.

[14] (ECF No. 117)

a clear error of law; (2) to account for newly discovered evidence or a change in controlling law; or (3) to prevent manifest injustice." *Id.* "Clear error arises most commonly from either misapplication of law or an intervening change in controlling precedent." *Desai v. Geico Cas. Co.*, 541 F. Supp. 3d 817, 824 (N.D. Ohio 2021).

## III. ARGUMENT[15]

Reconsideration is warranted here because it was a clear error of law, resulting in a manifest injustice, to rule on Plaintiff's Motion before the discovery and scheduling disputes were resolved. Likewise, the Court overlooked material evidence, applied the wrong evidentiary standard, and relied on irrelevant evidence.

### a. The Court Erred in Ruling on Plaintiff's Motion before the Parties' Discovery and Scheduling Disputes were Resolved, Which Was a Clear Error of Law and Resulted in a Manifest Injustice.

The Court erred in ruling on Plaintiff's Motion before the Parties' pending discovery and scheduling disputes[16] were resolved. This was clear error given the Sixth Circuit's *Clark* decision. 68 F.4th 1003. This resulted in a manifest injustice because Plaintiff was denied the very discovery she needs to comply with the standard set forth in *Clark*, despite seeking it promptly and expeditiously seeking Court intervention.

#### *i. The Clark decision provides Plaintiff with a right to pre-notice discovery that she was denied.*

[15] Plaintiff also intends to seek certification for interlocutory appeal of the Order as it raises issues of undecided law under *Clark*. However, if this Motion is granted, the need to seek certification for interlocutory appeal becomes moot.

[16] *See* Discovery Dispute Statement (ECF No. 103); Joint Report of Meet and Confer Efforts (ECF No. 108); (Motion to Modify Case Management Order (ECF No. 109).

The *Clark* Court held that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. The Court did not specifically define what a "strong likelihood" entailed, but it did explain that the "standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* Ultimately, the Sixth Circuit held that "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010.

The Court also offered some important guidance on how courts should handle discovery in these cases. It explained that "in applying this [strong likelihood] standard, district courts should expedite their decision to the extent practicable." *Id.* at 1011. "To that end, a district court **may promptly initiate discovery relevant to the motion, including, if necessary, by 'court order.'"** *Id.* (citing Fed. R. Civ. P. 26(d)(1)) (emphasis added). *Clark* further elaborated that preliminary discovery should recognize that "'other employees themselves will usually have knowledge—sometimes unique knowledge—of the relevant facts." *See id.*

Courts thus routinely order employers to provide putative collective contact information and other documents so that plaintiffs can comply with this heightened standard post-*Clark.* As one court explained, "[g]iven the heightened standard that the Sixth Circuit has now imposed on FLSA plaintiffs . . . it would be unreasonable to expect Plaintiff to satisfy that burden while at the same time denying Plaintiff information about potential opt-in plaintiffs that could assist Plaintiff in satisfying his burden." *Jones v. Ferro Corp.*, No. 1:22-cv-00253-JDA, 2023 U.S. Dist. LEXIS 118415, at *16-17 (N.D. Ohio July 11, 2023).

For example, in *Wedding v. Madisonville Health & Rehab. LLC*, No. 4:24-CV-00044-BJB-HBB, 2025 U.S. Dist. LEXIS 34479 (W.D. Ky. Feb. 25, 2025), another nursing case, the court overruled an employer's objections to producing pre-notice discovery related to putative collective members. The court explained that because the plaintiff properly pleaded a *prima facie* case for unpaid overtime, she was "entitled to discovery regarding [defendant's] other employees occupying nursing positions or analogous direct patient care positions." *Id.* at *11, 15.

The court in *McCall v. Soft-Lite L.L.C.*, No. 5:22-CV-816, 2023 U.S. Dist. LEXIS 133548, 2023 WL 4904023, at *9 (N.D. Ohio Aug. 1, 2023) likewise explained that collective action plaintiffs "should, at the very least be entitled to learn the identity (by name and contact information, and within the requisite statute of limitations) of other employees who are (or were) required by their jobs to perform the same categories of activities delineated in . . . the complaint as being violations of the FLSA." *See also Rashad v. Mason's Prof'l Cleaning Serv., Ltd. Liab. Co.*, No. 2:22-cv-02635-JTF-tmp, 2023 U.S. Dist. LEXIS 139807, at *11 (W.D. Tenn. Aug. 10, 2023) (plaintiff "are, of course, free to move for specific discovery regarding the 'similarly situated' inquiry.")

In *Cordell v. Sugar Creek Packing Co.*, the plaintiff sought pre-notice discovery related to other potential plaintiffs, including their name and contact information, timekeeping and payroll records, and other information. *Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 845-847 (S.D. Ohio 2023). The *Cordell* court, like many other post-*Clark*, found this information discoverable, explaining "that such information is necessary for an FLSA plaintiff to determine whether other employees were subject to the same policies that allegedly violated the FLSA, as this is a 'factbound' question reliant on other employees' 'knowledge—sometimes unique knowledge—of the relevant facts.'" *Id.* at 847 (quoting *Clark*, 68 F.4th at 1010).

Thus, post-*Clark*, courts in this Circuit[17] routinely order robust pre-notice discovery as it is often necessary for plaintiffs to comply with *Clark's* dictates. *See id.*

*ii. It was legal error to deny Plaintiff the discovery she seeks, and because the Court did not resolve the Parties' discovery dispute, Plaintiff was forced to file her Motion prematurely, resulting in manifest injustice.*

The Court should therefore grant this Motion for Reconsideration because Plaintiff was forced between a rock and a hard place. Because a Discovery Dispute Conference was never set over the course of eight (8) months, she was forced to file her Motion prematurely, without access to all the discovery she was legally entitled to under binding Sixth Circuit precedent. *Cf. Kabba*, 2023 U.S. Dist. LEXIS 51460, at *6 (granting motion for reconsideration "[o]ut of an abundance of caution.") (Campbell, J.); *Lindsey v. Shelby Cty. Bd. of Educ.*, No. 15-cv-2587-JTF-dkv, 2019 U.S. Dist. LEXIS 106396, at *10 (W.D. Tenn. Feb. 22, 2019) (granting motion for reconsideration). This resulted in a manifest injustice because the Court adopted Defendants'

[17] Courts in other circuits applying a different, yet also heighted, standard have likewise ordered similar pre-notice discovery for the purposes of determining "similarly situated" status before ordering notice sent to potential plaintiffs. *See e.g., Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266-MJT, 2021 U.S. Dist. LEXIS 56569, at *3 (E.D. Tex. Mar. 15, 2021) (noting that discovery "allows the parties to acquire sufficient information regarding 'potentially dispositive threshold issues' while minimizing the cost of unnecessary discovery," and "will aid the Court in deciding whether this case can proceed as a collective action without 'stirring up unwarranted litigation.'"); *Forbes v. San Gabriel Recovery Ranch*, Case No. 1:21-cv-00851; Dkt. 16, 31; (W.D. Texas, Oct. 17, 2022) (ordering production of the names, contact information (including last known addresses), phone numbers, email addresses, and dates of employment/work for all putative collective members.); *Allen v. Tiger Safety, LLC et al.*, Case No. 6:21-cv-00114, 2021 U.S. Dist. LEXIS 164244 at *5 (W.D. La., June 23, 2021) and (ECF No. 25) (employer required to produce "a list of potentially similarly situated employees regarding the claims in this lawsuit, which shall include the names, dates of work, addresses, telephone numbers and email addresses for all current and former employees who were paid a day rate without overtime pay . . . "); *Paschal v. Perry's Rest. Ltd.*, Case No. 1:22-cv-00027, 2022 U.S. Dist. LEXIS 216845, *7-13, (W.D. Tx., Nov. 30, 2022) (employer required to produce pay information for putative collective members).

arguments, yet Defendants denied Plaintiff the very discovery she needed to contest their allegations.

Plaintiff was forced to file her Motion prematurely because the Parties' discovery and scheduling dispute was never resolved. Plaintiff promptly sought discovery relevant to these very issues and was stonewalled by Defendants.[18] For example, she sought discovery of (a) the names and contact information of putative collective members; (b) the identities of the various facility CEOs; (c) orientation and onboarding materials; (d) the identities of putative class and collective member's supervisors; (e) job descriptions; (f) timekeeping records; (g) complaints of off the clock work; (h) training materials; and (i) emails subject to pertinent search terms.[19] This is all discovery that Plaintiff could have, and would have, relied on to support her Motion.[20]

Take Defendant's refusal to identify the various identities of the various facility CEOs, for example. This was one of Defendants' more egregious refusals. One of their primary arguments against Plaintiff's Motion was the purported existence of substantive differences in policies and practices at the various facilities that preclude notice (and class certification).[21] **But Defendants refused to produce any documents or identify any individuals for Plaintiff to challenge this assertion**.

It does not end there, of course. In a July 11, 2024 deposition, one of Defendants' corporate representative, Gareth Holdstock, repeatedly confirmed that he undertook **no effort** to confirm any

---

[18] Ms. Hamm served her Fed. R. Civ. P. 33 Interrogatories on May 6, 2024, less than 2 months after the Case Management Order was entered and more than five (5) months before her Motion was due. (ECF No. 103-1) at 2-14.

[19] Discovery Dispute Statement (ECF No. 103) at 3-14.

[20] *Id.*

[21] *See, e.g.*, Response to Plaintiff's Motion (ECF No. 126) at 15-21.

information pertaining to the facilities' patient care, staffing, break, meal periods, compensation, and timekeeping polices and/or practices, despite being able to do so by simply emailing the facility CEOs.[22] Instead, Plaintiff's counsel was met over and over again with "I don't know" answers. Likewise, Defendant Acadia Management Company, LLC **never, to this day, provided its Fed. R. Civ. P. 26 initial disclosures**, despite being informed repeatedly of their deficiency.[23]

Plaintiff timely raised these discovery issues to the Court. The Parties' Discovery Dispute Statement was filed on July 29, 2024, eight months before the Order issued.[24] The Parties filed a supplemental Status Report of their additional meet and confer efforts on September 6, 2024.[25] Plaintiff moved to modify the Case Management Order three (3) days later, requesting the Court extend the discovery deadline and the FLSA notice motion deadline until three (3) and four (4) months, respectively, after Magistrate Judge Frensley concludes the anticipated Discovery Dispute Conference.[26]

Plaintiff's counsel likewise tried repeatedly to schedule a Discovery Dispute Conference. On August 2, 2024, one of the undersigned's legal assistants contacted then Court regarding Judge Frensley's availability for a discovery conference. The legal assistant was told that she would

---

[22] Discovery Dispute Statement (ECF No. 103) at 13; Mem. in Support of Motion to Modify Case Management Order (ECF No. 110) at 8.

[23] Mem. in Support of Motion to Modify Case Management Order (ECF No. 110) at 9.

[24] (ECF No. 103).

[25] (ECF No. 108).

[26] (ECF No. 110) at 1. Ms. Hamm initially raised extending the discovery period in the Parties' Dispute Statement, (ECF No. 103) at 13, but Plaintiff was forced to file this motion after months passed and Magistrate Judge Frensley did not hold a Conference or respond to Plaintiff's inquiries about setting one.

receive a call back. She did not receive a follow-up call.[27] Likewise, on August 23, 2024, one of the undersigned's paralegals contacted the Court regarding Judge Frensley's availability for a discovery conference. The paralegal was unable to reach the Court and left a voicemail. He did not receive a follow-up call.[28] On September 19, 2024, counsel's paralegal again contacted the Court regarding Judge Frensley's availability for a discovery conference. The paralegal was again unable to reach the Court and left a voicemail. He did not receive a follow-up call.[29] Plaintiff's counsel also emailed Magistrate Judge Frensley's Chamber's email address on August 2, 2024 and September 25, 2024, requesting a telephonic discovery conference, but never received a response to these emails.[30] Ms. Hamm even filed a Motion to Ascertain Status of the Discovery Dispute Statement and requested an expedited Discovery Dispute Conference on October 7, 2024.[31] None of these Motions were ever substantively ruled on, and Plaintiff's counsel was never able to schedule a Discovery Dispute Conference.[32]

These facts warrant reconsideration of the Order because Defendants unjustly withheld relevant discovery, and the Court erred by not ruling on the discovery disputes. By denying Plaintiff the relevant discovery, Plaintiff was placed in a nearly impossible situation. Plaintiff already had to comply with *Clark's* heightened "strong likelihood" standard. Because Plaintiff was forced to file her Motion without the benefit of discovery, what is already a heightened standard

---

[27] Morelli Decl. at ¶ 3.

[28] *Id*. at ¶ 5.

[29] *Id*. at ¶ 6.

[30] *Id*. at ¶¶ 4,7.

[31] (ECF No. 114).

[32] Morelli Decl. at ¶ 8.

became even more difficult. The fact is that Plaintiff promptly sought the discovery she is legally entitled to satisfy *Clark*, and Defendants improperly withheld this evidence. Defendants should not be able to benefit from their improper discovery tactics. By ruling on the Motion before this discovery dispute was resolved, a manifest injustice occurred.

The Court should reconsider its Order because it was a legal error to deny Plaintiff her requested discovery under *Clark*, which resulted in a manifest injustice because Plaintiff was forced to prematurely file her Motion despite promptly and repeatedly seeking Court intervention in the Parties' discovery dispute.

b. The Court Overlooked Material Evidence that Warrants Granting Plaintiffs' Motion.

It is well established that courts can revise their interlocutory orders to account for overlooked evidence. *See Estate of Stewart v. Sugar Hill Music Publ'g Ltd.*, 2013 U.S. Dist. LEXIS 50535, at *4 (S.D.N.Y. Apr. 8, 2013) (granting motion for reconsideration based on overlooked evidence). Here, the Order does not account for substantial evidence that Plaintiff provided in her Motion, such as the vast majority of the Fed. R. Civ. P. 30(b)(6) testimony and Plaintiff's expert report.

Plaintiff relied on the testimony of two of Defendant's representatives pursuant to Fed. R. Civ. P. 30(b)(6) in her Motion: Todd Williams and Gareth William Holdstock. While Plaintiff cited extensively to testimony from Mr. Holdstock in support of her Motion, the Order makes no reference to any of Mr. Holdstock's testimony. For example, the Court did not acknowledge Mr. Holdstock's admission that Acadia expects all putative collective members to comply with the Acadia code of conduct.[33] The Court also overlooked his testimony confirming that Acadia expects

[33] (ECF No. 118) at 5, n. 17.

**all putative collective members** to prioritize patient safety, **at all facilities**, which means **always acting urgently** when it comes to patient safety (even if during an unpaid meal period).[34] The Court also did not consider his testimony that every Acadia facility strictly prohibits patient abuse and neglect[35] (which is critical to Plaintiff's theory of unpaid wages).[36] Mr. Holdstock also confirmed that – for all putative collective members – situations will arise where breaks are unavoidably missed or interrupted.[37]

Likewise, while the Court did cite to a very small portion Mr. Williams' testimony, it overlooked critical portions of his transcript supporting the issuance of notice. Williams, like Holdstock, confirmed that the putative collective members are subject to uniform overtime and meal break policies and expectations.[38] He likewise testified that all Acadia facilities provide putative collective members meal breaks based on the same guidelines.[39]

The Court's analysis also overlooked the Expert Report of Ms. Hillary Flanders, MPH, RN-BC, RRT, CLNC ("Flanders' Report"). The Flanders' Report concluded that Acadia's patient care employees are all governed by common professional and ethical obligations, including the

---

[34] *Id.* at 10, nn. 26, 33. *See also id.* at 11, n. 41.

[35] *Id.* at 12, n. 45.

[36] Defendants' mandate that collective members avoid patent abuse or neglect (defined by Acadia as anything that fails to provide for the patient's basic needs or in any way endangers a patient's emotional or physical well-being) at all costs, all creates an environment where patient-care staff must remain alert and vigilant to assist with patient care needs, evening during unpaid meal periods. Mem. in Support Plaintiff's Motion (ECF No. 118) at 3.

[37] *Id.* at 13, n. 51. *See also id.* at 15, n. 65 ("Q. Acadia recognizes that interruptions of meal breaks occur, correct? A. Yes.")

[38] *Id.* at 6, n. 21.

[39] *Id.*

American Nurses Association ("ANA") Code of Ethics for Nurses and Acadia's Patient Abuse and Neglect Abuse and Neglect Policy.[40] Ms. Flanders concluded that these standards impose a duty of care that prevents healthcare professionals from turning "a blind eye to patient in need when no one else is available to take care of them," even if during unpaid meal break. She opined that the "obligation to the patient remains in effect even if an employee is on break or otherwise 'off-the-clock' per the ANA Code of Ethics for Nurses and Acadia Healthcare Policy Number HR-245–Patient Abuse and Neglect."

This overlooked evidence all pushes the needle in Plaintiff's favor. This evidence speaks directly to the similarly situated issue. After all, "'[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were.'" *Dorta*, 2024 U.S. Dist. LEXIS 86686 at *6-7 (quoting *Clark*, 68 F.4th at 1010). If this evidence were considered, this Court's analysis would be more in line with its prior *Dorta* decision, where this Court held that evidence such as uniform policies and standardized procedures and training program was sufficient to warrant Section 216(b) notice. *See id.* at *7-8 (Campbell, J.). As this Court therein explained:

> Plaintiffs point to ample evidence that [collective members are similarly situated, such as] all SNs were required to sign the Repayment Agreement as a condition of hire, the amount and schedule of repayments are the same amongst SNs during the relevant time period, [defendant] implements uniform policies and standardized procedures to collect repayment amounts, and the training program is standardized amongst the proposed collective members. Accordingly, the [c]ourt finds that [p]laintiffs have demonstrated a 'strong likelihood' that the proposed members are similarly situated to the named [p]laintiffs.")

[40] *Id*. at 13-14.

Thus, given this evidence, reconsideration is clearly warranted.

c. The Court Overlooked Material Evidence. Relied on Irrelevant Evidence and Applied an Erroneous Evidentiary Standard.

There are also several other misapplications of the law that warrant reconsideration of the Order. The Court overlooked material evidence that warrants granting Plaintiffs' motion. The Court also applied the wrong evidentiary standard to Plaintiff's declarations and relied on irrelevant evidence related to a facility not at issue in this case.

*i. The Court applied the wrong evidentiary standard to Plaintiff's declarations.*

The Court erroneously applied the standard used to evaluate the level of detail and amount of evidence **a single declaration** must provide to support facilitating notice **on its own** to the several declarations Plaintiff submitted in support of her Motion. This Court previously recognized that "'*Clark* does appear to have raised the level of detail and amount of evidence such [a declaration] must provide **to support facilitating notice on its own**,'" explaining such declarations generally must and "'at least allege facts sufficient to support an inference that [the plaintiff] has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours.'" *Williams v. Premium Velocity Auto, LLC*, No. 3:23-cv-00901, 2025 U.S. Dist. LEXIS 24396, at *11-12 (M.D. Tenn. Feb. 11, 2025) (quoting *Rashad v. Mason's Prof'l Cleaning Serv., Ltd. Liab. Co.*, No. 2:22-cv-02635-JTF-tmp, 2023 U.S. Dist. LEXIS 139807, at *9 (W.D. Tenn. Aug. 10, 2023)) (emphasis added) (Campbell, J.) .

This Court in *Williams* thus explained that the named plaintiff's **single declaration** was insufficient to warrant evidence because it was the **only e**vidence he submitted in support of his motion and he:

> fail[ed] to identify specific instances when he observed other employees working overtime hours without compensation, the

> locations that he allegedly witnessed these occurrences, details regarding the operation of Defendant's timekeeping system, the job duties performed, the policies and procedures purportedly followed, the training Plaintiff and other employees purportedly underwent, or the basis for Plaintiff's knowledge that other employees were not being fully compensated.[41]

*Id.* at *12. This Court applied the exact same reasoning to Ms. Hamm's declaration.[42] However, Plaintiff submitted far more than just a single declaration in support of her Motion: she proffered six (6) declarations from other patient care workers at other facilities who experienced the same issues as Ms. Hamm, extensive sworn deposition testimony from multiple witnesses, and volumes of documentary evidence demonstrating that Defendants' hourly-paid patient-care employees are sufficiently similarly situated for notice to issue.[43]

Moreover, courts in this District apply a much more lenient burden to these declarations when multiple are submitted, or they are submitted in combination with other evidence.[44] For example, in *Isaacs v. Landmark Recovery of Louisville, LLC,* the plaintiff submitted his declaration and the declaration of eight (8) other opt-in plaintiffs, alleging "facts consistent with the allegations in the [c]omplaint, but with a few additional details. *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-00210, 2023 U.S. Dist. LEXIS 165205, at *8 (M.D. Tenn. Sep. 18, 2023)

---

[41] As a factual matter, the Court also incorrectly found that the declarations, such as opt-in Plaintiff Clarisse Casalino, were too conclusory. However, the declarations provided detailed information warranting Section 216(b) notice. Ms. Casalino explained that Acadia held staff meetings where she and others complained about not being able to take breaks and were informed that they still had to clock out for a break even if they were not getting one. (ECF No. 118-4) at ¶ 9.

[42] (ECF No. 132) at 9.

[43] *Id.* at 3, 5-7, 10-17, 19.

[44] Relatedly, declarants are not required to provide specific instances or days when they observed other employees working overtime hours without compensation as this is an impossible burden and functionally requires employees to keep records of employer's wage and hour violations. Employees are entitled to rely on their reasonable recollections in collective actions. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)

(Trauger, J.). Like here, the plaintiff also submitted the defendant's employee handbook and the defendant's timekeeping, payroll, and meal break policies. *Id.* at *13. Judge Trauger explained that this evidence "is sufficient to establish the requisite 'strong likelihood' that the lead plaintiff, current opt-in plaintiffs, and potential opt-in plaintiffs are similarly situated employees under the FLSA." *Id.* at *41. Indeed, considering the *Isaacs* order, at a bare minimum this Court should have ordered notice sent to the facilities in the states where Plaintiff submitted evidence from.

Here, the Court applied the wrong evidentiary burden to Plaintiff's declarations. As the *Isaacs* decision shows, the heightened standard this Court outlined in *Williams* does not apply. *Issacs* also demonstrates that Plaintiff's Motion should have been granted, given the similarity of robust evidence that Plaintiff submitted here. Therefore, this Motion for Reconsideration should be granted.

*ii. The Court erroneously relied on evidence from the Louisiana matter.*

Reconsideration is also warranted because this Court relied on irrelevant evidence related to Plaintiff's employment at River Place Behavioral Health, in Laplace, Louisiana. This case explicitly excludes River Place Behavioral Health, in Laplace, Louisiana, rendering any testimony from Ms. Hamm's time there irrelevant. Regardless, to the extent the Court did rely on that evidence, **it was a clear error for the Court to use it to deny Plaintiff's motion as the court in the River Place action found the same evidence sufficient to warrant notice**. As that court explained, "'[s]imilarly situated does not mean identically situated.' Hamm and [others] were subject to the same possibility of break interruption. They were therefore similarly situated. *Hamm*

*v. Acadia Healthcare Co.*, No. 20-1515, 2022 U.S. Dist. LEXIS 123519, at *10 (E.D. La. July 13, 2022). Thus, this Motion for Reconsideration should be granted.[45]

## IV. CONCLUSION

Ms. Hamm respectfully submits that reconsideration is warranted because (1) the Court erred in ruling on Plaintiff's Motion before the Parties' discovery and scheduling disputes were resolved, which was a clear error of law and resulted in a manifest injustice; (2) the Court overlooked material evidence that warrants granting plaintiffs' motion; and (3) the Court applied the wrong evidentiary standard to Plaintiff's declaration and also relied on irrelevant evidence. Alternatively, the Court can order Magistrate Judge Frensley to set a Discovery Dispute Conference within thirty (30) days that the briefing on this Motion closes and fashion additional relief in light of that conference.

Respectfully submitted,

Dated: April 23, 2025

*/s/ Robert E. Morelli, III*
David W. Garrison (TN Bar No. 24968)
Joshua A. Frank (TN Bar No. 33294)
BARRETT JOHNSTON
**MARTIN & GARRISON, LLC**
Philips Plaza
414 Union Street, Suite 900
Nashville, Tennessee 37219
Tel: (615) 244-2202; Fax: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

Carolyn H. Cottrell (*Pro Hac Vice*)
Ori Edelstein (*Pro Hac Vice*)

---

[45] Moreover, this Court already determined Section 216(b) notice is warranted. Reply in Support of Motion for Distribution of Notice (ECF No. 129) at 2. The Court has an independent obligation to "ensure that notice goes out to those who are 'similarly situated' to the named plaintiffs." *Mathewsv. United States Today Sports Media Grp., LLC,* No. 1:22-cv-1407, 2023 U.S. Dist. LEXIS 95475, at *8 (E.D. Va. Apr. 14, 2023); *see also Hoffmann-La Roche Inc. v. Sperlin*g, 493 U.S. 165 (1989). TheCourt previouslyexercisedthis responsibilityand determinedthat notice was appropriate. (ECF No. 129) at 1.

Robert E. Morelli, III (TN Bar No. 037004)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
rmorelli@schneiderwallace.com

*Counsel for Plaintiff, Class, and Collective Members*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed a copy of the foregoing Local Rule 7.01(c) Motion on April 23, 2025, and served a copy to all parties of record by operation of the Court's CM/ECF electronic filing system. I further certify that I served a true and correct copy of the foregoing on Defendants' known counsel of record via email per the parties' Electronic Service Agreement and pursuant to Fed. R. Civ. Proc. Section 5(b)(2)(E), as follows:

Mark W. Peters
Frederick L. Conrad III
Flynne M. Dowdy
Annie Bailey
Renee Boswell-Stangel
**HOLLAND & KNIGHT LLP**
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
andrew.naylor@hklaw.com
markwpeters@hklaw.com
trip.conrad@hklaw.com
flynne.dowdy@hklaw.com
annie.bailey@hklaw.com
renee.boswell@hklaw.com

*Counsel for Defendants*

*/s/ Robert E. Morelli, III*