IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **AMY HAMM,**<br>*Individually and on behalf of all others similarly situated,*<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ACADIA HEALTHCARE, CO. INC, and ACADIA MANAGEMENT COMPANY, LLC,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO. 3:21-cv-00550**<br><br>**JUDGE CAMPBELL**<br>**MAGISTRATE JUDGE FRENSLEY** |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants Acadia Healthcare Co., Inc's, and Acadia Management Company, LLC's (hereinafter collectively referred to as "the Acadia Defendants") motion for judgment on the pleadings (Doc. No. 172), brought under Federal Rule of Civil Procedure 12(c). Plaintiff Amy Hamm ("Hamm") filed a Response in Opposition. (Doc. No. 173). Acadia filed a Reply. (Doc. No. 175). For the reasons discussed below, the Motion (Doc. No. 172) is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND[1]

Plaintiff worked as a nurse supervisor at Red River Hospital, one of Acadia's subsidiaries, in Wichita Falls, Texas ("Red River") from February 2015 until December 2019. (*Id.* at ¶ 31). Plaintiff subsequently transferred to River Place Behavioral Health facility in LaPlace, Louisiana ("River Place") and worked as a nurse supervisor until September 2020. (*Id.* at ¶ 31 fn.2).

[1] All facts herein are as alleged in the amended complaint (Doc. No. 94).

Plaintiff alleges that Defendants violated the FLSA by failing to pay overtime through exercising "a policy permitting and encouraging management, other employees, physicians, patients, and patients' family members [to] interrupt Patient Care Workers' meal periods at any time." (*Id.* at ¶ 76). Due to such high demands, Plaintiff alleges that a Patient Care Worker's ability to even attempt a meal break is a "rare instance." (*Id.* at ¶ 29). Despite the alleged rarity, Plaintiff alleges that Defendants exercised "an automatic time deduction policy that removes the equivalent of 30 minutes of time from the worker's timekeeping records" if the worker does not manually clock-out for their designated meal break. (*Id.* at ¶ 28).

Even when a Patient Care Worker does use their unpaid meal period, Plaintiff alleges, "Defendants also exercised and implemented policies that required Patient Care Workers, as a necessary part of their ethical obligations to their patients, to remain vigilant and responsive to the needs of their patients throughout their entire shift, including during unpaid meal periods." (*Id.* at ¶ 76). "Under this policy, Defendants required Plaintiff and Collective members to be available to work and/or to be on duty during their unpaid meal periods." (*Id.*) As a result, Plaintiff alleges that the Patient Care Workers were "interrupted, or subject to interruption, with work duties during any attempted meal period," such that they were denied a bona fide meal period. (*See Id.* at ¶¶ 1, 42).

Plaintiff also alleges that Defendants violated the FLSA because "Defendants suffered and/or permitted Plaintiff to work additional time outside of her shift for work-related tasks" which "included, but are not limited to, conducting shift change reports, monitoring patients, assisting hospital personnel, reviewing or completing charting, preparing for her shift, and other tasks or services for Defendants' benefit." (*Id.* at ¶ 32). Further, Plaintiff alleges that "Plaintiff and Collective members were actively discouraged from logging time outside the parameters set by

Defendants," but "due to the demands of the job, Plaintiff and Collective members routinely performed work-related tasks outside of their scheduled shift, before and/or after clocking-in and/or after clocking-out." (*Id.* ¶¶84-85).

Plaintiff brings claims under the Fair Labor Standards Act ("FLSA") and Texas state law on behalf of herself and other current and former hourly employees involved with patient care who have worked at Acadia facilities since July 15, 2016 ("the Patient Care Workers"). (Amended Complaint, Doc. No. 94 at ¶¶ 1,14-15).

## II. STANDARD OF REVIEW

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014). A claim is facially plausible if "plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (emphasis added). The Court construes the complaint in the light most favorable to the plaintiff, accepts its factual allegations as true, and determines "whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." *Id.* (internal quotation marks and citations omitted). Judgment on the pleadings is proper when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021).

In considering a Rule 12(c) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to

a defendant's motion to dismiss provided they are referred to in the complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn*., 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

The Acadia Defendants moves for judgment on the pleadings on the grounds that: (1) Plaintiff's "remain available" theory of liability is foreclosed by Sixth Circuit precedent; (2) Plaintiff's Complaint fails to allege that the Collective Members's unpaid meal periods were frequently interrupted; (3) the Complaint's allegation of actual interruptions during meal periods are conclusory and insufficient to state a plausible claim for relief; and (4) the Complaint's allegations of "off-the-clock work" are equally conclusory and insufficient to state a claim. (*See generally* Doc. No. 172-2). Defendants seek judgment on the pleadings related to Plaintiff's state law claims on the same grounds. (*Id.*).

### A. Unpaid Meal Periods

"The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (citing 29 U.S.C. §§ 206(a), 207(a)). Among other things, the Act requires employers to compensate employees at a rate of 1 ½ times the regular rate of pay for hours worked in excess of 40 hours per week. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012); *see also* 29 U.S.C. § 207(a)(1). Work has been defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015).

Time designated as a lunch period may nevertheless be compensable under the FLSA if the time spent is "predominantly for the employer's benefit." *Id.* Whether time is spent

predominately for the employer's benefit depends on the totality of the circumstances. *Id.* The Court considers (1) whether the employee is "'engaged in the performance of any substantial duties' during the meal period," (2) whether "the employer's business regularly interrupts the employee's meal period," and (3) "the employee's inability to leave the employer's property during meal breaks." *Id.* at 811, 813-14. Under these factors, the Sixth Circuit held that FLSA claims are not viable where an employee must merely remain available to respond during their lunch break—only actual interruptions are compensable. *Id.* at 815; *see id.* at 813 ("[W]e have relied on evidence that emergencies regularly interrupted an employee's meal periods to hold that those periods were compensable.").

Defendants contend that under *Westerling v. East Tennessee Children's Hospital Association, Inc.*, 2026 WL 674286 (6th Cir. Mar. 10, 2026), and *Ruffin*, Plaintiff's claim based on the theory that Patient Care Workers are owed compensation solely because they must "remain available" during unpaid meal breaks fails. The Court notes, however, that *Westerling* is an unpublished opinion that holds no binding precedential authority. Further, while published, *Ruffin* analyzes the issues in light of summary judgment as opposed to the lessened standards applied in motions for judgement on the pleadings.

*In Ruffin,* security guards at a casino were required to monitor their radios and respond to emergencies if called. *Ruffin*, 775 F.3d at 810. The guards were otherwise able to spend their meal breaks "eating, reading, socializing, and conducting personal business on their phones." *Id.* at 812. Emergency calls "rarely interrupted" the guards meal period and the Plaintiff did not submit evidence of actual interruptions. *Id.* at 815. There, the Sixth Circuit affirmed the district court's granting of summary judgment in favor of the defendant, finding that merely monitoring a radio and remaining available to respond was a "de minimis activity" that did not result in the time

spent to being "predominately for the employer"—particularly when there was no evidence of actual interruptions. *Id.* Notably, however, the court found that actual interruptions during a meal period can serve as the basis for a FLSA claim. *Id.* at 813.

*Westerling* was decided at the pleading stage. Like *Ruffin, Westerling* involved FLSA overtime claims concerning a security guard's allegations that he was required to monitor his radio and remain available to respond to emergencies during his lunch period. *Westerling*, 2026 WL 674286 at *1. The complaint, however, failed to describe the security guard's job duties beyond monitoring the radio, and failed to allege any actual interruptions. *Id.* at *1-2. Following *Ruffin,* the Sixth Circuit affirmed the lower court's dismissal of the FLSA overtime claim. *Id.* at *2.

Pointing to *Westerling* and *Ruffin*, the Acadia Defendants contend that Plaintiff's claims are conclusory and premised entirely on the theory that "Patient Care Workers are owed compensation for unpaid meal breaks solely because they must remain available during those breaks." (Doc. No. 172-2 at 6). The Court disagrees.

Plaintiff's "remaining available" and "subject to interruption" theory is only one of the theories alleged in the Complaint. Plaintiff also asserts several allegations that support a plausible finding of actual regular interruptions during lunch periods beyond merely remaining available.[2] For example, Plaintiff alleges that due to the high demands of their jobs during their shifts, it was rare for Patient Care Workers to be able to even attempt to take their meal break—the ultimate form of interruption. (Doc. No. 94 at ¶ 29). Plaintiff further identifies the work demands as "responding to calls from their patients, doctors, supervisors, patients' families, other facility staff,

---

[2] In her Opposition (Doc. No. 173), Plaintiff cited her Memorandum in Support of Motion for Distribution of Notice (Doc. No. 118) for support of her allegations of frequent actual interruptions. On a Rule 12(c) motion, only pleadings and matters of public records may be considered. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025). In accordance with Rule 12(d), this Court did not consider them in its analysis.

attend to the normal demands of the job, and otherwise respond to emergencies that might arise in a healthcare facility environment." (*Id.* at ¶ 29). Plaintiff alleges that the Acadia Defendants discouraged workers from reporting missed or interrupted meal periods, and that they exercised "an automatic time deduction policy that deducts 30 minutes of time from an employee's timesheet if they do not clock-out. (*Id.* at ¶¶ 26, 30). Plaintiff also alleges that Defendants denied collective members full compensation for hours worked during "unpaid meal periods that were missed, interrupted due to work demands, or subject to interruptions." (*Id.*at ¶ 52). The Court finds that the Complaint sufficiently alleges facts that support a plausible finding of actual interruptions, beyond mere monitoring, such that the meal periods were predominately for the benefit of the employer.

As recognized by *Ruffin,* FLSA claims for unpaid lunch periods based on a "remaining vigilant" or "subject to interruption" theory is not compensable. *See Ruffin,* 775 F.3d at 815. To the extent Plaintiff's claims are based exclusively on such theory, without allegations of actual interruptions, the Court grants in part Defendant's Motion. Nevertheless, taking all facts and inferences in favor of the Plaintiff, this Court finds that the Complaint alleges sufficient facts to plausibly allege that during her unpaid meal period, Plaintiff was subjected to actual, frequent interruptions, beyond mere monitoring, such that the meal periods were predominately for the benefit of the employer, and that failure to pay Plaintiff for that time at the appropriate rate violated the FLSA. Accordingly, Defendant's Motion is denied in part and granted in part.

**B. Off-the-Clock Work**

Defendants also contend that Plaintiff's FLSA claims concerning "off-the-clock work" performed before and after shifts are equally conclusory and deficient. (Doc. No. 172-2 at 16). Relying on *Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 WL 1514905 (6th Cir.

May 13, 2022), Defendants assert Plaintiff's allegations of "off-the-clock" work performed are merely "a grab bag of possible tasks that might have been performed at unspecified times, at unspecified facilities, by unspecified employees…" (Doc. No. 172-2 at 16). Defendants' reliance on *Forrester,* however, is misplaced.

*Forrester* involved allegations of unpaid work, described only as "shift-change duties," performed before and after a scheduled shift. *Forrester*, 2022 WL 1514905 at *1. There, the Sixth Circuit affirmed dismissal of the complaint because it failed to describe the alleged work performed beyond the phrase "shift-change duties." *Id*. at 3. The Court was left wondering what those duties entailed and whether they constituted compensable work. *Id.* at *2. Finding that the Complaint failed to describe the work, which served as the basis of the Plaintiff's claims, the Sixth Circuit held that the Complaint failed to show a claim for relief. *Id.* at *3.

Here, the Complaint offers more than the phrase "off-the-clock work." The Complaint describes the work as "monitoring patients, assisting hospital staff, charting, prepping and organizing equipment, and other various tasks performed before clocking in and/or after clocking out of their shifts." (Doc. No. 94 at ¶ 32). Plaintiff further alleges that due to the tasks, she averages working 52 hours per week, including time worked during meal periods and off-the-clock work.[3] (*Id.* at ¶¶ 40, 42). Unlike in *Forrester*, Plaintiff adequately alleges that she and the Patient Care Workers performed unpaid work, amounting to over 40 hours per week, and then subsequently described the work performed.

Defendants suggest that *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) require Plaintiffs to allege facts supporting with specificity "when

---

[3] Notably, Plaintiff fails to describe the proportion of the 52 hours that were not appropriately paid. While this does not affect the analysis as it relates to describing the type of work performed, it does impact the amount of damages alleged.

the off-the-clock work occurred, how often it occurred, how long it lasted, and which specific employees were affected." (Doc. No. 172-2 at 17). But such specificity and detailed factual allegations in this preliminary stage is reserved for when the allegations involve fraud or mistake. *See* Fed. R. Civ. P. 9(b). Indeed, neither *Forrester* nor *Westerling* required that level of specificity. In both cases, the Sixth Circuit affirmed dismissal because the Complaints failed to describe the actual interruptions alleged beyond conclusory statements that work was performed. *See Westerling,* 2026 WL 674286 at *1 ("Although Westerling does not specify the scope of his work duties aside from monitoring his radio and remaining available to 'respond if some event arose,' he asserts that he often had to work during his meal period."); *see also Forrester,* 2022 WL 1514905 at *2 ("The complaint's only description of pass-down time says it involved 'several shift-change duties.' But what are 'shift change duties?'…[W]ithout an answer to this question, Forrester can't show that pass-down time is compensable.").

Taking all facts and inferences in favor of the Plaintiff, this Court finds that the Complaint sufficiently pleads facts to state a claim of relief for unpaid off-the-clock work actually performed. Accordingly, Defendant's Motion is denied.

**C. State Law Claims**

Plaintiff raises additional claims under Texas-law torts for unjust enrichment, quantum meruit, and money had and received. (*See generally* Doc. No. 94). The Acadia Defendants contend that these claims are derivative of Plaintiff's FLSA claims and therefore similarly fail the "predominate benefits test" established in *Ruffin.* (Doc. No. 175 at 5). Relying on *City of Univ. Park v. Univ. Park Police Ass'n*, 766 S.W.2d 531 (Tex. App. 1989), *writ denied* (Sept. 13, 1989), Defendants assert that Texas adopted the "predominate benefits test" for meal break claims under

Plaintiff's tort theories. (Doc. No. 175 at 4-5). *City of Univ. Park,* however, is distinguishable from the instant case and deals with separate issues of law.

In *City of Univ. Park,* police officers of the University Park Police Department commenced an action involving unpaid work performed during meal periods under the FLSA and a similar state statute governing compensable hours for police officers and firefighters. *City of Univ. Park*, 766 S.W.2d 531, 532. The state statute, now codified as Tex. Loc. Gov't Code Ann. § 142.0015, established the number of hours necessary for municipality officers to receive overtime pay and determined what type of work constituted compensable hours. *See* Tex. Loc. Gov't Code Ann. § 142.0015; *see also* Tex. Att'y Gen. Op. No. JM-854 (Feb. 8 1988). When evaluating the police officers' state law claims, as a matter of first impression, a Texas Appellate Court applied the "predominate benefits" test because it "perceive[d] no reason to devise a different standard from the one that applies to the FLSA." *City of Univ. Park*, 766 S.W.2d 531, 537. This is because the state statute at issue was functionally equivalent to the FLSA. *See Id.*

That is not true in the instant case. Here, Plaintiff's state-law tort claims are not based on an equivalent overtime statute. Rather, Plaintiff's claims invoke an entirely different inquiry than their FLSA claims. Plaintiff's quantum meruit claim depends on whether she can prove that a valuable service was rendered to the Acadia Defendants and that the Defendants were reasonably notified that Plaintiff and the Patient Care Workers expected to be paid for the service. *See Champion Food Serv., Inc. v. ProAlamo Foods, L.L.C.,* 738 S.W.3d 511, 515 (Tex. 2026)). Claims for unjust enrichment require a showing that a person has "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Likewise, claims for money had and received require a showing that Defendants "hold[] money which in equity and good conscience belongs to [Plaintiff]."

*Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 293 (Tex. App. 2021). While Plaintiff's factual theories are similar under these torts claims and the FLSA, the legal inquires and resulting defenses differ. Absent some authoritative signal from the Texas Legislature or Courts, it is improper to substitute state law with federal standards. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law.") (*citing Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980)).

Taking all facts and inferences in favor of the Plaintiff, this Court finds that the Complaint sufficiently pleads facts to state a claim of relief concerning the aforementioned state-law tort claims. Accordingly, Defendant's Motion is denied.

**D. Leave to Amend**

At the conclusion of her response to Defendants' motion to dismiss, Plaintiff requests the Court allow her the opportunity to amend the complaint. In light of the forgoing, the Court denies Plaintiff's request as moot.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Judgement on the Pleadings (Doc. No. 172) is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE